UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JING CHEN,

                                        Plaintiff,


v.                                                      5:25-cv-1673
                                                       (GTS/TWD)


DAVID P. WILLIAMS,

                                        Defendant.
_____

APPEARANCES:

JING CHEN
*Plaintiff, pro se*
300 Parrish Lane
Syracuse, NY 13205

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## **REPORT-RECOMMENDATION AND ORDER**

### I.    INTRODUCTION

        The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Jing

Chen ("Plaintiff"), along with an application to proceed *in forma pauperis* ("IFP").  *See* Dkt.

Nos. 1-2.  For the reasons set forth below, the Court recommends the complaint be dismissed.

### II.    IFP APPLICATION

        Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP.  Dkt.

No. 2.  Upon review, Plaintiff's IFP application demonstrates economic need.  *See id*.  Therefore,

she is granted permission to proceed IFP.[1]

_____

[1] Although her IFP application has been granted, Plaintiff will still be required to pay fees that
she may incur in this action, including copying and/or witness fees.

### III.    BACKGROUND

Plaintiff commenced the instant action "pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 . . . ." Dkt. No. 1 at 1.[2]  The complaint identifies one Defendant, "David P. Williams," the "Plaintiff's estranged husband," who resides in Onondaga County.  *Id*.  Plaintiff states "a divorce action is currently pending between the parties in Onondaga County Supreme Court . . . ."  *Id*. at 1-2.

The instant action concerns the use of "a personal computer located at the marital residence," in Syracuse, New York.  *Id*. at 2.  "The computer runs the Windows operating system and was configured with a user account . . . associated with the Microsoft account . . . which belongs to Defendant."  *Id*.  After "Defendant moved out of the marital residence" where the computer was located, "Plaintiff took affirmative steps to revoke any authorization Defendant may have previously had to access the computer by: (a) disabling the automatic Microsoft account sign-in feature; (b) converting the Windows user account to a local account; and (c) using the computer exclusively for her own purposes."  *Id*.

Plaintiff avers on November 5, 2025, she "was conducting a job interview via Microsoft Teams using the computer" when "Defendant, without Plaintiff's authorization or knowledge, remotely logged into the same Microsoft account . . . that was associated with the computer's user profile."  *Id*.  As a result of Defendant's conduct, various "system conflicts occurred" which "impaired Plaintiff's ability to conduct her job interview in a professional manner, causing damage to her employment prospects."  *Id*.  More specifically, "(a) Plaintiff's camera was

---

[2] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

disabled and ceased to function; (b) Plaintiff experienced . . . audio feedback issues; (c)

Defendant's account name appeared in the Teams meeting interface; [and] (d) Plaintiff was

unable to sign out of Defendant's account during the interview." *Id*.

Additionally, Plaintiff subsequently "discovered that certain security logs on the

computer had been deleted." *Id*. at 3.  Plaintiff alleges "Defendant intentionally deleted these

logs to conceal evidence of his unauthorized access." *Id*.  She further avers the incident was

"part of a pattern of conduct by Defendant designed to sabotage Plaintiff's employment

opportunities," as the Defendant has expressed an "intention to engage in 'economic warfare'

against Plaintiff." *Id*.

The complaint identifies three "Count[s]," alleging violations of 18 U.S.C. §§

1030(a)(2)(C), (a)(5)(C), and (a)(5)(A).  *See id*. at 4-5.  Concerning relief, Plaintiff requests,

*inter alia*, compensatory damages, a permanent injunction, and costs.  *See id*. at 5.

## IV.    LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis*

complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28

U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141

F.3d 434, 437 (2d Cir. 1998).  The Court must also dismiss a complaint, or portion thereof, when

the Court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines

at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to

construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*,

470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. *See, e.g.*, *Cole v. Smrtic*, No. 1:24-CV-00847 (MAD/CFH), 2024 WL 4870495, at *2 (N.D.N.Y. Nov. 21, 2024) (explaining, "special solicitude for *pro se* pleadings has its limits, because *pro se* pleadings still must comply with . . . the Federal Rules of Civil Procedure . . . .") (internal quotations and citation omitted), *report and recommendation adopted*, 2025 WL 247901 (N.D.N.Y. Jan. 21, 2025). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.    ANALYSIS

Plaintiff commenced this action pursuant to the Computer Fraud and Abuse Act ("CFAA"). *See generally*, Dkt. No. 1.

> The CFAA was initially enacted solely as a criminal statute to address the then-novel problem of [computer] hacking . . . . Ten years later, . . . it was amended to permit a civil cause of action allowing, among other things, any person who suffers damage or loss by reason of a violation of this section of at least $5,000 to bring a claim.

*Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 417-18 (S.D.N.Y. 2018) (first citing *Hancock v. Cty. of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018); then citing 18 U.S.C. § 1030(g); § 1030(c)(4)(A)(i)(I)) (internal quotations and additional citations omitted); *see also*, *e.g.*, *Perez v. Evans*, No. 1:24-CV-00356 (VSB)(SN), 2025 WL 2933587, at *9 (S.D.N.Y. May 15, 2025) ("The CFAA is primarily a criminal statute, but there is a civil cause of action under § 1030(g) available in 'certain narrowly defined circumstances.'") (citing *Univ. Sports Publ'ns Co. v. Playmakers Media Co.*, 725 F. Supp. 2d 378, 382 (S.D.N.Y. 2010)), *report and recommendation adopted*, 2025 WL 2726792 (S.D.N.Y. Sept. 25, 2025).

As an initial matter, it is well established that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972) (explaining, "in our federal system crimes are always prosecuted by the Federal Government, not . . . by private complaints."). Accordingly, a private citizen cannot bring a criminal complaint. *See, e.g.*, *Brown v. Seniuk*, No. 1:01-CV-1248, 2002 WL 32096576, at *1 (E.D.N.Y. Mar. 25, 2002) (explaining, "it is axiomatic that a private citizen cannot bring a criminal complaint" and construing the plaintiff's complaint "as a § 1983 civil action seeking relief from violations of his constitutional rights.") (citations omitted); *see also*, *e.g.*, *Velleca v. Pangburn*, No. 9:20-CV-0887 (BKS/DJS), 2020 WL 12933756, at *7 (N.D.N.Y. Sept. 2, 2020) ("To the extent that Plaintiff attempts to initiate criminal charges against [the defendant], that claim is dismissed. It is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual.") (citations omitted). Therefore, to the extent Plaintiff seeks to charge the Defendant for alleged violations of any criminal statute, any such claim must be dismissed. *See, e.g.*, *Dunn v. Gabriel*, No. 5:23-CV-0662 (AMN/ML), 2024 WL 3649887, at *3 (N.D.N.Y. June 14, 2024), *report and recommendation adopted*, 2024 WL 3371029 (N.D.N.Y. July 11, 2024); *Jackson v. Leone*, No. 5:25-CV-00350 (GTS/TWD), 2025 WL 1994865, at *3 (N.D.N.Y. May 16, 2025), *report and recommendation adopted*, 2025 WL 1994662 (N.D.N.Y. July 17, 2025).

Alternatively, insofar as Plaintiff seeks to commence a civil action, the complaint should be dismissed for failure to state a claim. The CFAA

> establishes a private cause of action against a person who "knowingly accessed a computer without authorization or exceeding authorization," and whose prohibited access result in: (a) "loss" in excess of $5,000; (b) interference with a person's medical treatment;

> (c) physical injury; (d) a threat to public health or safety; or (e)
> damage to a specific category [of] computers used by the United
> States Government and its affiliates.

*LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 511 (S.D.N.Y. 2015) (citing 18

U.S.C. § 1030(g) (referencing 18 U.S.C. §§ 18 U.S.C. § 1030(c)(4)(A)(i)(I)-(V))); *see also*

*Fowlkes v. Cabral*, No. 2:18-CV-0231 (JPS), 2019 WL 1059983, at *2 (E.D. Wis. Mar. 6, 2019)

(explaining, the CFAA "is not meant to compensate for harassment; it is intended to prohibit

fraudulent conduct on protected computers and to compensate for computer damage or theft.")

(citing *Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*, 810 F.3d 1075, 1084 (7th Cir. 2016));

*Combier v. Portelos*, No. 1:17-CV-2239 (MKB), 2018 WL 3302182, at *9 (E.D.N.Y. July 5,

2018) ("Congress intended the statute to cover cases involving computer theft as opposed to

mere trespass.") (citing *Fidlar Techs.*, 810 F.3d at 1080), *report and recommendation adopted*,

2018 WL 4678577 (E.D.N.Y. Sept. 29, 2018), *aff'd*, 788 F. App'x 774 (2d Cir. 2019).

In the instant action, Plaintiff alleges her "losses exceed $5,000 in the aggregate within

the one-year period following Defendant's violations, satisfying the jurisdictional threshold

under 18 U.S.C. § 1030(c)(4)(A)(i)(I)."  Dkt. No. 1 at 3.  To that end, Plaintiff alleges:

> As a direct and proximate result of Defendant's unauthorized access,
> Plaintiff has incurred and will continue to incur costs and losses,
> including but not limited to:
> (a) Costs of investigating the security breach and assessing the
> damage;
> (b) Costs of computer forensic examination to determine the extent
> of unauthorized access;
> (c) Costs of securing the computer system and preventing future
> unauthorized access;
> (d) Lost employment opportunity and income resulting from the
> sabotaged job interview;
> (e) Time spent responding to and documenting the offense.

*Id*.  Even accepting, *arguendo*, Plaintiff's argument that the Defendant's conduct of "logging into

the Microsoft account associated with Plaintiff's computer," *id*. at 4, a "Microsoft account"

which, in Plaintiff's own words "belongs to *Defendant*," *id*. at 2 (emphasis added), constitutes access of a computer without authorization, Plaintiff has not adequately plead a "loss" under the CFAA.

Under the CFAA, the term "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service . . . ." 18 U.S.C. § 1030(e)(11). However, "[t]he term 'loss' in this context is 'construed narrowly' and 'must relate to the victim's computer systems.'" *Leifer v. Does 1-9*, No. 22-CV-1770 (NRM/CHK), 2025 WL 3187274, at *2 (E.D.N.Y. Nov. 14, 2025) (citing *Collins v. MCA Receivables, LLC*, No. 1:23-CV-353 (AT), 2024 WL 246111, at *8 (S.D.N.Y. Jan. 23, 2024)); *see also*, *e.g.*, *L. Firm of Omar T. Mohammedi, LLC v. Computer Assisted Prac. Elec. Mgmt. Sols.*, No. 1:17-CV-04567 (ER), 2019 WL 3288390, at *7 (S.D.N.Y. July 22, 2019).

Here, Plaintiff's conclusory allegation she "has incurred and will continue to incur costs and losses" which "exceed $5,000 in the aggregate," Dkt. No. 1 at 3, both entirely fails to quantify any of the losses allegedly suffered and appears to claim losses which are not recoverable under the CFAA. *See*, *e.g.*, *Leifer*, 2025 WL 3187274, at *2 (explaining, the plaintiff's allegation "that '[a]s a direct and proximate result of Defendants' conduct in violation of the CFAA, [Plaintiff] has suffered and will continue to suffer damages in excess of $5,000.' . . . . is a mere 'formulaic recitation' of the loss element of a CFAA cause of action . . . and it does not establish any factual basis for Plaintiff's alleged loss.") (citing *Twombly*, 550 U.S. at 555) (additional citation omitted); *Combier*, 2018 WL 3302182, at *10 ("[P]laintiff's perfunctory assertion that she suffered a cognizable loss as a direct and proximate cause of defendants'

conduct is insufficient to satisfy the *Twombly/Iqbal* standard.") (citing *Ramirez v. SupportBuddy Inc.*, No. 7:17-CV-5781 (VB), 2018 WL 2089362, at *4 (S.D.N.Y. May 4, 2018) (dismissing the plaintiff's CFAA claim where the plaintiff "fail[ed] to quantify her alleged costs or make specific allegations as to the costs of repairing or investigating the alleged damage to her computer.") (citing *Bose v. Interclick, Inc.*, No. 1:10-CV-9183 (DAB), 2011 WL 4343517, at *4 (S.D.N.Y. Aug. 17, 2011)) (additional citations omitted); *see also*, *e.g.*, *Fowlkes*, 2019 WL 1059983, at *2 ("Damage to [the plaintiff's] reputation, emotional distress, and lost earnings are not compensable under the CFAA.") (citing *Combier*, 2018 WL 3302182, at *10). Accordingly, the undersigned recommends dismissal of Plaintiff's complaint for failure to state a claim.

As previously stated, before dismissing a *pro se* complaint or any part of the complaint *sua sponte*, the Court should generally afford the plaintiff an opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). The Court advises Plaintiff that should she be permitted to amend her complaint, any amended pleading she submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint should specifically identify the legal theory or theories that form the basis for her claims. Plaintiff is cautioned that no portion of her prior complaint shall be incorporated into any amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims she intends to assert against the Defendant and must demonstrate that a case or controversy exists between the Plaintiff and the Defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging the Defendant violated a law, she should specifically refer to such law. Of course, Plaintiff may also pursue her claims in state court if appropriate.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED** without prejudice; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: January 23, 2026
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[3] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

**REPORT-RECOMMENDATION & ORDER**

CHRISTIAN F. HUMMEL, United States Magistrate Judge

### I. In Forma Pauperis

**\*1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

[1]    The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

[2]    Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

### II. Initial Review

#### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

§ 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

> There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

 **\*2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;

> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

> (3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which

the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999)[3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

[3]     Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

### B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel."[4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

[4]     Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of character [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

> **\*4**  Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga District Attorney's Office, and the Supreme Court Appellate Division Third department. \*\* This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

[5]    Plaintiff did not provide any transcripts.

## C. Discussion [6]

[6]    As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5** As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at \*3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at \*7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at \*7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/ or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction.[7]

[7] The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge"[8] such claims would be barred by judicial immunity.

[8] Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged

violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by <u>Rooker-Feldman</u>, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by <u>Younger</u>. See <u>Porter v. Nasci</u>, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the <u>Rooker-Feldman</u> doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); <u>see</u> <u>also</u> <u>Diamond "D" Constr.</u> <u>Corp. v. McGowan</u>, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

**\*6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." <u>Zavalidroga v. Girouard</u>, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing <u>Mireles v. Waco</u>, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " <u>Id.</u> (quoting <u>Huminski v. Corsones</u>, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." <u>Id.</u> (citation omitted); <u>see</u> <u>Positano v. New York</u>, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." <u>Zavalidroga</u>, 2017 WL 8777370, at *8 (citing <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " <u>Id.</u> (quoting <u>Mireles</u>, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " <u>Pacherille v. Burns</u>, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting <u>Ceparano v. Southampton Just. Ct.</u>, 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." <u>Ceparano</u>, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " <u>Ceparano</u>, 404 F. App'x at 539 (quoting <u>Stump v. Sparkman</u>, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " <u>Bliven v. Hunt</u>, 579 F.3d 204, 209 (2d Cir. 2009) (quoting <u>Mireles</u>, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." <u>McCray v. Lewis</u>, No. 16-CV-3855 (WFK/ VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official capacities, the suit is barred by the Eleventh Amendment. <u>See</u> <u>Pacherille v. Burns</u>, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." <u>Benyi v. New York</u>, No. 3:20-CV-1463 (DNH/ ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest

2024 WL 4870495

that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

[9] Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

### III. Conclusion

**\*8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/ Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH**

**PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

[10]    The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have
**FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

[11]    If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Slip Copy, 2024 WL 4870495

---

**End of Document**                                     © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 247901
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, Interim Montgomery County Judge; Tatiana N. Coffinger,

County/Family/Surrogate's Court Judge; Honorable Felix Catena, Retired Administrative

Law Judge; and Samuel V. Maxwell, Esq., Assistant District Attorney, Defendants.

1:24-CV-847 (MAD/PJE)
|
Signed January 21, 2025

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

# ORDER

Mae A. D'Agostino, United States District Judge:

**\*1** Plaintiff commenced this action on May 6, 2024, asserting that Defendants violated his due process and speedy trial rights, and that he received ineffective assistance of counsel in an underlying state criminal action. *See* Dkt. No. 1. In a Report-Recommendation and Order dated November 21, 2024, Magistrate Judge Hummel granted Plaintiff's request to proceed *in forma pauperis* and conducted an initial review of the complaint. *See* Dkt. No. 8. In the Report-Recommendation and Order, Magistrate Judge Hummel concluded that, in addition to the complaint being subject to dismissal for failure to comply with Rule 8 of the Federal Rules of Civil Procedure, Plaintiff's due process, speedy trial, and ineffective assistance of counsel claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff's underlying state court conviction has not been reversed on direct appeal or otherwise expunged. *See id.* at 8-10. Moreover, the Report-Recommendation and Order recommended dismissal of the claims against Defendants Smrtic, Coffinger, and Catena since they are barred by absolute judicial immunity. *See id.* at 10-12. To the extent Plaintiff is attempting to assert a claim against the Appellate Division, Third Department, Magistrate Judge Hummel found that the claim is barred by Eleventh Amendment immunity because the Appellate Division " 'is merely an agency or arm of New York State." *Id.* at 12-13 (quotation omitted). Finally, Magistrate Judge Hummel recommended that the claims against Defendant Maxwell be dismissed because he is protected by prosecutorial immunity. *See id.* at 13-14. Plaintiff has not objected to the Report-Recommendation and Order.

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

In the present matter, the Court finds that Magistrate Judge Hummel correctly determined that Plaintiff's complaint must be dismissed. Plaintiff's complaint makes clear that his claims stem from alleged violations of his rights that occurred during an underlying state criminal case. *See* Dkt. No. 1 at 3-4; Dkt. No. 7 at 4. Since Plaintiff's criminal conviction has not been reversed,

expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus, Plaintiff's claims brought pursuant to Section 1983 are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Strong v. Watson*, No. 1:22-cv-552, 2023 WL 8439445, *14-15 (W.D.N.Y. Sept. 26, 2023) (dismissing the plaintiff's claims of malicious prosecution, conspiracy, speedy trial violations, denial of due process, and denial of equal protection under *Heck* because the claims "all seek to impugn the validity of his underlying state court criminal charges").

**\*2** Magistrate Judge Hummel also correctly determined that, in the alternative, the claims against the named Defendants are subject to dismissal based on absolute judicial and prosecutorial immunity. The allegations against Defendants Smrtic, Coffinger, and Catena make clear that these individuals were acting in their judicial capacities and that their actions were not taken in the absence of jurisdiction. Accordingly, they are entitled to absolute judicial immunity. *See Ceparano v. Southampton Just. Ct.*, 404 Fed. Appx. 537, 539 (2d Cir. 2011). As to Defendant Maxwell, Plaintiff has alleged that he withheld exculpatory evidence in the underlying criminal matter. Since this conduct clearly involves "prosecutorial activities 'intimately associated with the judicial phase of the criminal process,' " Defendant Maxwell is entitled to absolute prosecutorial immunity. *See Barr v. Abrams*, 810 F.2d 358, 360-61 (2d Cir. 1987) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Additionally, to the extent Plaintiff has attempted to assert claims against the Appellate Division, Third Department, the claims must be dismissed because the Third Department is an arm of New York State and is entitled to Eleventh Amendment immunity. *See Benyi v. New York*, No. 3:20-cv-1463, 2021 WL 1406649, *5 (N.D.N.Y. Mar. 23, 2021) (citation omitted).

Finally, the Court agrees with Magistrate Judge Hummel that, because it is clear that the issues with Plaintiff's complaint are substantive and not something that can be corrected by better pleading, Plaintiff will not be afforded an opportunity to amend his complaint. *See Phillips v. New York*, No. 5:13-cv-927, 2013 WL 5703629, *5 (N.D.N.Y. Oct. 17, 2013) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Hummel's November 21, 2024, Report-Recommendation and Order (Dkt. No. 8) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED without leave to amend**; and the Court further

**ORDERS** that Plaintiff's motion for permission to file electronically (Dkt. No. 4) and motion to appoint counsel (Dkt. No. 5) are **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 247901

---

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2933587
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Eric Andrew PEREZ, Plaintiff,

v.

Dr. Neil C. EVANS, et al., Defendants.

24-CV-00356 (VSB)(SN)

|

Signed May 15, 2025

**Attorneys and Law Firms**

Eric Andrew Perez, San Antonio, FL, Pro Se.

Rebecca Lynn Salk, DOJ-USAO, New York, NY, for Defendants Dr. Neil C. Evans, Carol Johnson, George Reed Grimes, A.G.S.D.N.Y. Damian Williams, Melanie Jay,

Jodyann Galvin, Cheyenne Nicole Freely, Hodgson Russ LLP, Buffalo, NY, for Defendant Dr. Mark J. Mulligan.

Alexander Cousins, Arthur Edward Brown, Arnold & Porter Kaye Scholer LLP, New York, NY, for Defendant Astra Zeneca AB., AstraZeneca Pharmaceuticals LP, AstraZeneca UK Ltd.

## REPORT AND RECOMMENDATION

SARAH NETBURN, United States Magistrate Judge.

**\*1  TO THE HONORABLE VERNON S. BRODERICK:**

Eric Andrew Perez ("Plaintiff"), proceeding *pro se*, brings this case against three categories of defendants alleging harm resulting from his participation in a clinical trial of AstraZeneca's COVID-19 vaccine. Plaintiff sues: (1) Dr. Mark J. Mulligan, who was the Principal Investigator of the NYU Grossman School of Medicine clinical trial in which Plaintiff participated ("Dr. Mulligan"); (2) AstraZeneca Pharmaceuticals LP, [1] AstraZeneca UK Ltd., and AstraZeneca AB, who manufactured and developed the vaccine (collectively, the "AstraZeneca Defendants"); and (3) former United States Attorney Damian Williams, Dr. Neil C. Evans, Carole Johnson, Dr. Melanie Jay, and George Reed Grimes (collectively, the "Federal Defendants"). Defendants filed three separate motions to dismiss the Amended Complaint. ECF Nos. 99-105. The Honorable Vernon S. Broderick referred these motions to me for a report and recommendation. ECF No. 125. I recommend that the Court GRANT the motions and DISMISS the Amended Complaint.

[1]     The AstraZeneca Defendants note in their motion to dismiss that Plaintiff incorrectly named this entity as "AstraZeneca LP," which was a Delaware limited partnership that was dissolved on December 31, 2018. AstraZeneca Pharmaceuticals LP responds to the action in place of the dissolved entity.

## FACTUAL AND PROCEDURAL BACKGROUND

This case is not Plaintiff's first foray into federal court seeking to remedy alleged harms resulting from his voluntary participation in the AstraZeneca COVID-19 clinical trial. See Perez v. Oxford University, No. 21-cv-4844 (VEC)(RWL), 2022 WL 1446543 (Apr. 11, 2022), report and recommendation adopted, 2022 WL 1468438 (S.D.N.Y. May 10, 2022); Perez v. Oxford University,

No. 1:22-cv-01560 (D.D.C. Sept. 23, 2022); Perez v. Oxford University, No. 22-cv-7830 (LTS), 2022 WL 15523951 (S.D.N.Y. Oct. 24, 2022). Each case was dismissed.

Plaintiff alleges some of the same causes of action in this case as in his previous cases. Plaintiff filed his Complaint on January 16, 2024, and he filed the Amended Complaint on April 25, 2024. ECF Nos. 1, 37.[2] In his Amended Complaint, Plaintiff states that he participated in a clinical trial of AstraZeneca's COVID-19 vaccine at the Department of Veterans Affairs ("VA") Harbor Health Care System and suffered injuries from his participation. He claims that he received the vaccine in two doses, on December 22, 2020, and on January 19, 2021. See Am. Compl. ¶ 29; Compl. Ex. 1, ECF No. 1-1, at 3.

[2]      The Amended Complaint replaces the original Complaint. Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977) ("[A]n amended complaint ordinarily supersedes the original and renders it of no legal effect."). Plaintiff's original Complaint includes various exhibits that are not attached to his Amended Complaint, but they are referenced by name in the Amended Complaint. Thus, the Court considers both the Amended Complaint and the exhibits attached to the original Complaint in deciding the motions. See Fortunato v. Bernstein, No. 12-cv-1630 (AT), 2015 WL 5813376, at *1 n.4 (S.D.N.Y. Sept. 1, 2015) (considering both the original and amended complaints because of a pro se plaintiff's references to the original complaint in his amended complaint); Murphy v. Spaulding, No. 20-cv-9013 (KMK), 2022 WL 294552, at *1 n.1 (S.D.N.Y. Feb. 1, 2022) (same).

 **2**  Immediately after receiving the first dose of the vaccine, Plaintiff states that his blood pressure dropped to 65/109, and he almost fell to the ground. Am. Compl. ¶ 31. After his participation in the study, Plaintiff began suffering from migraines, non-alcoholic fatty liver disease, and persistent peroneal vein thrombosis in his right calf, all of which Plaintiff believes were caused by the vaccine. Id. ¶ 33. These conditions require several medications, and Plaintiff claims he has lost most enjoyment of life and has been diagnosed with depressive disorders. Id. His condition worsened, and on February 11, 2021, Plaintiff sought treatment at the VA Emergency Room. A nurse wrote in his medical record that Plaintiff had thrombosis in his right calf, which was not life-threatening and unrelated to his study treatment. Id. ¶ 34.

Plaintiff states that in February of 2021, he bumped into Melanie Jay, the director of the study, in the VA Harbor Health Care Building and informed her of his right calf thrombosis. Am. Compl. ¶ 29. She told Plaintiff he had not received the vaccination and instead received a placebo. Id. Plaintiff alleges that the notation of "placebo" in his medical record was a fraudulent modification, made to cover up Plaintiff's injuries as part of a broader scheme. Id.

Because of his experiences with the study, Plaintiff filed a claim through the Health Resources & Services Administration's Countermeasures Injury Compensation Program ("CICP"). The CICP is a federal program that compensates serious injuries or deaths that occur because of the administration of certain countermeasures during public health emergencies. See 42 U.S.C. § 247d-6e; 42 C.F.R. § 110. On March 17, 2020, the Secretary of Health and Human Services declared the COVID-19 vaccine a "covered countermeasure" under the Public Readiness and Emergency Preparedness Act ("PREP Act"). 85 Fed. Reg. 15,198, at 15202 (Mar. 17, 2020). When the CICP requested additional information and records from Plaintiff, he submitted information and filed a HIPPA request with the VA Medical Records Office requesting documentation of his participation in the AstraZeneca study. Am. Compl. ¶¶ 17, 43-45. The HIPPA request was denied on September 13, 2023. Compl., Ex. 4, ECF No. 1-1, at 6. Plaintiff brings this case alleging that his CICP claim is being "deliberately obstructed" by members of the federal government. Am. Compl. ¶ 21.

Plaintiff additionally claims a widespread racketeering scheme and conspiracy between all Defendants to cover up experimentation on veterans through the COVID-19 vaccination program. He claims that some entries were deleted from his medical record and others were fraudulently inserted, such as the record indicating that he received a placebo of the vaccine. See Am. Compl. ¶¶ 27, 29, 35, 38. Plaintiff alleges that various test results from liver ultrasounds, scans, and consults previously existed in his VA Administration My Healthy Vet Portal. But when he logged into his account in October of 2022 to attach the records to his CICP claim, the tests were gone. Id. ¶ 35. Plaintiff claims that Defendant Damian Williams and a team of

FBI agents have an illegal clone of his electronic devices and iCloud through "special coding," allowing them to delete these records as part of a racketeering scheme. Id.


## LEGAL CLAIMS

In his Amended Complaint, Plaintiff alleges violations of the following statutes: the PREP Act; the Racketeer Influenced & Corrupt Organizations Act ("RICO"); the Computer Fraud and Abuse Act ("CFAA"); 18 U.S.C. § 1505; 38 U.S.C. § 7332; and 18 U.S.C. § 371. He also refers to 18 U.S.C. § 1519 and 10 U.S.C. § 923 in his original Complaint, but not in his Amended Complaint. Plaintiff seeks the following relief: an injunction ordering the VA Administration to release all records of Plaintiff's participation in the AstraZeneca study; a federal investigation into the obstruction of his CICP claim and deletion of entries from his medical records; a temporary restraining order against both covert agents and named defendants for obstructing his CICP claim; an order requiring the fair and impartial adjudication of his CICP claim; expert medical care; compensatory damages of $1.5 million from the VA Administration; compensatory damages of $1.5 million from the AstraZeneca Defendants. Am. Compl. ¶¶ 48-56.


**\*3**  All Defendants move to dismiss for lack of subject matter jurisdiction over Plaintiff's PREP Act claim and for failure to state a claim. Dr. Mulligan additionally moves to dismiss based on insufficient service of process and mootness. The Federal Defendants also move to dismiss based on sovereign immunity and mootness.


## DISCUSSION

### I. Dismissal for Insufficient Service of Process

Dr. Mulligan moves to dismiss under Rule 12(b)(5) of the Federal Rules of Civil Procedure for insufficient service of process. The action may be dismissed in its entirety as to Dr. Mulligan for insufficient service of process.


#### A. Legal Standards

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Dynegy Midstream Servs., LP v. Trammochem, 451 F.3d 89, 94 (2d Cir. 2006). The Court's mandate to construe a *pro se* plaintiff's pleadings liberally "does not excuse a *pro se* party from compliance with relevant rules of procedural and substantive law." Aponte v. Fischer, No. 14-cv-3989 (KMK), 2018 WL 1136614, at \*4 (S.D.N.Y. Feb. 28, 2018) (internal quotation marks omitted). "[I]n considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). The Court therefore considers both Plaintiff's allegations in his pleadings and the Declaration of Dr. Mulligan, filed in support of his motion to dismiss.

Under Rule 4(m), a plaintiff must serve a defendant within 90 days after the complaint is filed. If a plaintiff fails to serve a defendant in that time, "the court ... must dismiss the action without prejudice against the defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

"To establish good cause, 'a plaintiff must demonstrate that despite diligent attempts, service could not be made due to exceptional circumstances beyond his or her control.' " Deptula v. Rosen, 558 F. Supp. 3d 73, 85 (S.D.N.Y. 2021) (quoting Spinale v. United States, No. 03-cv-1704 (KMW)(JCF), 2005 WL 659150, at \*3 (S.D.N.Y. Mar. 16, 2005), aff'd sub nom. Spinale v. Ball, 352 F. App'x 599 (2d Cir. 2009)). In determining whether there is good cause to extend the time for service, "district courts must consider (1) the reasonableness and diligence of Plaintiff's efforts to serve, and (2) the prejudice to the Moving Defendants from the delay." Fantozzi v. City of New York, 343 F.R.D. 19, 26 (S.D.N.Y. 2022). Prejudice is a factor, but

even if there is no prejudice to a defendant, a court may dismiss for untimely service where there is no good cause for the failure to effectuate service. Delicata v. Bowen, 116 F.R.D. 564, 566 (S.D.N.Y. 1987) ("[T]he plain language of Rule 4(j) leaves no room for excusing untimely service where there is total failure to show good cause."). "[A] district court *may* grant an extension [of time to serve] in the absence of good cause, but it is not required to do so." Zapata v. City of New York, 502 F.3d 192, 197 (2d Cir. 2007) (emphasis in original). A plaintiff's *pro se* status does not impact this standard. Indeed, in the context of failing to effectuate proper service, "ignorance or confusion, even in the case of a *pro se* plaintiff, do not constitute good cause" for an extension. Cassano v. Altshuler, 186 F. Supp. 3d 318, 322 (S.D.N.Y. 2016).

### B. Application

**\*4** Plaintiff has failed to properly serve Dr. Mulligan despite numerous opportunities afforded by the Court to cure the deficient service. Plaintiff filed his Amended Complaint on April 25, 2024. ECF No. 37. The Court directed Plaintiff to serve Dr. Mulligan and the other Defendants within 90 days. ECF No. 38. In its Order, the Court instructed Plaintiff to serve a copy of the summons and Amended Complaint on each non-governmental Defendant in accordance with Rule 4(e) or Rule 4(h). Summonses were issued on May 7, 2024. ECF No. 46. Plaintiff was required by Rule 4(m) to serve the Amended Complaint on Dr. Mulligan by July 24, 2024. Plaintiff filed proof that he served Dr. Mulligan, indicating that he delivered a copy of the summons and Complaint, without a waiver of service form, to Dr. Mulligan's business address, not his residence. ECF No. 47. Dr. Mulligan's counsel attempted to advise Plaintiff on how to cure the deficient service. See Mulligan Decl., Ex. D, ECF No. 99-5.

The Court held a conference on June 26, 2024, where the Court again advised Plaintiff that he failed to properly serve Dr. Mulligan. ECF No. 64. In its written Order, the Court gave Plaintiff detailed instructions on how to serve Dr. Mulligan. Id. (explaining that Plaintiff can serve Dr. Mulligan personally, leave copies of the summons and complaint at Dr. Mulligan's residence with a suitable person, or deliver copies to an agent authorized to receive service). Instead, Plaintiff delivered the summons and Complaint to Dr. Mulligan's assistant at his workplace without also mailing a copy to Dr. Mulligan after.

Under Rule 4(e)(1), Plaintiff may serve Defendants under New York State service of process laws. N.Y. CPLR § 308(2) permits Plaintiff to execute substituted service by: (1) delivering summons to a person at Dr. Mulligan's residence or place of business, and (2) subsequently mailing a summons to Dr. Mulligan's residence or place of business. The delivery and mailing must be "effected within twenty days of each other." N.Y. CPLR § 308(2). Plaintiff did not mail the summons and Amended Complaint within 20 days of the service upon Dr. Mulligan's assistant. Plaintiff's May 23, 2024 mailing to Dr. Mulligan does not comply because it is more than 20 days before the July 15, 2024 delivery. See Mulligan Decl. ¶ 12; Id. at Exs. C-D. Plaintiff has thus failed to properly serve Dr. Mulligan.

The fact that Dr. Mulligan has actual notice of the action, has appeared in the case, and has filed this motion does not affect this conclusion. "Neither actual notice nor absence of prejudice to the defendant provides an adequate basis for excusing noncompliance with Rule 4(m) ...." Cassano, 186 F. Supp. 3d at 323 (quoting Mused v. U.S. Dep't of Agric. Food & Nutrition Serv., 169 F.R.D. 28, 34 (W.D.N.Y. 1996)); see also Sartor v. Toussaint, 70 F. App'x 11, 13 (2d Cir. 2002) ("Nor can actual notice of suit cure a failure to comply with the statutory requirements for serving process."); McGann v. New York, 77 F.3d 672, 675 (2d Cir. 1996) (affirming the district court's dismissal for insufficient service of process where the court gave the *pro se* plaintiff "careful instructions and ample opportunity to effectuate proper service" but he still failed to comply).

Rule 4(m) instructs the Court to extend time for service if good cause exists for failure, but no good cause exists here. Plaintiff cannot demonstrate that he has made "diligent attempts" but has failed to serve Dr. Mulligan "due to exceptional circumstances beyond his [ ] control." Deptula, 558 F. Supp. 3d at 85. Plaintiff was instructed by both opposing counsel and the Court how to properly effectuate service, and he has not made diligent attempts to cure. While prejudice to Dr. Mulligan is limited, "Rule 4(j) leaves no room for excusing untimely service where there is total failure to show good cause," so the Court will not grant a further extension of time. Delicata, 116 F.R.D. at 566.

**\*5** Therefore, I recommend that the Court dismiss the Amended Complaint against Dr. Mulligan in its entirety for insufficient service of process under Rule 12(b)(5).

## II. Dismissal for Lack of Subject Matter Jurisdiction

All Defendants move to dismiss various claims for lack of subject matter jurisdiction under Rule 12(b)(1). The Court "must verify the existence of subject-matter jurisdiction before proceeding to the merits." Embiata v. Farmers Ins. Corp., 848 F. App'x 27, 29 (2d Cir. 2021) (internal quotations omitted). If a court lacks subject matter jurisdiction, dismissal is mandatory. Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); see also Fed. R. Civ. P. 12(h)(3). "[I]t is the plaintiff's burden to demonstrate that jurisdiction exists." Sty-Lite Co. v. Eminent Sportswear Inc., 115 F. Supp. 2d 394, 399 (S.D.N.Y. 2000) (citing Universal Reinsurance Co., Ltd. v. St. Paul Fire & Marine Ins. Co., 224 F.3d 139, 140 (2d Cir. 2000)).

All Defendants argue that the court lacks subject matter jurisdiction over Plaintiff's PREP Act claim because of immunity and because the only proper venue for such a claim is the District Court for the District of Columbia. The Federal Defendants further argue that the Court lacks jurisdiction over them for Plaintiff's CFAA, RICO, and 38 U.S.C. § 7332 claims because they are immune. Because the Court cannot consider whether Plaintiff has stated a plausible claim if it lacks jurisdiction over the case, the Court considers these two jurisdictional issues first.

### A. PREP Act Jurisdiction

Plaintiff brings claims against all Defendants under the PREP Act, 42 U.S.C. §§ 247d-6d, 247d-6e. All Defendants move to dismiss these claims for lack of jurisdiction. Under the PREP Act, a person who has a "covered injury" may bring a claim for compensation from the Covered Countermeasure Process Fund. But the PREP Act provides immunity from suit for the United States and manufacturers, distributors, program planners, and other qualified persons who prescribed, administered, or dispensed a qualified countermeasure. 42 U.S.C. § 247d-6d(i)(2). "Program Planners" in the context of the PREP Act include individuals who "supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product." Id. at § 247d-6d(b)(i)(6). The PREP Act therefore precludes claims against "a manufacturer in creating a vaccine, or negligence by a health care provider in prescribing the wrong dose." Shapnik v. Hebrew Home for Aged at Riverdale, 535 F. Supp. 3d 301, 307 (S.D.N.Y. 2021).

There is only one exception to this immunity: cases of death or serious physical injury that are proximately caused by willful misconduct by a covered person. 42 U.S.C. § 247d-6d(d). But a suit under this limited exception to immunity "shall be filed and maintained only in the United States District Court for the District of Columbia." 42 U.S.C. § 247d-6d(e)(1).

Defendants are immune from liability under the PREP Act by the express language of the statute. Plaintiff can file suit against them only if he alleges willful misconduct. Plaintiff does not allege willful misconduct in those terms in his Amended Complaint, but in his Opposition to the Motions to Dismiss, Plaintiff clarifies that he means to bring suit under this provision. Opp. ¶ 26, ECF No. 113, at 18. He argues that the Defendants engaged in willful misconduct "pertaining to the design & perpetration of" the vaccine, causing "significant lifelong physical and mental injuries," including Plaintiff's liver disease; deep vein thrombosis; daily migraines; and neurological damage to his memory, motor function, and thought processing. Id. Plaintiff also claims that Dr. Jay and Dr. Mulligan engaged in willful misconduct by manipulating and fabricating research data and by administering to Plaintiff doses of the vaccine that might have been expired or might have contained harmful contaminants. Opp. ¶ 41, ECF No. 113, at 34-35. He argues that Dr. Jay made false statements to representatives of the Department of Justice and failed to notify both AstraZeneca and the FDA of Plaintiff's adverse reaction to the COVID vaccine. Opp. ¶ 42, ECF No. 113, at 35.

**\*6** Construing Plaintiff's Amended Complaint in the light most favorable to him, the Court assumes that Plaintiff pleads a claim of willful misconduct under the PREP Act. The Court lacks subject matter jurisdiction over this claim and must dismiss under Rule 12(b)(1). Cases of willful misconduct must be litigated in the District Court for the District of Columbia. 42 U.S.C. § 247d-6d(e)(1). Plaintiff previously brought a similar lawsuit under the PREP Act in the Southern District of New York. See Perez v. Oxford Univ., 2022 WL 1468438, at *2. That case was dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction for the same reason. Because any other claim under the PREP Act would be barred by the Act's immunity, the Court does not have subject matter jurisdiction over any claim by Plaintiff under the PREP Act.

**B. Sovereign Immunity**

The Federal Defendants move to dismiss Plaintiff's CFAA, RICO, and 38 U.S.C. § 7332 claims as barred by sovereign immunity. "The doctrine of sovereign immunity is jurisdictional in nature," so the Court must consider the Federal Defendants' sovereign immunity arguments before proceeding to the merits of Plaintiff's claims. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Dismissal based on sovereign immunity is a jurisdictional dismissal under Rule 12(b)(1). See Cangemi v. United States, 13 F.4th 115, 134 (2d Cir. 2021).

Plaintiff sues the Federal Defendants in their official capacities. A suit against federal officers in their official capacities "is essentially a suit against the United States" that is barred by sovereign immunity. Robinson v. Overseas Mil. Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994). Federal courts lack subject matter jurisdiction over actions against the government where the government has not waived its sovereign immunity. Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").

The Federal Defendants are immune from suit as to Plaintiff's CFAA, RICO, and 38 U.S.C. § 7332 claims. "Sovereign immunity bars claims against the United States under the CFAA ...." Manchanda v. Reardon, No. 23-cv-9292 (JPC)(KHP), 2023 WL 8879226, at *5 (S.D.N.Y. Dec. 22, 2023) (citing Garland-Sash v. Lewis, No. 05-cv-6827 (WHP), 2007 WL 935013, at *3 (S.D.N.Y. Mar. 26, 2007), aff'd in part, vacated in part on other grounds, 348 F. App'x 639 (2d Cir. 2009)). While the federal government can waive its sovereign immunity, the text of the CFAA does not contain a waiver of sovereign immunity. Garland-Sash, 2007 WL 935013, at *3. Sovereign immunity also bars civil RICO claims against the United States. Manchanda, 2023 WL 8879226, at *5; see also Spinale v. United States, No. 03-cv-1704 (KMW)(JCF), 2004 WL 50873, at *7-8 (S.D.N.Y. Jan. 9, 2004). Finally, the Federal Defendants are immune from suit under 38 U.S.C. § 7332, which also does not contain a waiver of sovereign immunity. See Conyers v. U.S. Dep't of Veterans Affs., No. 16-cv-00013 (JFB)(SIL), 2017 WL 722107, at *13 (Jan. 10, 2017), report and recommendation adopted, 2017 WL 728228 (E.D.N.Y. Feb. 22, 2017). Therefore, these three claims as asserted against the Federal Defendants must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

**III. Dismissal for Failure to State a Claim**

Although the Amended Complaint does not explicitly set forth causes of action, Plaintiff cites the following statutes in both his Complaint and his Amended Complaint: the PREP Act; RICO; the CFAA; 18 U.S.C. § 371; 18 U.S.C. § 1505; 18 U.S.C. § 1519; 38 U.S.C. § 7332; and 10 U.S.C. § 923. As discussed above, the PREP Act claim must be dismissed as to all Defendants for lack of subject matter jurisdiction. The RICO, CFAA, and 38 U.S.C. § 7332 claims must be dismissed as to the Federal Defendants on sovereign immunity grounds.

**\*7** The remaining claims should all be dismissed for failure to state a claim under Rule 12(b)(6). Though I recommend that the Court dismiss the entire action as to Dr. Mulligan for insufficient service of process, this Part also addresses the merits of Plaintiff's claims against Dr. Mulligan as an alternative basis for dismissing. See George v. Pro. Disposables Int'l, Inc., 221 F. Supp. 3d 428 (S.D.N.Y. 2016) (adopting a report and recommendation that recommended dismissal under Rule 12(b)(5) and Rule 12(b)(6), in the alternative). It demonstrates that Plaintiff should not be granted leave to serve Dr. Mulligan because the claims against him are without merit.

**A. Legal Standards**

A complaint must be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a legally sufficient claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In evaluating a complaint under this standard, a court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 556. Courts may consider documents and exhibits attached to the complaint or incorporated by reference. Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016).

While the plausibility standard "does not require detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (internal quotation marks omitted); see also Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 709 (2d Cir. 2002) (stating that a court need not give "credence to [a] plaintiff's conclusory allegations"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient to survive a motion to dismiss under Rule 12(b)(6). Id. (internal quotation marks omitted).

Where a plaintiff proceeds *pro se,* their complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). When addressing a motion to dismiss, "courts must construe [a *pro se* complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 145-46 (2d Cir. 2002). Courts "are obligated to draw the most favorable inferences that [a *pro se*] complaint supports," but "cannot invent factual allegations that [the plaintiff] has not pled." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

## B. RICO

The Court evaluates Plaintiff's RICO claim under Rule 12(b)(6) only as to the AstraZeneca Defendants and Dr. Mulligan because the Federal Defendants are immune.

### 1. Legal Standards

To plead a civil RICO claim, Plaintiff must first show standing to assert the claim, and RICO standing is "a more rigorous matter than standing under Article III." Denney v. Deutsche Bank AG, 443 F.3d 253, 266 (2d Cir. 2006). The private civil cause of action under RICO states, "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue ...." 18 U.S.C. § 1964(c). The Court of Appeals for the Second Circuit has distilled this language into three standing requirements to prove a civil RICO claim. "To satisfy RICO's standing requirements, a plaintiff must demonstrate, (1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation." Motorola Credit Corp. v. Uzan, 322 F.3d 130, 135 (2d Cir. 2003) (internal quotation marks omitted).

*8 To satisfy the first standing requirement, Plaintiff must meet the substantive requirements of 18 U.S.C. § 1962, known as "criminal RICO." Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983). There are seven elements Plaintiff must show to allege a claim under section 1962: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." Id. (internal quotation marks omitted).

To satisfy the second standing requirement, Plaintiff's injury must be "clear and definite." Denney, 443 F.3d at 266. A plaintiff cannot recover under RICO for physical or emotional injuries. Williams v. Dow Chem. Co., 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003).

### 2. Application

Plaintiff's primary allegation under RICO is that all Defendants fabricated his medical record "in furtherance of a racketeering scheme and enterprise to cover up plaintiff's injuries [and] defraud the United States Government." Am. Compl. ¶ 29. He alleges a conspiracy, led by Defendant Damian Williams, wherein the conspirators "deliberately deleted" test results to keep Plaintiff socioeconomically dependent on his disability pay. Id. ¶ 35. As to the AstraZeneca Defendants, Plaintiff alleges only that they have "a decade long history of corrupt practices and racketeering in the United States." Id. ¶ 22.

Plaintiff provides some additional facts in his opposition brief. Generally, a complaint "cannot be amended by the briefs in opposition to a motion to dismiss." Weir v. City of New York, No. 05-cv-9268 (DFE), 2008 WL 3363129, at *9 (S.D.N.Y. Aug. 11, 2008). But even construing Plaintiff's submissions in the least stringent manner possible and considering the factual and legal allegations in his opposition brief, Plaintiff cannot sustain a RICO claim. He claims that AstraZeneca employees, Dr. Mulligan, and Dr. Jay all worked together to manipulate, modify, and delete data to engineer outcomes in the COVID-19 vaccine trial, putting "vulnerable minorit[ies] and economically disenfranchised veterans at higher levels of danger." Opp. at ¶ 38, ECF No. 113, at 25. As support, Plaintiff cites instances where the vaccine's distribution and use were paused or terminated both domestically and internationally. He also claims that AstraZeneca failed to inform participants in the study after it paused the use of the vaccine in Europe. Id.

Taking all these allegations together, Plaintiff has failed to allege sufficient facts to establish a civil RICO claim. The only non-conclusory factual allegations in Plaintiff's Amended Complaint surround his physical and emotional injury. He cannot establish RICO standing because he has not provided facts alleging a "clear and definite" injury to business or property. Denney, 443 F.3d at 266. Plaintiff also has not alleged sufficient facts to make out a claim under 18 U.S.C. § 1962, or criminal RICO. Plaintiff's vague assertions of fraud and conspiracy by all Defendants are insufficient to show an "enterprise." Because Plaintiff's Amended Complaint does not "explain each participant's role in the alleged course of fraudulent or illegal conduct," the civil RICO claim must be dismissed for failure to state a claim. First Cap. Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 175 (2d Cir. 2004); see also Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP, No. 20-cv-9784 (PGG)(JW), 2022 WL 901660, at *20-21 (S.D.N.Y. Mar. 28, 2022) (dismissing a pro se civil RICO claim for failing to allege the structure or operation of the enterprise). Plaintiff makes conclusory, unsupported allegations about various groups of Defendants without pleading with the specificity required to establish RICO standing.

**\*9** Plaintiff also cannot show a "pattern" of racketeering activity. "Under any prong of § 1962, a plaintiff in a civil RICO suit must establish a 'pattern of racketeering activity.' " GICC Cap. Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995). To establish a pattern of racketeering activity, "[t]he plaintiff must plead at least two predicate acts ... and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." Id. (citing H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)). The statute lists various predicate acts that qualify. 18 U.S.C. § 1961(1). Plaintiff has not pleaded facts sufficient to infer that Defendants have committed one, let alone two or more, predicate acts. Because Plaintiff cannot show a pattern of racketeering activity, his RICO claim must be dismissed.

To the extent Plaintiff alleges a RICO conspiracy claim, that too must be dismissed. To state a RICO conspiracy claim, Plaintiff must allege "the existence of an agreement to violate RICO's substantive provisions." Williams v. Affinion Grp., LLC, 889 F.3d 116, 124 (2d Cir. 2018) (citing United States v. Sessa, 125 F.3d 68, 71 (2d Cir. 1997)). But "without a sufficiently pleaded substantive RICO violation under 18 U.S.C. § 1962(c), [a] conspiracy claim under 18 U.S.C. § 1962(d) fails as well." Smulley v. Fed. Hous. Fin. Agency, 754 F. App'x 18, 24 (2d Cir. 2018). Because Plaintiff has not sufficiently pleaded a substantive RICO violation under section 1962(c), he has not sufficiently pleaded a RICO conspiracy claim.

Plaintiff's RICO claim should be dismissed under Rule 12(b)(6) as to all Defendants.

## C. CFAA

The Court evaluates Plaintiff's CFAA claim under Rule 12(b)(6) only as to the AstraZeneca Defendants because the Court does not have jurisdiction to assess the merits of this claim as to the Federal Defendants, and Plaintiff alleges this claim against only these defendants. There are no allegations in his Complaint or Amended Complaint that Dr. Mulligan accessed Plaintiff's computer or data without authorization.

The CFAA is primarily a criminal statute, but there is a civil cause of action under § 1030(g) available in "certain narrowly defined circumstances." Univ. Sports Publ'ns Co. v. Playmakers Media Co., 725 F. Supp. 2d 378, 382 (S.D.N.Y. 2010). The Court construes Plaintiff's pleadings liberally to assert a claim under 18 U.S.C. § 1030(g). Section 1030(g) provides a cause of action for "[a]ny person who suffers damage or loss" exceeding $5,000. 18 U.S.C. § 1030(g); see also JBCHoldings NY LLC,

v. Pakter, 931 F. Supp. 2d 514, 520 (S.D.N.Y. 2013). To state a claim for relief under a civil CFAA claim, Plaintiff must show that the AstraZeneca Defendants "(1) intentionally accessed a 'protected computer,' (2) 'without authorization or exceeding authorized access,' and ... (3) caused a 'loss' of more than $5,000." Socialedge, Inc. v. Traackr, Inc., No. 23-cv-6860 (PAE), 2024 WL 1533624, at *5 (S.D.N.Y. Apr. 9, 2024) (quoting Better Holdco., Inc. v. Beeline Loans, Inc., No. 20-cv-8686 (JPC), 2021 WL 3173736, at *3 (S.D.N.Y. July 26, 2021)).

Each of these three requirements has specific parameters. A "protected computer" is a computer that is "exclusively for the use of a financial institution or the United States Government" or one that is used by or for a financial institution or the United States Government, and the offending conduct affects that use. 18 U.S.C. § 1030(e)(2). "The term 'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." Id. § 1030(e)(6). "Loss" is defined as "any reasonable cost to any victim ... and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." Id. § 1030(e)(11); see also Garland-Sash v. Lewis, No. 05-cv-6827 (WHP), 2011 WL 6188712, at *3 (S.D.N.Y. Dec. 6, 2011). "Loss" includes only costs that are actually related to computers. Losses are "any remedial costs of investigating the computer for damage, remedying the damage and any costs incurred because the computer cannot function while or until repairs are made." Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 474 (S.D.N.Y. 2004).

 **\*10** Here, Plaintiff alleges that a team of FBI agents has an illegal clone of his electronic devices and unfettered access to his IP address through "special coding." Am. Compl. ¶ 35. He believes these agents deliberately deleted his medical tests and "deliberately inserted into a classified government computer system" a fake medical record indicating that he received a placebo in the vaccine trial. Id. ¶¶ 29, 35. Plaintiff does not include any specific factual allegations of actions by the AstraZeneca Defendants that amount to unauthorized access.

Plaintiff's allegations as to his own devices and computers are not actionable. Plaintiff's personal computer is not a "protected computer" under the text of the statute. His allegations that agents have inserted fake medical records and deleted other records from his VA electronic health records may relate to "protected computers," but they are still insufficient to state a claim. None of his allegations name specific individuals, so the few factual allegations in the Amended Complaint are too vague to plausibly state a claim for relief. Plaintiff included an exhibit showing that he received a placebo vaccine during the trial. But he includes no facts plausibly showing that he did not, in fact, receive the placebo during the trial or that this medical record has been altered. Plaintiff also has not shown that he suffered "loss" of at least $5,000 specifically related to the computer.

As for any allegations that the AstraZeneca Defendants were involved in unauthorized access, Plaintiff has not pleaded sufficient facts to show that they were not authorized to access his records. As a voluntary participant in the AstraZeneca vaccine trial, AstraZeneca had permission to access Plaintiff's VA health records. Even if Plaintiff had sufficiently pleaded that the AstraZeneca Defendants accessed his records for an improper purpose (and he has not), the CFAA does not "cover circumstances where an entity has permission to access certain information and then uses that information for an improper purpose." Redcell Corp v. A.J. Trucco, Inc., No. 20-cv-18 (AT)(SLC), 2022 WL 683007, at *4 (S.D.N.Y. Mar. 8, 2022) (internal quotation marks omitted). Plaintiff does not allege that the AstraZeneca Defendants were involved in the alleged alteration or deletion of entries from his medical record. Thus, Plaintiff has not provided sufficient facts to state a claim under the CFAA, only conclusory allegations without factual support.

### D. Claims With No Private Right of Action

Plaintiff alleges claims under 18 U.S.C. § 371, 18 U.S.C. § 1505, 18 U.S.C. § 1519, 10 U.S.C. § 923, and 38 U.S.C. § 7332. None of these statutes provide a private right of action under which Plaintiff may sue. If a "federal statute does not provide a private right of action," an action pleaded under that statute is "typically subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) ... for failure to state a claim." Fair v. Verizon Commc'ns Inc., 621 F. App'x 52, 53 (2d Cir. 2015). Therefore, these claims must be dismissed under Fed. R. Civ. P. 12(b)(6).

The first three sections arise under Title 18. 18 U.S.C. § 371 criminalizes conspiracies to commit an offense against the United States or defraud the United States. 18 U.S.C. § 1505 criminalizes obstruction of federal proceedings. 18 U.S.C. § 1519 criminalizes the destruction, alteration, or falsification of records with the intent to impede, obstruct, or influence a federal investigation. But none of these sections can form the basis of a civil lawsuit. Title 18 is a criminal statute, and individuals like Plaintiff cannot bring suits to correct private violations of criminal statutes. See Wright v. Waterside Plaza LLC, No. 07-cv-9303 (DC), 2008 WL 872281, at *2 (S.D.N.Y. Apr. 2, 2008) (describing that Title 18 claims fail as a matter of law because there is no private right to sue and dismissing a claim under 18 U.S.C. § 1519 on that basis); Kalola v. Int'l Bus. Machs. Corp., No. 19-cv-9900 (VB), 2019 WL 6879307, at *3 (S.D.N.Y. Dec. 16, 2019) (dismissing a claim under 18 U.S.C. § 1519 because there is no private right of action); Mills v. Luplow, No. 04-cv-00005 (A)(M), 2009 WL 2606240, at *7 (W.D.N.Y. Mar. 31, 2009) (finding same for a claim under 18 U.S.C. § 1505); Pagan v. Halouvas, No. 05-cv-4697 (JS)(ARL), 2007 WL 9710707, at *4 (E.D.N.Y. Mar. 29, 2007) (finding same for a claim under 18 U.S.C. § 371).

**\*11** The next section, 10 U.S.C. § 923, is a provision of the Uniform Code of Military Justice that criminalizes "[a]ny person subject to this chapter who ... knowingly accesses a Government computer, with an unauthorized purpose" and, through that access, obtains classified information that could be used to the injury of the United States. 10 U.S.C. § 923(a)(1). First, "person subject to this chapter" is defined in 10 U.S.C. § 802 to be limited to individuals in the armed forces. But even so, 10 U.S.C. § 923 is not enforceable by private citizens. See Rush v. Hillside Buffalo, LLC, 314 F. Supp. 3d 477, 482 n.3 (W.D.N.Y. 2018) (noting that private citizens do not have standing to enforce or prosecute criminal statutes like the Uniform Code of Military Justice). Because the statute does not vest Plaintiff with a private right of action, his claim under 10 U.S.C. § 923 must be dismissed.

Plaintiff also cites 38 U.S.C. § 7332. This statute relates to the confidentiality of certain medical records. Like the sections under Title 18, this statute does not contain a private right of action. Conyers, 2017 WL 722107, at *13. Therefore, Plaintiff's claim under 38 U.S.C. § 7332 must be dismissed.

### E. Claims in Plaintiff's Opposition Brief

Plaintiff lists two additional claims in his opposition brief that are not listed in his Complaint or Amended Complaint: the Food, Drug, and Cosmetic Act and the False Claims Act. [3] The Court will not consider these claims because a complaint "cannot be amended by the briefs in opposition to a motion to dismiss." Weir, 2008 WL 3363129, at *9.

[3]     Plaintiff has already once attempted to bring a False Claims Act lawsuit against many of these same Defendants in the Southern District of New York. That case was dismissed, in part because *pro se* litigants may not bring False Claims Act cases, which can be brought only by represented private plaintiffs in a *qui tam* action. See Perez, 2022 WL 15523951, at *2 (dismissing without prejudice and explaining that Plaintiff may bring a False Claims Act again in a separate action only if he is represented by an attorney).

### IV. Mootness

The Court next addresses whether Plaintiff's records claim is moot. It is clear from Plaintiff's Complaint and Amended Complaint that part of the relief he seeks includes a release of his medical records documenting his participation in the COVID-19 vaccine study. But it is not clear under what source of authority Plaintiff seeks this relief. Based on the statutes cited by Plaintiff and construing his Amended Complaint liberally, only three could possibly form the basis of a request for his medical records: 18 U.S.C. § 1505, 18 U.S.C. § 1519, and 38 U.S.C. § 7332. In Part III, the Court recommended dismissing the claims as to all three of these statutes because not one provides a private right of action.

But even if one of these statutes or another cause of action existed to vest the Court with the power to order the records produced, the records have already been produced and the claim is moot. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nicholas v. Trump, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020). Article III permits the federal courts to adjudicate only live "Cases" and "Controversies." See DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) ("The inability of the federal judiciary 'to review moot

cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.' " (quoting Liner v. Jafco, Inc., 375 U.S. 301, 306 n.3 (1964))). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983). If a plaintiff receives "the full relief he requested," then his action is moot. Silva v. U.S. Citizenship & Immigr. Servs., No. 13-cv-8920 (VB), 2015 WL 2330304, at *2 (S.D.N.Y. Mar. 26, 2015) (quoting St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 694 n.2 (2d Cir. 1989)).

**\*12**  Plaintiff's records request claim is moot, so the Court cannot exercise jurisdiction over it. In deciding this issue, the Court may look beyond the pleadings and consider evidence proffered by a defendant. See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016). Thus, the Court considers Dr. Mulligan's proffer in his motion to dismiss and attached declaration. After Dr. Mulligan learned of Plaintiff's demand, he gathered all records in his possession, custody, and control and produced them to Plaintiff on August 15, 2024. See ECF Nos. 99-1, at 2; 99-2. According to Dr. Mulligan's counsel, Plaintiff accessed these records the same day. ECF No. 99-1, at 3. To the extent Plaintiff requests that Dr. Mulligan produce these records to the CICP, Dr. Mulligan offered to do so if Plaintiff provided a written authorization. Id. Plaintiff did not provide such authorization. See ECF No. 99-3, at 2. By producing the requested documents, Dr. Mulligan has effectively mooted the claim for relief. Because there is no active case or controversy regarding Plaintiff's records claim as to Dr. Mulligan, the Court cannot exercise subject matter jurisdiction over any claim for the release of Plaintiff's records.

With respect to the Federal Defendants, Plaintiff's records claim is also moot. His records claim against the Federal Defendants seems directed at the Department of Veterans Affairs, which holds the records he seeks. But Plaintiff has not named the Department in this action. The Court will not recommend granting leave to amend, as described below. But even if Plaintiff were permitted to amend to include the Department, the claim is moot. "[W]hen a plaintiff asks a court to compel a federal official to act, and the federal official has already performed that act, the claim is moot ...." Torres v. United States Dep't of State, No. 18-cv-9555 (KMK), 2020 WL 1489803, at *4 (S.D.N.Y. Mar. 27, 2020) (quoting Mahon v. Johnson, 321 F. Supp. 3d 320, 323 (E.D.N.Y. 2018)). Here, the federal official has already acted. The Federal Defendants have proffered that the Department has released all of the records to the CICP. Spector Decl. ¶ 6, ECF No. 105. Therefore, Plaintiff's records claim as to the Federal Defendants is moot.

## LEAVE TO AMEND

Rule 15(a)(2) requires that leave to amend be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Generally, *a pro se* litigant should be granted leave to amend to cure any deficiencies in a complaint. The Court of Appeals cautions that when addressing *a pro se* plaintiff, a district court should not dismiss the complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)). Because Plaintiff cannot allege new facts to cure the deficiencies in his pleadings, amendment would be futile with respect to all of his claims.

Plaintiff cannot amend to cure the jurisdictional deficiencies that warrant the dismissal of his PREP Act claim as to all Defendants and his CFAA, RICO, and 38 U.S.C. § 7332 claims as to the Federal Defendants. The PREP Act claim can be brought only in the District Court for the District of Columbia, so there are no additional allegations Plaintiff can plead to sustain this cause of action within the Southern District of New York's jurisdiction. He also cannot include additional facts to resurrect the claims dismissed on sovereign immunity grounds. See Smith v. United States, 554 F. App'x 30, 32 (2d Cir. 2013) (affirming denial of leave to amend because the claim was dismissed on sovereign immunity grounds, a "fatal substantive defect"); Conyers, 2017 WL 722107, at *15-16 (recommending that leave not be granted to amend because the claim under 38 U.S.C. § 7332 was barred by sovereign immunity, making amendment futile). For the statutes that do not create private causes of action, there are similarly no additional facts Plaintiff can plead to state a cognizable claim upon which relief may be granted.

Plaintiff's claims that are denied as moot also cannot be amended. The Court should not grant leave to amend because the relief sought is no longer needed, so amendment would be futile. See Silva, 2015 WL 2330304, at *3 (denying leave to amend for a *pro se* plaintiff whose claim was moot and therefore could not be cured).

**\*13** Plaintiff cannot amend his RICO and CFAA claims to sufficiently state a claim. Plaintiff's RICO claim fails, in part, because he has failed to allege a pattern of racketeering behavior. He cannot point to even one predicate act, let alone multiple. There is no indication that Plaintiff can plead additional facts to support multiple predicate acts. See Liang v. Home Reno Concepts, LLC, 803 F. App'x 444, 447-48 (2d Cir. 2020) (affirming the district court's denial of leave to amend because plaintiff could not allege additional facts to show a pattern of racketeering). Plaintiff also cannot plead additional facts to save his CFAA claim. Any claims about his personal computer are not actionable under the statute, and he cannot plead additional facts that bring alleged conduct by the AstraZeneca Defendants within the ambit of the statute. See Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC, 159 F. Supp. 3d 324, 335-36 (E.D.N.Y. 2016) (denying leave to amend as futile where plaintiff could not support a CFAA claim because plaintiff could not show that defendants exceeded authorized access).

Plaintiff has attempted three times to bring legal claims to redress the harm he believes he suffered through his participation in the COVID-19 vaccine trial. See Perez, 2022 WL 1446543; Perez v. Oxford University, No. 1:22-cv-01560 (D.D.C. Sept. 23, 2022); Perez v. Oxford University, 2022 WL 15523951. He has never been successful because of both substantive and procedural defects. Plaintiff should not be permitted to amend once more.

## CONCLUSION

I recommend that the Court DISMISS Plaintiff's Amended Complaint in its entirety without leave to amend. Plaintiff's failure to serve Dr. Mulligan warrants dismissal without prejudice under Fed. R. Civ. P. 12(b)(5), and good cause does not exist to extend time for service because the claims are futile and would be dismissed on the merits. Plaintiff's claim under the PREP Act should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. His RICO, CFAA, and 38 U.S.C. § 7332 claims as to the Federal Defendants are barred by sovereign immunity. Any records claims Plaintiff asserts are moot. All of Plaintiff's claims, as liberally interpreted, fail to state a claim under Fed. R. Civ. P. 12(b)(6) and should be dismissed with prejudice.

* * *

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); see Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed. R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable Vernon S. Broderick if required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Broderick. See Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. James, 712 F.3d 79, 105 (2d Cir. 2013).

**All Citations**

Slip Copy, 2025 WL 2933587

---

🏳 KeyCite Blue-Striped Flag

Appeal Filed by   Perez v. Evans,   2nd Cir.,   September 30, 2025

2025 WL 2726792
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Eric Andrew PEREZ, Plaintiff,
v.
Dr. Neil C. EVANS, et al., Defendants.

24-CV-356 (VSB) (SN)
|
Signed September 25, 2025

**Editor's Note:** This decision contains discussion of citation references that are incorrect or do not actually exist. These invalid citations appeared in the original court opinion and have been preserved as written since they are part of the official record. Any links to these invalid citations have been removed.

**Attorneys and Law Firms**

Eric Andrew Perez, San Antonio, FL, Pro se Plaintiff.

Rebecca Lynn Salk, United States Attorney's Office for the Southern District of New York, New York, NY, Counsel for Defendants Dr. Neil C. Evans, Carol Johnson, George Reed Grimes, Damian Williams, and Melanie Jay.

Jodyann Galvin, Cheyenne Nicole Freely, Hodgson Russ LLP, Buffalo, NY, Counsel for Defendant Dr. Mark J. Mulligan.

Alexander Cousins, Arthur Edward Brown, Arnold & Porter Kaye Scholer LLP, New York, NY, Counsel for Defendants AstraZeneca AB, AstraZeneca Pharmaceuticals LP, and AstraZeneca UK Ltd.

## OPINION & ORDER

VERNON S. BRODERICK, United States District Judge:

 **\*1**  Before me are pro se Plaintiff Eric Andrew Perez's objections to Magistrate Judge Sarah Netburn's Report and Recommendation, which recommends that I dismiss Plaintiff's Amended Complaint with prejudice. For the reasons that follow, Plaintiff's objections are OVERRULED, Judge Netburn's Report and Recommendation is ADOPTED in its entirety, and Plaintiff's Amended Complaint is DISMISSED with prejudice.

### I. Factual Background

Plaintiff Eric Andrew Perez ("Plaintiff" or "Perez"), a veteran of the United States Marine Corps, participated in a clinical trial of AstraZeneca's COVID-19 vaccine at the Department of Veterans Affairs ("VA"). (Doc. 37 ("Am. Compl.") ¶¶ 6, 21.) Perez claims that he received the vaccine in two doses, on December 22, 2020, and January 19, 2021. (*Id.* ¶ 37; *see also* Doc. 132 ("Report") at 2.) Immediately after receiving the first dose of the vaccine, Plaintiff states that he began suffering from a host of medical issues, including migraines, non-alcoholic fatty liver disease, and persistent peroneal vein thrombosis in his right calf, all of which Plaintiff attributes to the vaccine. (Am. Compl. ¶¶ 31, 33.)

In February 2021, the director of the vaccine study informed Plaintiff that he had not received the vaccine and instead received a placebo. (*Id.* ¶ 29.) Plaintiff alleges that the portion of his medical record indicating he received a placebo is fraudulent and was created as part of a broader conspiracy. (*Id.* ¶¶ 22, 29.)

Plaintiff then filed a claim through the Health Resources & Services Administration's Countermeasures Injury Compensation Program ("CICP"), (*id.* ¶¶ 27, 35), which is a federal program that compensates serious injuries or deaths that occur because of the administration of certain countermeasures during public health emergencies, (*see* Report at 3 (citing 42 U.S.C. § 247d-6e; 42 C.F.R. § 110)). The COVID-19 vaccine was declared a "covered countermeasure" on March 17, 2020, pursuant to the Public Readiness and Emergency Preparedness Act ("PREP Act"). *Id.* (citing 85 Fed. Reg. 15,198, at 15202 (Mar. 17, 2020).) CICP requested additional information and records from Plaintiff about his claim, and Plaintiff in turn filed a HIPPA request with the VA Medical Records Office requesting documentation of his participation in the AstraZeneca study. (Am. Compl. ¶¶ 43–45.) On September 13, 2023, the VA Medical Records Office denied Plaintiff's request due to his failure to properly complete the necessary paperwork. (*See* Doc. 1-1 at 6.)

Based on these events, Plaintiff asserts that his CICP claim is being "deliberately obstructed" by members of the federal government. (Am. Compl. ¶ 21.) Plaintiff alleges the existence of a widespread racketeering conspiracy between all Defendants to cover up experimentation on veterans through the COVID-19 vaccination program. (*Id.* at 9; *see also id.* ¶¶ 29, 35.) He claims his medical records have been deliberately altered as part of a cover-up of the conspiracy, and that certain Defendants have illegally cloned his electronic devices and iCloud, allowing them to delete and alter his records. (*Id.* ¶¶ 27, 29, 35, 38.)

## II. Procedural History

**\*2**  On January 16, 2024, pro se Plaintiff filed his complaint. (Doc. 1.) That same day, Plaintiff filed a consent to receive electronic service through the ECF system. (Doc. 4.) On April 3, 2024, I referred this case to Magistrate Judge Robyn F. Tarnofsky for general pretrial management. (Doc. 25.) On April 9, 2024, the referral was reassigned to Magistrate Judge Sarah Netburn. On April 25, 2024, Plaintiff filed an Amended Complaint against various Defendants, including Dr. Neil C. Evans, Carol Johnson, Dr. Mark J. Mulligan, George Reed Grimes, Damian Williams, AstraZeneca LP, AstraZeneca AB, AstraZeneca UK Lmdt, Melanie Jay, AstraZeneca Pharmaceuticals LP, and AstraZeneca UK Ltd. (Am. Compl.)

On September 6, 2024, Defendant Mark J. Mulligan moved to dismiss Plaintiff's Amended Complaint. (Doc. 99.) The same day, Defendants AstraZeneca AB, AstraZeneca Pharmaceuticals LP, and AstraZeneca UK Ltd. (collectively, the "AstraZeneca Defendants") also moved to dismiss, (Doc. 101), as did Defendants Neil C. Evans, George Reed Grimes, Melanie Jay, Carol Johnson, and Damian Williams (collectively, the "Federal Defendants"), (Doc. 103). On December 11, 2024, I referred the motions to dismiss to Magistrate Judge Netburn for a Report and Recommendation. (Doc. 125.)

On May 15, 2025, Magistrate Judge Netburn issued a thorough 27-page Report and Recommendation (the "Report"), recommending that I grant the motions to dismiss and dismiss Plaintiff's Amended Complaint with prejudice. (*See* Report at 26.) The Report notes that because Plaintiff cannot allege new facts to cure the deficiencies in the Amended Complaint, amendment would be futile with respect to all of his claims. (*Id.* at 24.)

On May 22, 2025, I granted Plaintiff's request to extend his time to object to the Report to July 14, 2025. (Doc. 135.) On July 14, 2025, Plaintiff filed objections to the Report. (Doc. 136 ("Obj.").) On July 28, 2025, Defendant Mark Mulligan filed a response to Plaintiff's objections, (Doc. 138), as did the AstraZeneca Defendants, (Doc. 139). On July 29, 2025, the Federal Defendants filed a response to Plaintiff's objections. (Doc. 140.)

On July 28, 2025, Plaintiff moved for a temporary restraining order. (Doc. 141.) On August 1, 2025, I issued an order informing Defendants that they need not respond to the motion for a temporary restraining order until after I issue my opinion regarding the pending Report. (Doc. 142.)

On September 19, 2025, Plaintiff filed a motion "requesting that the Court enter an emergency order directing the immediate preservation of all evidence and information potentially relevant to the above-captioned matter," (Doc. 144 at 1), in addition to another motion for preservation of evidence, (Doc. 145), and a proposed order granting Plaintiff's motions, (Doc. 146).

### III. Legal Standard

After a magistrate judge issues a report and recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "To accept the report and recommendation of a magistrate [judge], to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Trs. of Drywall Tapers & Pointers Loc. Union No. 1974 Benefit Funds v. Cite C Corp.*, No. 17-CV-9304, 2019 WL 1745743, at *1 (S.D.N.Y. Apr. 18, 2019) (internal quotation marks omitted). Where specific objections are made, the court is obligated to review the contested issues de novo. *See* Fed. R. Civ. P. 72(b)(3). However, when "the objecting party makes only conclusory or general objections, or simply reiterates the original arguments," the court will review the report only for clear error. *Jones v. Smith*, No. 09-CV-6497, 2012 WL 1592190, at *1 (S.D.N.Y. May 7, 2012) (collecting cases). "Moreover, parties may not raise new arguments for the first time in objections to a report and recommendation." *Erickson v. Jernigan Cap., Inc.*, 692 F. Supp. 3d 114, 120 (S.D.N.Y. 2023). In other words, "a party is not to be afforded a second bite at the apple when filing objections to a Report and Recommendation, as the goal of the federal statute providing for the assignment of cases to magistrate[ ] [judges] is to increase the overall efficiency of the federal judiciary." *Michaud v. Nippon Cargo Airlines, Co.*, No. 09-CV-3375, 2011 WL 5402642, at *1 (E.D.N.Y. Nov. 7, 2011) (internal quotation marks and alterations omitted). Even where exercising de novo review, a "district court need not ... specifically articulate its reasons for rejecting a party's objections or for adopting a magistrate judge's report and recommendation in its entirety." *Morris v. Loc. 804, Int'l Bhd. of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006) (summary order).

**\*3** Pro se complaints are afforded "special solicitude" and must be interpreted to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted). However, a pro se litigant is still "obligated to comply with the relevant rules of procedural and substantive law." *Doe v. Torres*, No. 05-CV-3388, 2006 WL 290480, at *3 (S.D.N.Y. Feb. 8, 2006). Accordingly, "where a pro se party's objections to a report and recommendation are 'conclusory or general,' or where a plaintiff 'simply reiterates his original arguments,' the report should be reviewed only for clear error." *DeGrate v. Broad. Music, Inc.*, No. 12-CV-1700, 2013 WL 639146, at *2 (S.D.N.Y. Feb. 20, 2013) (quoting *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002)).

### IV. Discussion

Plaintiff filed 81 pages of objections, in addition to 184 pages of exhibits. Without counting the pages of exhibits, Plaintiff's objections alone are three times the length of the Report itself, which is far longer than the permissible length of memoranda under the Local Rules in this District, *see* S.D.N.Y. Civ. Rule 7.1, as well as my Individual Rules, *see* Rule 4.B, *Individual Rules & Practices in Civil Cases for Judge Vernon S. Broderick*, and contrary to the purpose of referrals under the Federal Magistrates Act, which is to create efficiency. *See United States v. Gardin*, 451 F. Supp. 2d 504, 507 (W.D.N.Y. 2006).

Plaintiff acknowledges that he "used Chat GPT to draft his first draft of this submission."[1] (Obj. 2 n.1.) Plaintiff includes seventeen footnote citations to ChatGPT throughout his objections, including, for instance, a citation to a copy of a conversation in which an anonymous user, presumably Perez, prompted ChatGPT to "prepare legal memorandum countering government sovereignty claims." (*See, e.g.*, Obj. 46 n.28.) ChatGPT generated a non-case-specific legal memorandum in response, much of which is included in Plaintiff's Objections verbatim. (*See* Obj. 46–47.)

[1] ChatGPT is a generative artificial intelligence ("AI") tool.

Although I am unaware of any applicable federal or local rules prohibiting the use of AI during the course of litigation, *see Gordon v. Wells Fargo Bank N.A. Inc.*, No. 24-CV-388, 2025 WL 1057211, at *3 (M.D.Ga. Apr. 8, 2025); *Nelson v. Wash. Bd. of Indus. Appeals*, No. 25-CV-5551, 2025 WL 1772085, at *1 (W.D. Wash. June 26, 2025), and my Individual Rules do not

address the use of AI, litigants, including pro se parties, must adhere to their obligations under Rule 11(b) of the Federal Rules of Civil Procedure. Rule 11(b) states, in part, that "[b]y presenting to the court a pleading, written motion, or other paper ... [an] unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." At the bare minimum, this obligation requires litigants to carefully review every statement and citation drafted by AI to ensure that it is legally and factually correct, particularly given that AI tools make it much easier for pro se litigants to submit "voluminous" briefing. *See Thornock v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, No. 25-CV-56, 2025 WL 1900314, at *4 n.5 (E.D. Va. July 9, 2025).

**\*4** Here, Plaintiff failed to meet his obligations under Rule 11. At least two citations in Plaintiff's objections appear to be "hallucinated," a term used for citations produced by AI "that conform to the Bluebook, but ultimately are not real." *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 342 (E.D.N.Y. 2025); *see also Legal ChatGPT: Tips, Prompts, and Use Cases*, American Bar Association (Mar. 21, 2025), https://www.americanbar.org/groups/law_practice/resources/law-technology-today/2025/legal-chatgpt-tips-prompts-and-use-cases/ ("AI-powered chatbots are prone to hallucinations, have trouble understanding contextual nuances of the law, and have trained-in biases."). Since the advent of generative AI, hallucinated cases have become a disturbing problem in legal filings, and the "epidemic of citing fake cases has continued unabated." *Benjamin*, 779 F. Supp. 3d at 343; *see also Hall v. Acad. Charter Sch.*, No. 24-CV-08630, 2025 WL 2256653, at *4 (E.D.N.Y. Aug. 7, 2025) ("Regrettably, the number and regularity with which courts have been faced with hallucinations in court filings continues to rise both in this country and abroad."); *Pegnatori v. Pure Sports Techs. LLC*, No. 23-CV-01424, 2023 WL 6626159, at *5 n.5 (D.S.C. Oct. 11, 2023) ("[T]hus far ChatGPT's batting average in legal briefs leaves something to be desired."). Not only do citations to hallucinated cases run afoul of a litigant's obligation to verify that legal contentions are "warranted by existing law" under Rule 11(b), fake citations are also a profound waste of the opposing party's time, as well as the Court's time. As one court put it:

> When used carelessly, [AI] produces frustratingly realistic legal fiction that takes inordinately longer to respond to than to create. While one party can create a fake legal brief at the click of a button, the opposing party and court must parse through the case names, citations, and points of law to determine which parts, if any, are true. As AI continues to proliferate, this creation-response imbalance places significant strain on the judicial system.

*Ferris v. Amazon.com Servs., LLC*, 778 F. Supp. 3d 879, 880–81 (N.D. Miss. 2025).

Here, Plaintiff's argument that service of process on Defendant Mark Mulligan was substantially compliant utilizes the quotation "[w]hen there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process." (Obj. 28.) Plaintiff attributes that quotation to *Concepcion v. City of New York*, No. 05 Civ. 8501 (RJS), 2008 WL 5395720, at *4 (S.D.N.Y. Dec. 17, 2008). (*Id.*) This citation appears real because *Concepcion v. City of New York*, No. 05 Civ. 8501 (RJS), is a real case. However, there is no December 17, 2008 decision in *Concepcion*, nor is there any opinion in the Southern District of New York that corresponds to 2008 WL 5395720. Instead, through research I was able to find the quoted language in *Armco, Inc. v. Penrod-Stauffer Building Systems, Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). In *Armco*, immediately after stating that not every technical violation invalidates service where there is actual notice, the Fourth Circuit stated "[b]ut the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Id.* The *Armco* court held that service of process was not valid and remanded the case to the district court with instructions to vacate the default judgment entered against the defendant as void on that basis. *Id.* at 1089–90. Accordingly, Plaintiff's version of the *Armco* quotation is not only falsely attributed to a hallucinated case, but it leaves out crucial context undermining Plaintiff's legal argument.

Similarly, in the PREP Act portion of Plaintiff's objections, (Obj. 38–45), Plaintiff cites *United States v. Peterson*, No. 3:17-cr-00065 (D. Conn. 2018), and states that "[i]n this case, the court found that deception about the officers' identity and intent undermined the validity of the consent given." (Obj. 41.) The case corresponding to No. 3:17-cr-00065 in the District of Connecticut is actually *United States v. Cook, et al.*, and there is no defendant in that case by the name of Peterson or any language in that case that support Plaintiff's statement. I suspect that Defendant's hallucinated citation is a scrambled version of *United States v. Peterson*, No. 3:18-CR-00049, 2018 WL 6061571 (D. Conn. Nov. 20, 2018), a case which discusses the issue of law enforcement officers making misrepresentations to a criminal defendant. However, the holding of *Peterson* is the opposite of what Defendant claims. The *Peterson* court found that while police began their interview with the defendant in a "somewhat misleading" manner, the defendant nonetheless "voluntarily consented to the officers entering into and remaining in his home" given the totality of the circumstances. *Id.* at *6–7. Use of these "hallucinations" are a violation of Rule 11(b) and a tremendous waste of my time and the parties' time.[2] Nonetheless, I decline to impose sanctions on Plaintiff for his violation of Rule 11(b), in part due to Plaintiff's admission to using ChatGPT. Setting aside for the moment the AI-related issues with Plaintiff's submission, the majority of the objections do not warrant my consideration under the law. Indeed, for the reasons stated below, I would overrule Plaintiff's objections without the identified AI issues.

[2]     It is possible that Plaintiff's brief contains other "hallucinated" citations. Due to its substantial length and the fact that I find the objections without merit, I have not expended the time to verify each citation in the brief.

**\*5** Plaintiff attempts to relitigate nearly every aspect of the motions to dismiss that were before Magistrate Judge Netburn and which were analyzed and addressed in the Report. In addition, Plaintiff introduces many new factual contentions and lines of argument. It is well-settled that when the objecting party "simply reiterates the original arguments," the court will review the report only for clear error. *See Jones*, 2012 WL 1592190, at *1 (collecting cases). It is equally well settled that "new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) (internal quotation marks omitted); *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112, 2023 WL 4348030, at *2 (S.D.N.Y. July 5, 2023) (same). As most of Plaintiff's objections seek to rehash arguments considered by Magistrate Judge Netburn or to introduce new allegations and arguments, I need not and will not consider these objections on an individual basis. (*See, e.g.*, Obj. 71 (rehashing argument that Plaintiff asserts a colorable claim under the Computer Fraud and Abuse Act because he alleges unauthorized access to his electronic health records, a claim which the Report comprehensively examined and rejected (*see* Report at 17–20)); Obj. 35 (introducing new and unsubstantiated allegations that Dr. Mulligan's defense counsel is colluding with the FBI and Buffalo law enforcement to run a "coercive harassment system" against Plaintiff)). *See also Morris*, 167 F. App'x at 232 ("The district court need not ... specifically articulate its reasons for rejecting a party's objections or for adopting a magistrate judge's report and recommendation in its entirety."). Nonetheless, I address a few objections individually below.

At the beginning of Plaintiff's lengthy objections, he asserts that "[t]he R&R fundamentally misconstrues the factual basis and applicable law in this case" and "adopts the Defendants' arguments wholesale without construing the pro se Plaintiff's claims liberally." (Obj. 1–2.) On this basis, he "objects to the R&R in full." (*Id.* at 2.) A "conclusory or general objection[ ]" will not be considered by a court. *See Jones*, 2012 WL 1592190, at *1 (collecting cases). Thus, Plaintiff's overarching conclusory and general objection to the Report does not warrant consideration. However, even if I were to consider this objection, Plaintiff's claim that the Report fails to construe his claims liberally is simply not true. The Report repeatedly makes clear not only that Plaintiff's arguments were considered in their entirety but also that the arguments were construed liberally. (*See, e.g.*, Report at 18 ("The Court construes Plaintiff's pleadings liberally to assert a claim under 18 U.S.C. § 1030(g)."); *see also* Report at 22, 24, 26.) The Report is replete with citations to the record, as well as to case law addressing the legal standard for each of Plaintiff's claims, most of which Plaintiff does not address in his objections. Plaintiff's objection to the Report on the basis that it failed to construe his pleadings liberally is OVERRULED.

Next, Plaintiff objects to the Report's finding that the action can be dismissed in its entirety as to Dr. Mark Mulligan for insufficient service of process. (Obj. 28–35.) Plaintiff argues that "(1) Dr. Mulligan received actual notice; (2) Plaintiff made multiple good-faith efforts to serve him; and (3) Defense counsel refused to waive service." (*Id.* at 28.) Notably, these are all arguments for why Plaintiff's failure to serve Mulligan should be excused. In other words, Plaintiff does not contest that he failed to properly serve Mulligan.

Plaintiff's arguments fail. First, "actual notice of suit [cannot] cure a failure to comply with the statutory requirements for serving process." *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002) (summary order); *see also United States v. Thompson*, 921 F.3d 82, 87 (2d Cir. 2019) ("Actual notice of the suit does not cure defective service" (alterations adopted and internal quotation marks omitted)). Second, although Plaintiff did attempt to serve Mulligan, he did not show "good cause" for his failure to properly serve him. *See* Fed. R. Civ. P. 4(m). To the contrary, the Report describes how, on various occasions, "Plaintiff was instructed by both opposing counsel and the Court how to properly effectuate service," and still failed to do so. (Report at 7–8.) Third, it is true that an individual such as Mulligan "has a duty to avoid unnecessary expenses of serving the summons" when a plaintiff requests a waiver of service and complies with the procedural requirements of Rule 4(d) in doing so. However, Perez has not shown that he triggered Mulligan's duty to waive service by submitting a request to waive service in writing with the information required by Rule 4(d). Furthermore, the only case law Plaintiff cites in support of his argument that his failure to serve Mulligan should be excused is *Concepcion v. City of New York*, No. 05 Civ. 8501 (RJS), 2008 WL 5395720, at *4 (S.D.N.Y. Dec. 17, 2008), a hallucinated case that does not contain the quoted language Plaintiff attributes to it. In any event, the Report also analyzes Plaintiff's claims against Mulligan on the merits and finds dismissal warranted under Rule 12(b)(6), stating that "Plaintiff should not be granted leave to serve Dr. Mulligan because the claims against him are without merit." (Report at 13.) Thus, even if Plaintiff had properly served Mulligan or were to properly serve Mulligan in the future, it would not resurrect the claims against him. Plaintiff's objection regarding his failure to serve Mulligan is OVERRULED.

**\*6** Plaintiff also objects to the Report's dismissal of all claims brought under the PREP Act for lack of subject matter jurisdiction. Plaintiff argues that jurisdiction is proper under the willful misconduct exception to the PREP Act, and that the willful misconduct standard was satisfied. (Obj. 38, 45.) Even if this were true, this would not save Plaintiff's claims. The PREP Act provides immunity from suit for the United States and manufacturers, distributors, program planners, and other qualified persons who prescribed, administered, or dispensed a qualified countermeasure, such as various COVID-19 vaccines. *See* 42 U.S.C. § 247d-6d. Plaintiff is correct that there is an exception to this immunity for "death or serious physical injury proximately caused by willful misconduct." 42 U.S.C. § 247d-6d(d)(1). However, the PREP Act is clear that any suit brought pursuant to the willful-misconduct exception to immunity "shall be filed and maintained only in the United States District Court for the District of Columbia." 42 U.S.C. § 247d-6d(e)(1); *see also Palma v. Cabrini of Westchester*, No. 22-CV-5430, 2022 WL 4240823, at *4 (S.D.N.Y. Aug. 15, 2022) ("[E]ven if plaintiff alleged willful misconduct PREP Act claims, the U.S. District Court for the District of Columbia is the exclusive forum for such claims."). Therefore, even assuming Plaintiff alleges a viable claim for willful misconduct under the PREP Act, the Report correctly notes that I lack subject-matter jurisdiction over all PREP Act claims and must dismiss any such claims under Rule 12(b)(1). Plaintiff's objection regarding the PREP Act is OVERRULED.

Plaintiff objects to the Report's recommendation that his Racketeer Influenced & Corrupt Organizations Act ("RICO") claim against the AstraZeneca Defendants and Mulligan should be dismissed for failure to state a claim. Plaintiff states that his "RICO claims were plausibly alleged," (Obj. 60), and that "Plaintiff alleges a coordinated scheme involving multiple predicate acts including document falsification, fraud, and data manipulation," (*id.* at 64). These objections are conclusory, and I decline to consider them. *See Jones*, 2012 WL 1592190, at *1.

Plaintiff also asserts new factual allegations regarding an alleged RICO conspiracy. For instance, Plaintiff states:

> Plaintiff states that Astra Zeneca operates like a criminal enterprise. First, they analyzed The market at hand and the laws which essentially stated that they could sell poison to the world and face no consequences. Second, they had to enlist key players in the United States government to enforce their

scheme which include and is not limited to coercion, targeting, Courts, and PRISM on various targets. Third, emplace a network cyber war specialist within the agencies that would perform various data replications, data modifications, and deletions within various agency databases.... In this case AG Damian Williams colluded and joined forces with the Middle District of Florida, Pasco County Sheriff's Office to coerce and control plaintiff EAP. Mr. Williams put maximum effort into the coercion and control of plaintiff EAP through a covert network of confidential informants, con men, network of Florida & NY Correctional Officers & Cadre, Religious organizations, realtors, law enforcement owned construction companies, and home builders. Plaintiff states that the SDNY led by Mr. Williams targeted plaintiff by using the construction supervisor of his present neighborhood and the home builder DR Horton to engineer purchases for collaborators, cooperators, and law enforcement active and retired that are kin to and entered partnerships with Army CID and Sandusky.

(Obj. 60–61.) I need not consider these allegations because "new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation." *WFCM 2016-LC25 W. Bay Area Boulevard, LLC v. Tyler*, No. 21-CV-8865, 2025 WL 2424353, at *1 (S.D.N.Y. Aug. 22, 2025) (quoting *Garcia v. Lamanna*, No. 18-CV-5454, 2022 WL 3445433, at *1 (S.D.N.Y. Aug. 17, 2022)).

Even if I were to consider these statements, Plaintiff's new allegations amount to "vague assertions of fraud and conspiracy" insufficient to make out a civil RICO claim. (Report at 16.) Among other things, to allege a civil RICO claim Plaintiff must show the existence of an enterprise, defined as " 'a group of persons associated together for a common purpose of engaging in a course of conduct,' the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.' " *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981). "Plaintiff[']s] conclusory naming of a string of entities does not adequately allege an enterprise." *Id.* at 175 (internal quotation marks omitted); *see also id.* at 174 (finding that Plaintiffs failed to allege an enterprise where they "failed to provide ... any solid information regarding the hierarchy, organization, and activities of this alleged association-in-fact enterprise, from which we could fairly conclude that its members functioned as a unit" (internal quotation marks omitted)). In addition, Plaintiff does not allege a "clear and definite" injury to business or property, as he must to make out a civil RICO claim. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). Instead, Plaintiff alleges physical and emotional injury, (*see, e.g.*, Obj. 79 ("Plaintiff has experienced severe neurological symptoms, including paresthesia, muscle dysfunction, and autonomic dysregulation")), which are not cognizable forms of injury under RICO. *See Williams v. Dow Chem. Co.*, 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003) ("RICO provides recovery for injury to business and property; it does not provide recovery for physical and emotional injuries."); *see also Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 241 (2d Cir. 1999) (noting "the lack of a RICO damages remedy for even direct personal injuries"). Thus, Plaintiff's objection regarding his RICO claim is OVERRULED.

**\*7** Finally, Plaintiff objects to the Report's recommendation that Plaintiff should not be granted leave to amend, stating "[p]ro se plaintiffs should be granted at least one opportunity to amend absent futility." (Obj. 80.) This is a correct statement of the law. The Report acknowledges this, stating that "[g]enerally, a pro se litigant should be granted leave to amend to cure any deficiencies in a complaint." (Report at 24.) However, as Plaintiff acknowledges, leave to amend need not be granted when amendment would be futile. *See Kallas v. Fiala*, 591 F. App'x 30, 31 (2d Cir. 2015) (summary order). Here, the Report correctly found that amendment would be futile because "Plaintiff cannot allege new facts to cure the deficiencies in his pleadings." (Report at 24.) Plaintiff's objections do not explain what additional facts he would allege to salvage his claims, describe proposed amendments to his complaint, or assert in what way the Report's finding of futility is incorrect.[3] Furthermore, as the Report notes, this is Plaintiff's fourth lawsuit bringing claims to redress the harm he believes he suffered through his participation in the clinical trial of AstraZeneca's COVID-19 vaccine, and each lawsuit has failed "because of both substantive and procedural defects," (Report at 26). *See Perez v. Oxford Univ.*, No. 21-CV-4844, 2022 WL 1468438 (S.D.N.Y. May 10, 2022); *Perez v. Oxford Univ.*, No. 22-CV-1560 (D.D.C. Sept. 23, 2022); *Perez v. Oxford Univ.*, No. 22-CV-7830, 2022 WL 15523951 (S.D.N.Y. Oct. 24, 2022). There

is no reason to believe that Plaintiff can remedy the substantive and jurisdictional defects identified by the Report. Plaintiff's objection to the Report's recommendation to deny leave to amend is OVERRULED.

3    I liberally construe Plaintiff's objection stating that there is no waiver of sovereign immunity for claims brought under the Federal Tort Claims Act ("FTCA") and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), (*see* Obj. 46–47), as a motion for leave to amend, as Plaintiff did not bring any claims under the FTCA or *Bivens* in his Amended Complaint. As Plaintiff does not indicate what specific facts he would allege to make out a FTCA or *Bivens* claim, leave to amend to add such claims is DENIED.

Having overruled Plaintiff's objections, I review the remainder of the Report for clear error. *See Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003). Finding no error, let alone clear error, I hereby ADOPT the entirety of the Report and DISMISS Plaintiff's Amended Complaint in its entirety without leave to amend. Accordingly, Plaintiff's motions for preservation of evidence are hereby DENIED AS MOOT.

### V. Temporary Restraining Order

Plaintiff also moves for a temporary restraining order prohibiting the VA from accessing, modifying, or disseminating Plaintiff's mental health records or relying upon or referencing a fabricated diagnosis in any pending or future administrative or medical proceedings. (Doc. 141 at 11–12.) To obtain a temporary restraining order, the movant must show, among other things, either a likelihood of success on the merits of his underlying claims or sufficiently serious questions going to the merits to make them a fair ground for litigation. *See Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). As all of Plaintiff's claims are subject to dismissal, Plaintiff cannot make that showing here. *J Bragg v. Jordan*, 669 F. Supp. 3d 257, 267 (S.D.N.Y. 2023) ("Where a party seeking a temporary restraining order fails to establish a likelihood of success on the merits, 'there is no need to address the other prongs of the analysis.' " (quoting *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011))); *Jones v. Healthfirst*, No. 18-CV-6834, 2018 WL 6706313, at *3 (E.D.N.Y. Dec. 19, 2018) ("Given the dismissal of the Complaint, there is no likelihood of success on the merits of [pro se] Plaintiff's claims and therefore [the motion] seeking injunctive relief is DENIED."). Therefore, Plaintiff's motion for a temporary restraining order is DENIED.

### VI. Conclusion

For the foregoing reasons, Magistrate Judge Netburn's Report and Recommendation is ADOPTED in full. The Clerk of Court is respectfully directed to terminate Docs. 99, 101, 103, 141, 144, and 145, dismiss this action with prejudice, and close the case.

**\*8**  The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion & Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962) (holding that appellant demonstrates good faith when seeking review of a non-frivolous issue).

SO ORDERED.

**All Citations**

Slip Copy, 2025 WL 2726792

---

**End of Document**                                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 41 of 133

2002 WL 32096576
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Fred BROWN, Plaintiff

v.

Andrew SENIUK, N.Y.P.D.; Mr. Clarke, Ms. Bernstein, Ms. Katz, Assistant District Attorneys;
Richard Brown, District Attorney, Queens County, New York; and Pagona, N.Y.P.D., Defendants.

No. 01 CV 1248 SJ.
|
March 25, 2002.

## Attorneys and Law Firms

Fred Brown, a/k/a James Mallard, Mohawk Correctional Facility, Rome, NY, Petitioner, pro se.

Michael D. Hess, New York City Law Department, New York, NY, By: Eugene Bernard Sohn, for Respondents, of counsel.

## MEMORANDUM & ORDER

JOHNSON, J.

**\*1** Plaintiff Fred Brown, a/k/a James Mallard, ("Brown" or Petitioner") brought the above-captioned action against New York City Police Officers Andrew Seniuk and "Pagona," Queens County District Attorney Richard Brown, and Assistant District Attorneys "Clark," "Burnstien," and "Katz" (collectively, "Defendants"). His action, initially entitled a "felony complaint," was construed as a civil action under 42 U.S.C. § 1983. Presently before the Court is Defendants' motion to dismiss the complaint. For the following reasons, Defendants' motion is granted in its entirety.

## FACTUAL BACKGROUND

This civil action arises out of the State court criminal conviction of Plaintiff Fred Brown for a number of theft offenses. Plaintiff was arrested on June 11, 1996, charged with Criminal Possession of Stolen Property, Grand Larceny, Burglary, Possession of Burglar's Tools, Resisting Arrest, and Illegal Possession of a Vehicle Identification Number, and indicted by a Grand Jury on charges of Criminal Possession of Stolen Property in the Second, Fourth, and Fifth Degrees, Grand Larceny in the Second and Fourth Degrees, Burglary in the Third Degree, Criminal Mischief in the Third Degree, and Unauthorized Use of Vehicle in the Third Degree. On January 23, 1998, he was convicted by a jury in the New York Supreme Court, Queens County, of Criminal Possession of Stolen Property in the Second and Fourth Degrees, Grand Larceny in the Second and Fourth Degrees, Burglary in the Third Degree, and Unauthorized Use of a Vehicle in the Third Degree. He was sentenced on February 25, 1998 to seven and one half to 15 years. (Certificate of Disposition # 13837, Attached to Sohn Decl. as Ex. E.) Petitioner appealed his conviction to the Appellate Division, Second Department, which affirmed on May 30, 2000. *State v. Brown,* 709 N.Y.S.2d 413 (2000). The Court of Appeals denied leave to appeal that decision on August 28, 2000. *State v. Brown,* 715 N.Y.S.2d 218 (2000). Plaintiff filed the instant lawsuit on March 13, 2001, alleging a variety of criminal actions by Seniuk, Clarke, Katz, and Bernstein. On June 20, 2001, or thereabouts, Plaintiff submitted an amended complaint, which was filed with the Court on July 2, 2001. The amended complaint added District Attorney Richard Brown and New York Police Officer Pagona as Defendants. [1] Defendants filed this motion to dismiss on June 12, 2001.

Brown v. Seniuk, Not Reported in F.Supp.2d (2002)

2002 WL 32096576

1   Plaintiff's "Amended and Supplemental Pleading Pursuant to 15(a) RCP" was apparently filed after Defendants served their Motion to Dismiss on or about June 12, 2001. Rule 15(a) of the Federal Rules of Civil Procedure specifically states that "[a] party may amend the party's pleading once as a matter of course any time before a responsive pleading is served.... Otherwise, a party may amend the party's pleading only be leave of court or by written consent of the adverse party." Plaintiff did not seek leave of the Court, nor did he request Defendants' consent to amend his complaint. Accordingly, Defendants urge the Court to reject Plaintiff's amended complaint. However, the Court recognizes the difficulty of proceeding *pro se* and from within custody, considers that Plaintiff may not have received Defendants' Motion to Dismiss prior to filing his Amended Complaint, and construes his amended complaint as a request to amend his original pleading. Defense counsel was notified of the addition of two new individual defendants and the additional claims against them in time to address the amended complaint in the Reply brief. Thus, the Court will accept and consider Plaintiff's Amended Complaint.


DISCUSSION

Plaintiff initially styled his complaint a "Felony Complaint Pursuant to Rule 3, and 23." However, it is axiomatic that a private citizen cannot bring a criminal complaint. *See e.g. Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Connecticut Action Now, Inc. v. Roberts Plating Co.,* 457 F.2d 81, 86–87 (2d Cir.1972) ("It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not as has sometimes been done in Anglo–American jurisdictions by private complaints."). Plaintiff's complaint alleged a violation of his civil rights involving his conviction. Accordingly, the Court construes his complaint as a § 1983 civil action seeking relief from violations of his constitutional rights.


Plaintiff's Claims Under Section 1983

**\*2**  Plaintiff's remedies under § 1983 are limited. The Supreme Court held in *Preiser v. Rodriguez* that the exclusive remedy for a state prisoner challenging the fact or length of his confinement is through habeas corpus relief. 411 U.S. 475, 490 (1973) ("Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983."). However, *Preiser* did not limit state prisoners' use of § 1983 in claims for damages. *Id.,* 411 U .S. at 494 ("If a state prisoner is seeking damages ... he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. Accordingly, ... a damages action by a state prisoner could be brought under the Civil Rights Act in federal court."). Thus, this Court does have jurisdiction to hear § 1983 damages actions from state prisoners.

However, Plaintiff in this case does not make out a claim for relief under § 1983. In *Heck v. Humphrey,* the Supreme Court applied the standard used for civil actions for malicious prosecution to § 1983 damages actions, and required plaintiffs to show that the allegedly unconstitutional conviction had already been invalidated. "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey,* 512 U.S. 477, 487 (1994).

Plaintiff here concedes that his conviction has not been overturned. Instead, he argues that it "is invalid as it was had in violation of Criminal Procedure Rules." (Pet.'s Reply Opp. Mot. Dismiss at 2.) His allegation is insufficient to meet the Supreme Court's requirement that plaintiffs "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. at 487. Plaintiff cannot show that his conviction was terminated in his favor by any of these means. Accordingly, his allegations must be dismissed as legally insufficient to state a claim against any of the Defendants under § 1983.

2002 WL 32096576

Plaintiff's Potential Claims for Malicious Prosecution and False Arrest

In their motion to dismiss, Defendants also responded to possible actions for false arrest and malicious prosecution. Neither of these actions are available to Plaintiff. First, a claim for false arrest would be time-barred. The statute of limitations for a constitutional claim for false arrest begins to run at the time of the arrest. *Bezerra v. County of Nassau,* 846 F.Supp. 214, 218–219 (E.D.N.Y.1994). Since Plaintiff was arrested on June 11, 1996, he would be required to have filed his complaint alleging false arrest by June 11, 1999. This action was not commenced until February 1, 2001. Accordingly, a claim for false arrest would be time-barred.

 **\*3**  Second, Plaintiff cannot make out a claim for malicious prosecution, because he fails to establish the elements necessary to sustain a claim. In order to succeed on a claim of malicious prosecution, whether brought under § 1983 or New York State law, Plaintiff must show that (1) the defendants commenced or continued a criminal proceeding against the plaintiff, (2) which ended in the plaintiff's favor, (3) that the defendants did not have probable cause for such a proceeding, and (4) that the defendants acted with actual malice. *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995); *Posr v. Court Officer Shield # 207,* 180 F.3d 409, 417 (2d Cir.1999). As discussed above, Plaintiff has not shown that the criminal proceedings against him have ended in his favor. Thus he cannot make out a claim for malicious prosecution regarding the charges on which he was convicted and which convictions still stand.

Plaintiff is also precluded from asserting a claim for malicious prosecution on the basis of the additional charges for which he was not convicted. The charges for Possession of Burglary Tools and Resisting Arrest, which were dropped prior to trial, are time-barred by the Statute of Limitations. The Statute of Limitations for actions for malicious prosecution is three years under 42 U.S.C. § 1983, and one year under New York state law. McKinney's CPLR § 215. Those additional charges were terminated, at the latest, on May 19, 1997. Plaintiff did not commence his suit until February 1, 2001.

Nor can he state a claim for malicious prosecution on the basis of the charges for Criminal Possession of Stolen Property in the Fifth Degree and Criminal Mischief in the Third Degree. Where, as here, the criminal prosecution has resulted in conviction on some charges, but not all charges, the Court must determine whether the charges are sufficiently distinct to allow a malicious prosecution claim to proceed on the charge or charges for which the individual was not convicted. *See Janetka v. Dabe,* 892 F.2d 187, 190 (2d Cir.1989); *Pichardo v. New York Police Department, et al.,* 1998 WL 812049, at \*3 (S.D.N.Y.) Such analysis should consider whether the elements of each charge are similar or different and whether one charge is a lesser included offense of another. *Janetka,* 892 F.2d at 190. The Court should also consider whether the charges on which the individual was convicted were more or less serious than the charges which were dismissed or upon which the individual was acquitted. *See Pichardo,* 1998 WL 812049, at \*4.

Here, Plaintiff was indicted on several related charges stemming from a single event. He was convicted of most of these related charges, including Criminal Possession of Stolen Property in the Second and Fourth degrees. The charges upon which Plaintiff was not convicted, Criminal Possession of Stolen Property in the Fifth Degree and Criminal Mischief in the Third Degree, are no more serious than the charges for which Plaintiff was convicted. This Court finds that the charges are sufficiently related to the charges on which Plaintiff was convicted, and thus may not be the basis for a claim of malicious prosecution.

Plaintiff's Allegations of Conspiracy

 **\*4**  Plaintiff's initial complaint alleges acts of criminal conspiracy. However, Plaintiff does not assert sufficient allegations to make out a claim for conspiracy to violate his civil rights. In order to make out a claim of conspiracy to deprive constitutional rights under 42 U.S.C. § 1983, the plaintiff must show that there was: (1) an agreement among co-conspirators; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of the goal, thus causing damages. *Pangburn v. Culbertson,* 200 F .3d 65, 72 (2d Cir.1999). In addition to asserting these elements, the plaintiff must allege specific facts that show that the defendants shared a unity of purpose or a common design to injure the plaintiff, not mere conclusory allegations. *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990), *cert. denied,* 490 U.S. 386 (1991); *Dwares v. City of New York,* 985 F.2d 94, 99–100 (2d Cir.1993) ("Thus, complaints containing only conclusory, vague, or general allegations that the defendants have engaged

2002 WL 32096576

in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed."). In the instant case, Plaintiff alleges that ADA Clarke and Officer Seniuk conspired "to obtain an indictment at any cost," and that Seniuk and Bernstein conspired "to obtain a conviction at any cost." (Pl.'s Opp. Mot. Dismiss at 7.) He also recites the alleged acts of the Individual Defendants, including making false statements and falsifying reports, presenting false evidence, giving hearsay testimony (Compl. at 2–3), and failing "adequately to train and supervise assistant district attorney(s) Mr. Clarke, Ms. Katz and Ms. Burnstein to insure that they meet their constitutional obligation" (Amend. Compl. at 6). However, Plaintiff's argument is lacking specific facts that show an agreement among the alleged co-conspirators or that the Individual Defendants acted with a shared purpose or common design. While New York law does allow the existence of civil conspiracies to be inferred from circumstantial evidence, "neither conjecture, surmise, nor suspicion can take the place of evidence." *Best Cellars Inc. v. Grape Finds at Dupont, Inc.,* 90 F.Supp.2d 431 (S .D.N.Y.2000) (citing *Cooper v. Maurer,* 37 N.Y.S.2d 992, 996 (N.Y.Sup.Ct.1942). Here, Plaintiff fails to present evidence, either circumstantial or direct, sufficient to infer the existence of a conspiracy.

As this Court finds that Plaintiff's complaint fails to state facts sufficient to maintain a § 1983 claim for damages, and finding no other claim for relief that may be granted, the Court need not consider Defendants' affirmative defenses of qualified immunity and prosecutorial immunity.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint is hereby GRANTED in its entirety. The Clerk of the Court is directed to close this proceeding with prejudice.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 32096576

---

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 12933756
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Paul VELLECA, Plaintiff,

v.

Robert PANGBURN, Fred Ford, and Shane Biggar, Defendants.

9:20-CV-0887 (BKS/DJS)
|
Signed 09/02/2020

**Attorneys and Law Firms**

PAUL VELLECA, Plaintiff, Pro se, 20-B-0586, Wyoming Correctional Facility, P.O. Box 501, Attica, NY 14011.

**DECISION and ORDER**

BRENDA K. SANNES, United States District Judge

## I. INTRODUCTION

**\*1**  The Clerk has sent to the Court for review a pro se civil rights Complaint filed by plaintiff Paul Velleca ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983") asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Delaware County Correctional Facility ("Delaware County C.F."). Dkt. No. 1 ("Compl."). Plaintiff, who is currently confined at Wyoming Correctional Facility, has not paid the statutory filing fee and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). [1] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[1]   Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

Upon review of Plaintiff's IFP Application, the Court finds that he has demonstrated sufficient economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. Dkt. No. 3. Accordingly, the Court grants Plaintiff's IFP Application.

## III. SUFFICIENCY OF THE COMPLAINT

Velleca v. Pangburn, Not Reported in Fed. Supp. (2020)

2020 WL 12933756

**A. Standard of Review**

Having found that Plaintiff meets the financial criteria for commencing this action in forma pauperis, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2]

[2]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

**\*2** Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

**B. Summary of the Complaint**

The following facts are set forth as alleged by Plaintiff in his Complaint.

On May 5, 2020, defendant Sergeant Robert Pangburn ("Pangburn") approached Plaintiff's cell (cell 10 in B-Unit), and verbally harassed Plaintiff. Compl. at 4. Plaintiff and Pangburn "exchanged insults." *Id.*

On May 6, 2020, while Plaintiff was in his cell completing a grievance form, Pangburn and defendant Corrections Officer Fred Ford ("Ford") entered Plaintiff's cell. Compl. at 5. Pangburn had Plaintiff's previously filed grievances in his hand and stated that he "wished to discuss" the complaints. *Id.* Pangburn walked to the mirror in Plaintiff's cell and noticed a "derogatory comment [ ] inscribed about Pangburn." *Id.* Pangburn then accused Plaintiff of threatening Ford and called "Code Red Bravo" into his radio, signaling to other officers that a prisoner was acting violently. *Id.* Plaintiff voluntarily dropped onto the floor, face down,

2020 WL 12933756

and put his hands behind his back. Compl. at 5. While Plaintiff was in the submissive position, Pangburn and Ford began to yell, "get on the ground! Stop resisting!" *Id.* at 6.

**\*3** While Plaintiff was on the floor, one of the defendants applied a knee to the right side of his head causing contusions and broken blood vessels.[3] Compl. at 6. Defendants also sprayed a chemical agent into Plaintiff's eyes, nose, and mouth. *Id.* Defendants handcuffed Plaintiff with "maximum pressure" causing "partial numbness in Plaintiff's hands." *Id.* When Defendants lifted Plaintiff onto his feet, they "slammed" his head into a wall and "thrusted" Plaintiff into a restraint chair, while his hands were still behind his back. Compl. at 6.

[3]    Plaintiff states that because he was "face down," he could not see which Defendant was responsible for the specific acts. *See* Compl. at 6.

Defendant Sergeant Shane Biggar ("Biggar"), the grievance coordinator, arrived at the scene. Compl. at 7, 10. Biggar was aware that Pangburn planned to speak with Plaintiff about his grievances and asked Pangburn, "[w]hat happened? You came down to talk about grievances and everything went south?" *Id.* at 7.

Plaintiff was wheeled in the restraint chair into a holding cell, where he remained for an hour. Compl. at 7. Plaintiff was then wheeled, in the restraint chair, fully dressed and handcuffed, to the shower where the "chemical agent ran down Plaintiff's body burning [his] groin area." *Id.* While Plaintiff showered, Pangburn continued to verbally abuse and threaten Plaintiff. *Id.*

From the shower, Plaintiff was wheeled, still fully clothed, handcuffed, and "soaking wet" in the restraint chair, into a holding cell. Compl. at 7. While he was in the cell, Plaintiff overheard Pangburn tell other officers that he intended to harm Plaintiff because Plaintiff made disrespectful comments about Pangburn's family during their verbal altercation on May 5, 2020. *Id.* at 8. At Pangburn's direction, Ford kept Plaintiff, wet and in restraints, in the holding cell for three hours. *Id.*

On May 7, 2020, Plaintiff filed a grievance related to the incident. Compl. at 10.

Plaintiff received two Ibuprofen pills for his "partially numb hands" but was told that he could not see a doctor until May 12, 2020. Compl. at 9. On May 12, 2020 and May 19, 2020, Plaintiff saw doctors for complaints of numbness. *Id.* The doctors told Plaintiff the numbness would heal with time and offered Tylenol. *Id.* On May 24, 2010 and June 2, 2020, Plaintiff submitted sick call slips, but his requests were ignored. *Id.*

On May 17, 2020, a disciplinary hearing was held with respect to the use of force incident. Compl. at 9. At that time, Plaintiff was given the opportunity to review the Incident Report, for the first time.[4] *Id.* at 10. The report was prepared by Ford and contained a "falsified narrative." *Id.*

[4]    The Complaint lacks facts related to when the Incident Report was prepared or the substance of the report.

Construed liberally,[5] Plaintiff asserts the following: (1) Eighth Amendment excessive force claims against Pangburn and Ford; (2) Eighth Amendment failure-to-protect claim against Biggar; (3) Eighth Amendment deliberate medical indifference claims; (4) First Amendment retaliation claims against Pangburn and Ford; (5) constitutional claim related to a falsified document; and (6) conspiracy claims. *See* Compl. at 11-12. Plaintiff seeks monetary damages. *Id.* at 12. For a complete statement of Plaintiff's claims and the facts he relies on in support of those claims, reference is made to the Complaint.

[5]    The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited

2020 WL 12933756

only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

**C. Nature of Action**

**\*4** Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at \*2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

The Court will construe the allegations in the Complaint with the utmost leniency. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**IV. ANALYSIS**

**A. Eighth Amendment**

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

**1. Excessive Force and Failure to Intervene**

The prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

"To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.' " *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano*, 998 F.2d at 105).

Courts within the Second Circuit have held that "overly tight handcuffing can constitute excessive force." *Lynch v. City of Mount Vernon*, 567 F.Supp.2d 459, 468 (S.D.N.Y. 2008); *Milo v. City of New York*, No. 14–CV–1172, 2014 WL 5933091, at \*6 (E.D.N.Y. Nov. 14, 2014) (citing *Lemmo v. McCoy*, No. 08–CV–4264, 2011 WL 843974, at \*5 (E.D.N.Y. 2011)).

Similarly, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at \*3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

Velleca v. Pangburn, Not Reported in Fed. Supp. (2020)

2020 WL 12933756

**\*5** At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that Plaintiff's Eighth Amendment claims against Pangburn and Ford survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

A different conclusion is reached however, with respect to the Eighth Amendment claim against Biggar. The Complaint lacks any allegations regarding what, if anything, Biggar witnessed, or facts suggesting that Biggar was in the vicinity of Plaintiff's cell when the use of force incident occurred. The allegation that Biggar was aware that Pangburn was going to speak with Plaintiff regarding his grievances does not suggest that Biggar was aware that the alleged assault would occur, was occurring, and had an opportunity to protect Plaintiff from harm, yet failed to do so out of deliberate indifference to Plaintiff's safety. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1970); *Rosen v. City of New York*, 667 F.Supp.2d 355, 360 (S.D.N.Y. 2009) ("In the context of a failure to intervene claim, an officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate without risk to himself, yet fails to intervene."); *Dean v. New York City*, No. 15-CV-8825, 2017 WL 3670036, at \*4 (S.D.N.Y. July 6, 2017) (denying as futile leave to amend to add failure-to-intervene claim against corrections official where the proposed amended complaint was "devoid of any factual allegations against P.O. Myers with respect to the failure to intervene claim, such as, for example, where P.O. Myers was located and what she was doing when P.O. Baksh pepper sprayed the plaintiff's face").

Accordingly, Plaintiff's Eighth Amendment claim against Biggar based on the alleged events that occurred on May 6, 2020, is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Deliberate Medical Indifference

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden*, 186 F.3d at 262 (with respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' ").

**\*6** "Non-medical prison personnel engage in deliberate indifference where they 'intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.' " *Baumann v. Walsh*, 36 F.Supp.2d 508, 512 (N.D.N.Y. 1999).

Construing the Complaint liberally, Plaintiff alleges that Defendants refused to allow him to receive medical treatment for injuries that he sustained during a physical altercation. *See* Compl. at 9. Even assuming Plaintiff suffered from a serious injury, he has not pleaded facts suggesting that he submitted any request for medical treatment to Defendants or that he told Defendants that he was in extreme pain. Plaintiff claims that he received "two ibuprofen pills and [was] told that he could not see a doctor until May 12 th ", *see* Compl. at 9, but does not attribute any of those actions or statements to any Defendant. Plaintiff also claims that his sick call slips were ignored, but does not allege who was responsible for the sick call slips or that he submitted the sick call slips to Defendants. As presently constituted, the pleading does not plausibly allege that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety.

Velleca v. Pangburn, Not Reported in Fed. Supp. (2020)

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 50 of 133

2020 WL 12933756

Consequently, Plaintiff's Eighth Amendment deliberate medical indifference claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

**B. First Amendment Retaliation**

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

The filing of a grievance or lawsuit is protected speech. *See Johnson v. Eggersdorf*, 8 Fed. App'x 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). With respect to the second element, the Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill*, 389 F.3d at 381 (citation omitted) (omission in original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.* A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart*, 289 F.Supp.2d 305, 314 (E.D.N.Y. 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

**\*7** To the extent that Plaintiff relies upon his verbal dispute with Pangburn as protected conduct or speech, that claim fails. "A plaintiff may not pursue a retaliation claim against a corrections officer every time he gets into a verbal dispute with that officer." *Torrez v. Mulligan*, No. 3:17-CV-677, 2017 WL 2623165, at \*3 (D. Conn. June 16, 2017) (citing *Carl v. Griffin*, 2011 WL 723553, at \*5 (S.D.N.Y. Mar. 2, 2011)) (holding that the plaintiff was not engaged in protected conduct during a verbal confrontation reasoning that, "[t]o construe it as such would elevate every verbal exchange between a prison employee and a prisoner to the level of protected speech under the First Amendment.").

However, Plaintiff also alleges that Pangburn and Ford entered his cell on May 6, 2020, with Plaintiff's grievances in hand, and began questioning Plaintiff about his complaints. Compl. at 5. The discussion allegedly lead to the assault. *Id.* At this juncture, the Court finds that Plaintiff's retaliation claims related to the use of force incident, survive sua sponte review and require a response. *See Smith v. Rosati*, No. 10–CV–1502 (DNH/DEP), 2013 WL 1500422, at \*14 (N.D.N.Y. Feb. 20, 2013) (holding that an assault by a correctional officer is sufficient to satisfy the second prong of a retaliation claim). In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

**C. False Report**

Plaintiff claims that Ford "knowingly falsif[ied] the Incident Report in "violation of 18 U.S.C. § 1519." Compl. at 12. To the extent that Plaintiff attempts to initiate criminal charges against Ford, that claim is dismissed. It is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual. *Harper v. New York Child*

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 51 of 133

Velleca v. Pangburn, Not Reported in Fed. Supp. (2020)

2020 WL 12933756

*Welfare Comm'rs*, No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4, n. 7 (N.D.N.Y. May 14, 2012) (citing *inter alia, Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

Assuming that Plaintiff attempts to assert a Section 1983 claim related to the misbehavior report, it is well settled that an inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997); *Mitchell v. Senkowski*, 158 Fed. App'x 346, 349 (2d Cir. 2005) ("The issuance of false misbehavior reports and provision of false testimony against an inmate ... violates due process ... where ... procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him ..., or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights....") (internal citations omitted) (internal citations omitted). Here, Plaintiff has not identified the hearing officer as a defendant and has not alleged facts to suggest that he was not adequately afforded a hearing related to the Incident Report.

To the extent that Plaintiff attempts to assert a retaliation claim against Ford related to the Incident Report, that claim is not sufficiently plead. Although Plaintiff engaged in protected conduct when he filed a grievance related to the use of force incident on May 7, 2020, it is not clear from the pleading that the grievance addressed Ford and, more importantly, when the Incident Report was prepared or when/how Ford became aware of the grievance. Thus, Plaintiff has failed to plead facts sufficient to satisfy the third element of a retaliation claim. Accordingly, Plaintiff's retaliation claim against Ford, based upon the Incident Report, is dismissed without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### D. Conspiracy [6]

[6] To the extent that Plaintiff attempts to initiate criminal charges against Defendants related to a conspiracy pursuant to 18 U.S.C. § 241, for the reasons set forth in Part IV©, *supra*, that claim is dismissed.

**\*8** A conspiracy claim under § 1985 has four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Robinson v. Allstate Ins. Co.*, 508 Fed. App'x 7, 9 (2d Cir. 2013) (quoting *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 828–29, (1983)). To maintain a § 1985 conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds." *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003). A claim for conspiracy under 42 U.S.C. § 1985 ("Section 1985") "must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Robinson,* 508 Fed. App'x at 9 (quoting *Britt v. Garcia*, 457 F.3d 264, 270 n. 4 (2d Cir. 2006)).

Here, the Complaint lacks any facts suggesting that Defendants were motivated by "racial or otherwise class-based, invidious discriminatory animus." Indeed, Plaintiff alleges that Pangburn intended to violate his rights because Plaintiff made "disrespectful comments" about Pangburn's family. *See* Compl. at 8. Accordingly, the conspiracy claims, asserted pursuant to Section 1985, *see id.* at 11, are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

However, in light of Plaintiff's pro se status and construing the pleading liberally, the Court finds that Plaintiff has sufficiently alleged a conspiracy claim against Pangburn and Ford pursuant to Section 1983 to require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### V. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [7] and it is further

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 52 of 133

Velleca v. Pangburn, Not Reported in Fed. Supp. (2020)
2020 WL 12933756

7    Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization form, and notify the official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of Plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment failure-to-intervene claims against Biggar; (2) Eighth Amendment deliberate medical indifference claims; (3) constitutional claims and retaliation claims against Ford related to the Incident Report; and (4) conspiracy claims pursuant to Section 1985; [8] and it is further

8    If Plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) Eighth Amendment excessive force claims Pangburn and Ford; (2) First Amendment retaliation claims against Pangburn and Ford related to the use of force; and (3) conspiracy claims pursuant to Section 1983; and it is further

 *9  **ORDERED** that Biggar is **DISMISSED** as a defendant herein; and it is further

**ORDERED** the Clerk shall issue a summonses and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summonses and Complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that a response to the Complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff.

Velleca v. Pangburn, Not Reported in Fed. Supp. (2020)

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 53 of 133

2020 WL 12933756

**All Citations**

Not Reported in Fed. Supp., 2020 WL 12933756

---

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Dunn v. Gabriel, Not Reported in Fed. Supp. (2024)

2024 WL 3649887

2024 WL 3649887
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Nicole Lee DUNN, Plaintiff,

v.

William Edward GABRIEL, Sheriff's Deputy Detective Police Onondaga (last known), Defendant.

5:23-CV-0662 (AMN/ML)
|
Signed June 14, 2024

**Attorneys and Law Firms**

NICOLE LEE DUNN, Plaintiff, Pro Se, 8418 Theodolite Drive #722, Baldwinsville, New York 13027.

### REPORT and RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent a *pro se* amended complaint together with a "Statement" in the above captioned action filed by Plaintiff Nicole Lee Dunn ("Plaintiff") to the Court for review. (Dkt. Nos. 19, 20.) For the reasons discussed below, I recommend that Plaintiff's Amended Complaint (Dkt. No. 19) be dismissed without leave to amend.

## I. BACKGROUND

The Amended Complaint is brought against Defendant William Edward Gabriel, Sheriff's Deputy Detective Police Onondaga (last known) ("Defendant"). (*See generally* Dkt. No. 19.) Like the Complaint, the Amended Complaint is difficult to decipher but appears to allege that Plaintiff and Defendant were married and are now divorced. (Dkt. No. 19 at 3.) The Amended Complaint appears to allege that, since their divorce, Defendant has "utilized ... personal relationships" to negatively impact Plaintiff's life. (*Id.*)

The Amended Complaint alleges that on February 2, 2013, Defendant was present at the scene of death for Plaintiff's mother's, Salena Bennett. (Dkt. No. 19 at 8.)

The Amended Complaint does not appear to list any causes of action but states that it is pursuant to civil and U.S. Constitutional rights and applicable penal laws. (Dkt. No. 19 at 3-4; *see generally* Dkt. No. 19.) The Amended Complaint does not appear to seek any specific relief. (*See generally* Dkt. No. 19.)

## II. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court

2024 WL 3649887

"may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense .... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

**\*2** "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## III. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe her pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Amended Complaint with this principle in mind, I recommend that all causes of action be dismissed.

42 U.S.C. § 1983 establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). An official may not be held liable for constitutional violations simply because he held a high position of authority. *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016).

Plaintiff's Amended Complaint is largely incomprehensible and must be dismissed for three reasons.

First, Rule 8 of the Fed. R. Civ. P. requires a "short and plain statement" of a claim, showing that "the pleader is entitled to relief." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)). Each statement must be "simple, concise, and direct,' and must give 'fair notice of the claims asserted." *Whitfield*, 763 F. App'x at 107 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). A pleading must also contain "a demand for the relief sought[.]" *Id.* "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.' " *Id.* Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b). Rule 10's purpose is to

**Dunn v. Gabriel, Not Reported in Fed. Supp. (2024)**
2024 WL 3649887

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 56 of 133

"provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, 22-CV-1248, 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (Stewart, M.J.) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

 **\*3**  As it currently stands, Plaintiff's Amended Complaint wholly fails to provide fair notice of the claims she attempts to assert. Given its lack of clarity, the Court recommends dismissal of the Amended Complaint because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because Plaintiff's Section 1983 claims against Defendant are entirely unclear.

Second, "[t]o state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

Generally, private parties are not state actors, and are not liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) (citing *Blum v. Yartsky*, 457 U.S. 991, 1002 (1982)). A private defendant may be held liable only as "a willing participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). Claims under § 1983 can be brought against private entities by "showing that a person acting under color of state law ... collaborated with a private person ... to deprive the plaintiff of a constitutional right." *Fries v. Barns*, 618 F.2d 988, 990 (2d Cir. 1980) (citing *Adickes*, 398 U.S. at 144).

The Amended Complaint fails to allege facts plausibly suggesting that Plaintiff's grievances against Defendant are related to his work as a police officer or that Defendant otherwise engaged in *any* conduct arguably invoking "the real or apparent power of the police department." *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994); *see Claudio v. Sawyer*, 409 F. App'x 464, 466 (2d Cir. 2011) (holding that the "plaintiffs failed sufficiently to allege that Sawyer, an off-duty police officer, acted under color of state law in shooting Jayson Tirado, as required for a § 1983 claim."); *Bonsignore v. City of New York*, 683 F.2d 635, 638-39 (2d Cir. 1982) (denying motion to amend complaint because shooting of wife by off-duty officer with service pistol not "committed in the performance of any actual or pretended duty").

Third, to the extent that the Amended Complaint asserts claims pursuant to the New York Penal Law or other criminal statutes against Defendant, I recommend that they be dismissed as not cognizable. *See Morrow v. Vanderwerff*, 19-CV-0555, 2019 WL 13455972, at *7 (N.D.N.Y. July 23, 2019) (Hurd, J.) (citing *Houston v. Collerman*, 16-CV-1009, 2016 WL 6267968, at *11 (N.D.N.Y. Oct. 26, 2016) (Sannes, J.) ("[I]t is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual."); *Banks v. Annucci*, 48 F. Supp. 3d 394, 414-15 (N.D.N.Y. 2013) (Hurd, J.) ("[I]nmates do not enjoy a constitutional right to an investigation of any kind by government officials."); *Pine v. Seally*, 09-CV-1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) (same) (Baxter, M.J)) (holding that the plaintiff "does not have a constitutional right to bring criminal charges" and that "the refusal to investigate accusations of criminal misconduct does not give rise to a cognizable Section 1983 claim."); *Porter v. Goord*, 04-CV-0485, 2004 WL 2271383, at *3 (W.D.N.Y. Oct. 5, 2004) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973)) ("a private citizen is not constitutionally entitled to a criminal investigation or the pursuit of a criminal prosecution"); *see also Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 382-83 (2d Cir. 1973) (finding no authority, in civil rights action, to compel state prosecutors to investigate and prosecute violation of New York state criminal law).

Dunn v. Gabriel, Not Reported in Fed. Supp. (2024)

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 57 of 133

2024 WL 3649887

**\*4** As a result, I recommend that Plaintiff's claims against Defendant be dismissed.

### IV. OPPORTUNITY TO REPLEAD

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to replead at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to replead is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [1]

[1] *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

In this instance, I conclude that any further amendments to Plaintiff's Amended Complaint would be futile. In this action, Plaintiff has already amended the complaint once as of right pursuant to Fed. R. Civ. P. 15(a)(1). Plaintiff's claims and allegations are factually and legally frivolous. Any additional amendments to Plaintiff's Amended Complaint are not likely to be productive. As a result, I recommend that Plaintiff's Amended Complaint be dismissed without leave to amend. *See Igarashi v. Skull & Bone*, 438 F. App'x 58, 59-60 (2d Cir. 2011) (finding that the district court "properly dismissed the complaint without providing an opportunity to amend because any amendment would have been futile in light of the incredible nature of the allegations."); *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) (quoting *Dluhos v. Floating & Abandoned Vessel, Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998)) (finding that the "District Court did not abuse its discretion in denying [the plaintiff] leave to amend the complaint because there was a 'repeated failure to cure deficiencies by amendments previously allowed.' "); *Salinger v. Projectavision, Inc.*, 972 F. Supp. 222, 236 (S.D.N.Y. 1997) ("Three bites at the apple is enough.").

**\*5 ACCORDINGLY**, it is

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO AMEND** the Amended Complaint (Dkt. No. 19) pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this report and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [2]

[2] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [3] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dunn v. Gabriel, Not Reported in Fed. Supp. (2024)

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 58 of 133

2024 WL 3649887

3    If you are proceeding *pro se* and served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 3649887

---

**End of Document**                                   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Dunn v. Gabriel, Not Reported in Fed. Supp. (2024)

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 59 of 133

2024 WL 3371029

2024 WL 3371029
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Nicole Lee DUNN, Plaintiff,

v.

William Edward GABRIEL, Sheriff's Deputy Detective Police Onondaga (last known), Defendant.

5:23-CV-0662 (AMN/ML)
|
Signed July 11, 2024

**Attorneys and Law Firms**

NICOLE LEE DUNN, 8418 Theodolite Drive #722, Baldwinsville, New York 13027, Plaintiff, Pro Se.

## ORDER

Anne M. Nardacci, United States District Judge:

### I. INTRODUCTION

**\*1** On June 5, 2023, Plaintiff *pro se* Nicole Lee Dunn ("Plaintiff") commenced this civil rights action against Defendant William Edward Gabriel ("Defendant"). *See* Dkt. No. 1. The matter was referred to United States Magistrate Judge Miroslav Lovric, who, on October 16, 2023, issued an Order and Report-Recommendation granting Plaintiff's second amended application to proceed *in forma pauperis* ("IFP"), [1] and recommending that Plaintiff's complaint be dismissed with leave to amend. *See* Dkt. No. 6 at 9. [2] On December 8, 2023, this Court adopted Magistrate Judge Lovric's October 16 Order and Report-Recommendation in its entirety. *See* Dkt. No. 9.

[1]    On June 5, 2023, Plaintiff filed a Motion for leave to proceed IFP, Dkt. No. 2, which was denied without prejudice, Dkt. No. 4, and on October 11, 2023, Plaintiff filed a second motion for leave to proceed IFP, Dkt. No. 5.

[2]    Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

On March 12, 2024, following a series of letter motions and objections (*see* Dkt. Nos. 10-18), Plaintiff filed an Amended Complaint. *See* Dkt. No. 19. As in the original complaint, and reading the Amended Complaint liberally, Plaintiff alleges that Defendant, who was previously married to Plaintiff, improperly used his position in law enforcement, as well as knowledge about Plaintiff, in a way that negatively impacted Plaintiff's life. *See* Dkt. No. 19 at 3-4.

The Amended Complaint was also referred to United States Magistrate Judge Lovric, who, on June 14, 2024, issued an Order and Report-Recommendation ("Report-Recommendation") recommending the Amended Complaint be dismissed without leave to amend. *See* Dkt. No. 21 at 9. On June 18, 2024, Plaintiff timely filed Objections to the Report-Recommendation. Dkt. No. 22. [3]

[3]    Plaintiff filed a document titled "Notice of Motion" in response to Magistrate Judge Lovric's Report-Recommendation. Dkt. No. 22. The Court is mindful that due to Plaintiff's *pro se* status, her submissions are held "to less stringent standards than formal pleadings drafted by lawyers." *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citations omitted). Therefore, the Court construes Plaintiff's "Notice of Motion," Dkt. No. 22, as a timely Objection to Magistrate Judge Lovric's recommendation that the Amended Complaint be dismissed without leave to amend.

For the reasons set forth below, the Court adopts the Report-Recommendation in its entirety.


## II. STANDARD OF REVIEW

A district court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). A district court reviews those portions of a magistrate judge's report-recommendations as to which there was no properly preserved objection for clear error. *Caldwell v. Petros*, No. 1:22-cv-567 (BKS/CFH), 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim).

**\*2** "[I]n a *pro se* case ... the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal[.]" *Machicote v. Ercole*, No. 06-CV-13320, 2011 WL 3809920, at *2 (S.D.N.Y. 2011) (citation omitted); *accord Caldwell*, 2022 WL 16918287, at *1. After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1)(C).


## III. DISCUSSION

Plaintiff's Objection to the Report-Recommendation is difficult to decipher. *See generally* Dkt. No. 22. From what the Court can glean, the Objection generally takes issue with the outcome of Magistrate Judge Lovric's Report-Recommendation but does not "specifically and clearly" address the findings in the Report-Recommendation. *See Machicote*, 2011 WL 3809920, at *2. Plaintiff has thus failed to preserve any specific objection, and the Court reviews the Report-Recommendation for clear error. *See O'Diah v. Mawhir*, No. 9:08-CV-322 (TJM) (DRH), 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) ("General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error.").

Magistrate Judge Lovric concluded that the Amended Complaint must be dismissed for three reasons. *See* Dkt. No. 21 at 4. First, Magistrate Judge Lovric found that Plaintiff's Amended Complaint failed to comply with Rule 8 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and Fed. R. Civ. P. 10, which provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *Id.* at 4-5. Magistrate Judge Lovric ultimately concluded that Plaintiff's Amended Complaint failed to comply with Fed. R. Civ. P. 8 and 10 because the Amended Complaint—like the original complaint—was "largely incomprehensible" and failed "to provide fair notice of the claims [Plaintiff was attempting] to assert." *Id.* (citing *Whitfield v. Johnson*, 763 F. App'x 106, 108 (2d Cir. 2019) (summary order)).

Second, Magistrate Judge Lovric concluded that Plaintiff failed to state a valid claim pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendant because the Amended Complaint "fail[ed] to allege facts plausibly suggesting that Plaintiff's grievances against Defendant [were] related to his work as a police officer or that Defendant otherwise engaged in *any* conduct arguably invoking 'the real or apparent power of the police department.' " *Id.* at 6 (emphasis in original) (quoting *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994)).

2024 WL 3371029

Third, Magistrate Judge Lovric concluded that, to the extent Plaintiff's Amended Complaint was brought pursuant to the New York Penal Law or other criminal statutes, such claims should be "dismissed as not cognizable," in part because private citizens are not afforded a constitutional right to bring a criminal complaint against another individual. *Id.* at 7 (citing, *inter alia, Morrow v. Vanderwerff*, 9:19-CV-0555 (DNH/DJS), 2019 WL 13455972, at *7 (N.D.N.Y. July 23, 2019)).

**\*3** Finally, Magistrate Judge Lovric concluded that "Plaintiff's claims and allegations are legally frivolous" and, given that this was Plaintiff's second attempt to bring forth a cognizable cause of action, recommended leave to amend be denied because "any further amendments to Plaintiff's Amended Complaint would be futile." *Id.* at 8 (citing, *inter alia, Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003)). The Court agrees with Magistrate Judge Lovric's recommendation for the reasons set forth in the Report-Recommendation.

Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

### IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Lovric's Report-Recommendation, Dkt. No. 21, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's Amended Complaint, Dkt. No. 19, is **DISMISSED without leave to amend**; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.[4]

[4]    The Clerk shall also provide Plaintiff with copies of all unreported decisions herein.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 3371029

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1994865

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Zachary JACKSON, Plaintiff,

v.

Thomas LEONE et al., Defendants.

5:25-cv-00350 (GTS/TWD)

|

Signed May 16, 2025

**Attorneys and Law Firms**

ZACHARY JACKSON, Plaintiff, pro se, Cayuga County Jail, 7445 County House Road, Auburn, NY 13021.

## <u>REPORT-RECOMMENDATION AND ORDER</u>

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

 **\*1**  The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Zachary Jackson ("Plaintiff"). Dkt. No. 1. Plaintiff, who is currently confined at the Cayuga County Jail, has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). *See* Dkt. Nos. 2-3. [1] For the reasons set forth below, the undersigned recommends the complaint be dismissed in its entirety.

[1]     The Court notes while the complaint was signed by Plaintiff, *see* Dkt. No. 1 at 1-4, the accompanying motion for leave to proceed IFP and inmate authorization form were signed by "Vatica M. Jackson" as power of attorney for Plaintiff, *see* Dkt. No. 2 at 1; Dkt. No. 3 at 2. "A power of attorney does not allow that person to proceed *pro se* on behalf of their principal." *Ramos v. Onondaga Cnty. Dist. Attorney's Off.*, No. 5:22-CV-0765 (MAD/ML), 2022 WL 14809823, at \*3 n.8 (N.D.N.Y. Oct. 25, 2022) (internal quotations and citations omitted), *report and recommendation adopted*, 2023 WL 3182654 (N.D.N.Y. May 1, 2023). Therefore, "even assuming that Plaintiff properly granted power of attorney to Ms. [Jackson], there is no indication that Ms. [Jackson] is an attorney and thus authorized to bring an action in Plaintiff's name." *Id*. (citing *LaPietra v. City of Albany Police Dep't*, No. 9:19-CV-1527 (TJM/TWD), 2020 WL 8910894, at \*2 (N.D.N.Y. Jan. 15, 2020)).

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 1:09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). Section 1915 further provides an IFP Application must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a) (2). [2] Additionally, where a prisoner files an IFP application, Rule 5.1.4 of the Local Rules of Practice for the Northern District of New York requires that he also submit a completed and signed inmate authorization form. N.D.N.Y. L.R. 5.1.4(b)(1)(B).

[2]    *See also* 28 U.S.C. § 1915A(c) ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").

Upon review, the Court finds neither the IFP application, Dkt. No. 2, nor the inmate authorization form, Dkt. No. 3, were signed by the Plaintiff. Therefore, Plaintiff's motion for leave to proceed IFP must be denied as incomplete.[3]  Nevertheless, the Court will proceed with its review under section 1915.

[3]    If Plaintiff wishes to renew his IFP application, he must, within thirty days of the Court's ruling on this Order and Report-Recommendation, submit (1) either (a) the $402.00 filing fee in full, or (b) a completed, signed, and certified IFP application, and (2) a completed and signed inmate authorization form. If Plaintiff fails to timely comply, the undersigned recommends that this action be dismissed without prejudice. *See, e.g.*, *Ramos*, 2022 WL 14809823, at *2.

## III. BACKGROUND

**\*2**  Plaintiff commenced this action by filing a complaint dated March 10, 2025. *See* Dkt. No. 1 at 1.[4]  The complaint purports to charge "Thomas Leone," "Brittany Grome Antonacci," "Rome Canzano," and "Mark Moody" with "the misdemeanor of conspiracy in the fifth degree contrary to the provisions of 105.05 subdivision 1 of the penal law of the State of New York ...." *Id*. at 1-4. On March 27, 2025, Plaintiff filed a letter which states, in pertinent part, "I was not filing a civil suit but a felony complaint accusatory instrument ... this is a criminal matter rather than civil, as it is against local officials so I filed through Northern District court being that it has jurisdiction over Cayuga County." Dkt. No. 5 at 1.[5]

[4]    Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[5]    Additionally, the Court takes judicial notice of Plaintiff's other civil action currently pending in this district, captioned *Jackson v. Moody et al*, No. 5:25-cv-00351 (GTS-TWD).

## IV. LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). However, " 'special solicitude' for *pro se* pleadings has its limits, because *pro se* pleadings still must comply with ... the Federal Rules of Civil Procedure ...." *Cole v. Smrtic*, No. 1:24-CV-00847 (MAD/CFH), 2024 WL 4870495, at *2 (N.D.N.Y. Nov. 21, 2024) (citing *Kastner v. Tri State Eye*, No. 7:19-CV-10668, 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019)), *report and recommendation adopted*, 2025 WL 247901 (N.D.N.Y. Jan. 21, 2025).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V. ANALYSIS

**\*3** It is well established that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972) (explaining, "in our federal system crimes are always prosecuted by the Federal Government, not ... by private complaints."). Accordingly, a private citizen cannot bring a criminal complaint. *See, e.g.*, *Brown v. Seniuk*, No. 1:01-CV-1248, 2002 WL 32096576, at \*1 (E.D.N.Y. Mar. 25, 2002) (explaining, "it is axiomatic that a private citizen cannot bring a criminal complaint" and construing the plaintiff's complaint "as a § 1983 civil action seeking relief from violations of his constitutional rights.") (citations omitted); *see also, e.g.*, *Velleca v. Pangburn*, No. 9:20-CV-0887 (BKS/DJS), 2020 WL 12933756, at \*7 (N.D.N.Y. Sept. 2, 2020) ("To the extent that Plaintiff attempts to initiate criminal charges against [the defendant], that claim is dismissed. It is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual.") (citations omitted); *Dunn v. Gabriel*, No. 5:23-CV-0662 (AMN/ML), 2024 WL 3649887, at \*3 (N.D.N.Y. June 14, 2024) ("[T]o the extent that the Amended Complaint asserts claims pursuant to the New York Penal Law or other criminal statutes against Defendant, I recommend that they be dismissed as not cognizable.") (citations omitted), *report and recommendation adopted*, 2024 WL 3371029 (N.D.N.Y. July 11, 2024). Therefore, to the extent Plaintiff seeks to charge the defendants for alleged violations of New York penal law, any such claim must be dismissed.

Alternatively, to the extent the pleading is construed as commencing a civil action, the complaint fails to comply with the requirements set forth in the Federal Rules of Civil Procedure and fails to state a claim. First, Rule 8 of the Federal Rules of Civil Procedure requires a pleading contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a)(2). "Although 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct.' " *Cole*, 2024 WL 4870495, at \*2 (quoting Fed. R. Civ. P. 8(d)). Additionally, Rule 10 of the provides "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances ...." Fed. R. Civ. P. 10.

A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims." *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). Here, the pleading is insufficient to provide the defendants with fair notice of the claims asserted against them, lacks a short and plain statement showing Plaintiff is entitled to relief, and is not written in numbered paragraphs, limited as far as practicable to a single set of circumstances. As such, dismissal of the complaint is warranted pursuant to 28 U.S.C. § 1915(e)(2)(B). However, in deference to Plaintiff's *pro se* status, the undersigned recommends the action be dismissed without prejudice and with leave to amend to allow Plaintiff the opportunity to cure the defects noted above.

## VI. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **DENIED** without prejudice, and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**, and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam). Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. [6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

---

[6]     If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**\*4  IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 1994865

---

**End of Document**                                © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1994662

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Zachary JACKSON, Plaintiff,

v.

Thomas LEONE; Brittany Grome Antonacci; Rome Canzano; and Mark Moody, Defendants.

5:25-CV-0350 (GTS/TWD)

|

Signed July 17, 2025

**Attorneys and Law Firms**

ZACHARY JACKSON, Plaintiff, Pro Se, Cayuga County Jail, 7445 County House Road, Auburn, New York 13021.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

 **\*1** Currently before the Court, in this *pro se* civil rights action filed by Zachary Jackson ("Plaintiff") against Thomas Leone, Brittany Grome Antonacci, Rome Canzano, and Mark Mooday ("Defendants") asserting a conspiracy claim under N.Y. Penal Law § 105.05(1), is United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Plaintiff's Complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). (Dkt. No. 6.) Plaintiff has not filed an Objection to the Report-Recommendation, and the time in which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-Recommendation, the Court can find no clear error in the Report-Recommendation: [1] Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons stated therein.

[1]    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 6) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) **shall be DISMISSED with prejudice** and without further Order of this Court, **UNLESS, within THIRTY (30) DAYS** of the entry of this Decision and Order, Plaintiff files an Amended Complaint which corrects the pleading defects identified in Magistrate Judge Dancks' Report-Recommendation; and it is further

2025 WL 1994662

**ORDERED** that, should Plaintiff file an Amended Complaint within the above-stated thirty-day time period, the Amended Complaint shall be returned to Magistrate Judge Dancks for review.

**All Citations**

Slip Copy, 2025 WL 1994662

**End of Document**                          © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Fowlkes v. Cabral, Not Reported in Fed. Supp. (2019)

2019 WL 1059983

2019 WL 1059983
Only the Westlaw citation is currently available.
United States District Court, E.D. Wisconsin.

Charmaine T. FOWLKES, Plaintiff,

v.

Johnny CABRAL, Kristan Young Sorrell, and Ashley Tanner, Defendants.

Case No. 18-CV-231-JPS
|
Signed 03/06/2019

**Attorneys and Law Firms**

Charmaine T. Fowlkes, Milwaukee, WI, pro se.

# ORDER

J. P. Stadtmueller, U.S. District Judge

**\*1** Plaintiff Charmaine T. Fowlkes ("Fowlkes"), proceeding *pro se*, filed a complaint in this matter and a motion for leave to proceed *in forma pauperis,* meaning without prepayment of the filing fee. (Docket #1, #2). The Court granted Fowlkes' motion to proceed without prepayment of the filing fee but struck her complaint because it failed to state a claim for relief. (Docket #5). The Court permitted Fowlkes to file an amended complaint, explaining that, like her first complaint, the amended complaint would be screened to determine if it states a claim for relief. *Id.* at 8; 28 U.S.C. § 1915(e)(2)(B). Fowlkes has filed an amended complaint, (Docket #6), and the Court will screen it. The same standards for screening set out in the Court's previous order apply in equal force here. *See* (Docket #5 at 2–3).

The thrust of Fowlkes' amended complaint is the same as her original complaint. She alleges that she was previously employed by Amazon.com, and during her employment, her supervisor, Johnny Cabral ("Cabral"), continuously harassed her and prevented her advancement at the company. *See generally* (Docket #6). Fowlkes believes that Cabral somehow accessed her computer and personal devices remotely and then installed malware or somehow manipulated her programs and data in order to harass her. *Id.* at 3–4. She alleges that she received incoming phone calls from numbers that did not appear to match the caller or had no one on the line when she picked up, and she seems to attribute this to Cabral. *Id.* at 4. She alleges that the data usage for her household went up significantly, and she seems to imply this is Cabral's fault. *Id.* She alleges that she once received a notification from Google that "Johnny" was "scanning [her] personal computer." *Id.* She was assigned a new supervisor, Ashley Tanner ("Tanner"), who Fowlkes believes either failed to stop or facilitated Cabral's harassment. Fowlkes also reached out to Kristan Young Sorrell ("Sorrell"), whose title is still unclear, and she apparently did not address the harassment either. *Id.*

When the Court screened Fowlkes' original complaint, it noted that because the thrust of her complaint centered on alleged computer misconduct, the most suitable avenue for relief would be under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. The CFAA prohibits any person from, among other things: (a) "access[ing] a protected computer without authorization" so as to perpetuate a fraud and "obtain anything of value"; (b) knowingly "caus[ing] the transmission of a program, information, code or command" so as to intentionally cause damage to a protected computer; or (c) accessing a protected computer without authorization, in a manner that causes "damage" to the computer. *Id.* § 1030(a)(4), (a)(5). A "protected computer" is broadly defined as any computer "used in interstate or foreign commerce or communication." *Id.* § 1030(e)(2)(B).

2019 WL 1059983

The Court explained that although Fowlkes had alleged that she used her computer in interstate commerce, thereby satisfying the "protected computer" element of the claim, her allegations as to the other elements of a CFAA claim fell short. For example, she did not state a claim under Section 1030(a)(4) because she did not allege that Cabral intended to defraud her or that he "obtain[ed] anything of value" through his unauthorized access to her computer. *Id.* § 1030(a)(4). She did not state a claim under Section 1030(5) because she did not allege damage to her computer. More fundamentally, she also did not sufficiently allege harm. The CFAA requires that a plaintiff allege one of several enumerated "factors of harm," of which the closest fit for Fowlkes' claim is set forth in Section 1030(c)(4)(A)(i)(I). Under that subsection, Fowlkes must allege that she suffered at least $5,000 in economic damages within one year. *Id.*; 18 U.S.C. § 1030(g). Fowlkes did not allege that any of the defendants' acts caused her any economic harm whatsoever. Though she sought $100,000 in damages, she did not explain those damages in any detail or allege that those damages were in any way connected to the defendants' misconduct.

**\*2** In her amended complaint, Fowlkes explains that she seeks damages of "$30,000 per person for their part in the harassment and $10,000 for the loss of income due to the harassment." (Docket #6 at 2). She does not include allegations to support these amounts; she merely indicates that she intended to apply for a "higher level position" but the "discrimination and harassment has prevented that action from taking course." *Id.*

Simply put, Fowlkes' amended complaint does not sufficiently allege harm that is remediable under the CFAA. That statute is not meant to compensate for harassment; it is intended to prohibit fraudulent conduct on protected computers and to compensate for computer damage or theft. *See Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*, 810 F.3d 1075, 1084 (7th Cir. 2016) (discussing the purpose of Sections 1030(a)(4) and 1030(a)(5)(A) ). Damage to Fowlkes' reputation, emotional distress, and lost earnings are not compensable under the CFAA. *See Combier v. Portelos*, No. 17-CV-2239 (MKB), 2018 WL 3302182, at \*10 (E.D.N.Y. July 5, 2018), *report and recommendation adopted*, No. 17CV2239MKBRLM, 2018 WL 4678577 (E.D.N.Y. Sept. 29, 2018).

Further, Fowlkes also does not allege sufficient factual matter to permit a "reasonable inference," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), that the defendants were involved in causing the mysterious computer problems she alleges. *See Omari v. Ras Al Khaimah Free Trade Zone Auth.*, No. 16 CIV. 3895 (NRB), 2017 WL 3896399, at \*11 (S.D.N.Y. Aug. 18, 2017), *aff'd sub nom. El Omari v. Kreab (USA) Inc.*, 735 F. App'x 30 (2d Cir. 2018) (Plaintiff's speculative allegations that defendants had engaged in unauthorized access of his website were insufficient to state a claim under the CFAA.). She must provide some factual content plausibly connecting the defendants to the misconduct alleged, and her unsubstantiated theory that her supervisors had an animus against her and somehow caused myriad strange technical problems for her is not sufficient. For all of these reasons, the Court finds Fowlkes has failed to state a claim under the CFAA.

The Court moves on, then, to endeavor to identify any other claim Fowlkes has plausibly alleged in her amended complaint. The material differences between Fowlkes' original and amended complaints are that she seeks to add several claims, mostly based on state law (she references the Wisconsin Statutes sections for fair employment, discrimination, internet privacy, and parties to a crime), and she mentions for the first time the she is African American, with reference to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

First, Fowlkes' allegations related to her race do not state a claim for relief under Title VII. Federal law does not protect employees from being suspended or terminated without cause. It does prohibit employers from terminating people based on certain characteristics, including race. *See* 42 U.S.C. § 2000e-2(a)(1). Fowlkes alleges that she was the only African American female who reported to Cabral, (Docket #6 at 2), but she says nothing to connect her race to her having been reprimanded or terminated. Indeed, she does not allege that Cabral ever took her race into account. While working for Amazon.com, Fowlkes apparently received calls during which she was met with offensive language and terms known to discriminate against African Americans, and she complained about receiving those calls. *Id.* at 4. But she does not provide factual material connecting those calls to her employer, or connecting her complaints about them to any adverse employment action against her. Her allegations are not sufficient to state a claim of racial discrimination under Title VII.

Case 5:25-cv-01673-GTS-TWD   Document 9   Filed 01/23/26   Page 70 of 133

Fowlkes v. Cabral, Not Reported in Fed. Supp. (2019)

2019 WL 1059983

**\*3**  Next, as to Fowlkes' references to Wisconsin state employment and privacy statutes, even if her allegations were sufficient to state claims under those laws, the Court would only exercise jurisdiction over them if it had proper subject matter jurisdiction over the case either based on an alleged federal question or based on diversity of citizenship. *See* 28 U.S.C. §§ 1331, 1332, 1367. As explained above, Fowlkes has not stated a federal claim under the CFAA or Title VII, and the Court finds no basis for any other federal claim. The Court also does not detect a basis for diversity jurisdiction. In her original complaint, Fowlkes stated or implied that Cabral lived in Arizona, Tanner in Washington, and Sorrell in West Virginia. (Docket #1). Fowlkes does not repeat those allegations in her amended complaint, but even if these defendants are indeed all citizens of different states than Fowlkes, who lives in Wisconsin, the amount in controversy does not exceed $75,000, as is required for the exercise of diversity jurisdiction. 28 U.S.C. § 1332. Fowlkes seeks damages of "$30,000 per person for their part in the harassment and $10,000 for the loss of income due to the harassment," (Docket #5 at 2), but she does not include allegations to support these amounts. The Court finds that the amount in controversy, if any, does not meet the threshold for diversity jurisdiction.

Finally, if the defendants are all citizens of different states as Fowlkes originally pled, the Court would find that it lacks personal jurisdiction over them. The Court flagged the personal jurisdiction issue in its previous order, (Docket #5 at 7–8), and Fowlkes has not provided allegations to assure the Court that the defendants have sufficient minimum contacts with Wisconsin for this Court to exercise personal jurisdiction over them.

The Court will dismiss the federal claims alleged in Fowlkes' amended complaint for failure to state a claim upon relief can be granted and will decline to exercise jurisdiction over the state law claims alleged in her amended complaint. 28 U.S.C. § 1367(c)(3). This case will be dismissed in its entirety.

Accordingly,

**IT IS ORDERED** that the federal law claims in Plaintiff's amended complaint (Docket #6) be and the same are hereby **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim;

**IT IS FURTHER ORDERED** that the Court, pursuant to 28 U.S.C. § 1367(c)(3), declines to exercise supplemental jurisdiction over the state law claims raised in the Plaintiff's amended complaint and the Plaintiff's state law claims (Docket #6) be and the same are hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1059983

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Combier v. Portelos, Not Reported in Fed. Supp. (2018)

2018 WL 3302182

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 71 of 133

2018 WL 3302182
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Elizabeth COMBIER, Plaintiff,

v.

Francesco PORTELOS, et al., Defendants.

17-CV-2239 (MKB)
|
Signed 07/05/2018

**Attorneys and Law Firms**

Richard A. Luthmann, The Luthmann Law Firm, PLLC, Staten Island, NY, for Plaintiff.

Elizabeth Betsy Combier, New York, NY, pro se.

Bruce A. Young, Law Offices of Bruce A. Young, Bryan D. Glass, Glass Krakower LLP, Neil Anthony Giovanatti, Ian W. Forster, New York City Law Department, New York, NY, for Defendants.

Francesco Portelos, Staten Island, NY, pro se.

Lucio Celli, Bronx, NY, pro se.

**REPORT AND RECOMMENDATION**

ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE

**\*1** Plaintiff Elizabeth Combier ("plaintiff") brings this action against defendants Francesco Portelos ("Portelos"), Lucio Celli ("Celli"), Bryan Glass, Esq. ("Glass"), Jordan Harlow, Esq. ("Harlow") (collectively, the "individual defendants"), and against the New York City Department of Education (the "DOE") and Carmen Fariña ("Fariña"), the former Chancellor of the DOE [1] (together, the "DOE defendants"), asserting claims for violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 et seq.; the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 et seq.; 42 U.S.C. § 1983 ("section 1983"); the First, Fifth and Fourteenth Amendments to the United States Constitution; and various claims under New York state law. See generally Second Amended Complaint ("SAC") (Dec. 12, 2017), Electronic Case Filing Docket Entry ("DE") #39. [2]

[1] If this case were to continue, the current DOE Chancellor, Richard A. Carranza, would presumably be substituted for Carmen Fariña. See Fed. R. Civ. P. 25(d) (providing for automatic substitution of public officer with successor).

[2] In addressing subject matter jurisdiction, the SAC cites a series of penal statutes, i.e., 18 U.S.C. §§ 241, 242, 1343, 1962, 1964. See SAC p. 2. (Because the SAC contains several errors in the numbering of paragraphs, this opinion cites to the page numbers of the pleading.) However, plaintiff does not purport to bring any claims for violations of those statutes, several of which do not provide for private causes of action. See, e.g., Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir. 1994); Powers v. Karen, 768 F.Supp. 46, 51 (E.D.N.Y. 1991), aff'd, 963 F.2d 1522 (2d Cir. 1992).

Currently pending before this Court, on a referral from the Honorable Margo K. Brodie, are defendants' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Order Referring Motions (Apr. 4, 2018); Motion to Dismiss filed by Celli (Jan. 3, 2018) ("First Celli Motion"), DE #44; Motion to Dismiss filed by the DOE Defendants (Jan. 30,

Combier v. Portelos, Not Reported in Fed. Supp. (2018)

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 72 of 133

2018 WL 3302182

2018), DE #51; Motion to Dismiss filed by Glass and Harlow (Jan. 30, 2018), DE #55; Motion to Dismiss filed by Portelos (Feb. 1, 2018), DE #57. Defendant Celli also moves to dismiss the case for failure to prosecute, which Judge Brodie likewise referred to the undersigned magistrate judge. See Motion to Dismiss for Lack of Prosecution (Feb. 23, 2018) ("Second Celli Motion"), DE #60. For the reasons that follow, this Court recommends that defendants' Rule 12(b)(6) motions be granted in their entirety and that this action be dismissed on that basis.

## **BACKGROUND**

This case involves what is essentially a dispute between private parties competing to represent tenured New York City public school teachers in disciplinary hearings ("3020-a hearings"). [3]  In sum, the Second Amended Complaint alleges that in an effort to destroy her business as a non-attorney advocate representing teachers in 3020-a hearings, the individual defendants engaged in a scheme to hack into her website, alter the content of her blog and disseminate false information about her through internet postings and mass emails. The following facts are drawn from plaintiff's Second Amended Complaint and are accepted as true for purposes of this motion.

[3]     Section 3020-a of the New York Education Law provides for an extensive administrative hearing and appeals process in connection with disciplining tenured teachers and administrators within the New York state school system. See Burkybile v. Bd. of Educ. Hastings-on-Hudson, Union Free Sch. Dist., 411 F.3d 306, 309 (2d Cir. 2005).

 **\*2**  Since 2010, plaintiff has been self-employed as an advocate for tenured New York City public school teachers subject to disciplinary hearings, and has assisted attorneys working on the same subject matter. See SAC pp. 5, 15. She is also the editor of several websites and blogs, including Parentadvocates.org and NYC Rubber Room Reporter. See id. p. 6.

In 2011, defendant Glass, an attorney, asked plaintiff to assist him in representing a teacher in a 3020-a hearing. See id. pp. 8, 15. In 2012, Glass asked plaintiff to train his associate, defendant Harlow, to handle such hearings. See id. pp. 9, 15; see also Plaintiff's Opposition to Defendants' Motion to Dismiss (Mar. 13, 2017) ("Pl. Opp.") at 5, DE #67 (stating that in 2013, Glass asked to assist his associate in handling 3020-a hearing). Plaintiff recruited five teachers who subsequently hired plaintiff and Glass. See id. Plaintiff alleges that Glass sought to steal plaintiff's clients and directed Harlow to take over the arbitration hearings without plaintiff. See SAC p. 9. In 2013 through 2014, Harlow and plaintiff worked together, but Harlow spoke negatively about plaintiff to clients so that she would lose those clients to Harlow. See id. p. 10. In fact, plaintiff further alleges that Harlow told a client, who had asked plaintiff for help, that she should never speak to plaintiff, that every teacher that plaintiff represented was ultimately terminated, and that plaintiff was ill-equipped to represent teachers. See id.

Defendants Portelos and Celli are teachers employed by the defendant DOE. See id. pp. 6, 8. Celli is a member of an advocacy group started by defendant Portelos—UFT Solidarity. See id. p. 8. At Portelos' direction, Celli has defamed plaintiff and her friends, with the intent of ending plaintiff's business. See id.

From September 2015 to the present, defendants Portelos and Celli engaged in a scheme to damage plaintiff's business and deny her the "right to earn money" by recruiting teachers to solicit plaintiff's help with 3020-a hearings; having the teachers send plaintiff payment as a "thank you," even though plaintiff had not requested any payment; and then having the teachers, a few days later, demand that plaintiff return their money. See id. p. 19. In addition, the individual defendants "broadcast[ed]" their accusation that plaintiff was practicing law without a license and should be prosecuted for participating in 3020-a hearings. See id. p. 20. On September 20, 2015, Portelos organized a meeting in Queens with approximately 50 United Federation of Teachers ("UFT") members, wherein a former teacher told the assembled crowd that plaintiff was a homophobe. See id. p. 18. Portelos recorded the former teacher's speech and posted the video on his website. See id. From November 2015 to the present, Portelos and Celli also spread negative information about plaintiff through mass emailings and postings on Portelos' Facebook page, website and other social media. See id. pp. 20-21.

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 73 of 133
Combier v. Portelos, Not Reported in Fed. Supp. (2018)
2018 WL 3302182

In March 2016, defendant Celli sent a series of emails to about 50 addresses, including those of the Manhattan and Bronx District Attorneys and other public officials and members of the media, accusing plaintiff of working against teachers and colluding with the General Counsel of the DOE. See id. p. 21. Specifically, Celli claimed that plaintiff secretly recorded arbitration hearings and made *ex parte* phone calls to the New York State Public Employment Relations Board. See id. pp. 21-22.

**\*3** Plaintiff further alleges that in July or August 2016,[4] Portelos hacked into plaintiff's blog, "NYC Rubber Room Reporter," deleted a section titled "The 3020-a Arbitration Newswire," and, on September 30, 2016, added the deleted section to his guide to 3020-a hearings for UFT members, which Portelos posted on his website, "UFT Solidarity." See id. pp. 7, 22. In his guide, Portelos states that union members should avoid non-lawyer assistance and directs readers to hire defendant Glass to represent them in 3020-a hearings. See id. p. 7. In turn, Glass posted a comment on Portelos' social media to "beware of snake-oil salesmen," which plaintiff believes is a reference to her. See id. p. 9.

[4]    On page 7 of the SAC, plaintiff alleges that the hacking occurred in July 2016, while on page 22, plaintiff alleges that the hacking occurred in August 2016.

According to plaintiff, Portelos, Celli, Glass and Harlow created a poster of plaintiff (reproduced at Pl. Opp. at 55), which was sent to her on October 11, 2016, by her former client, Jim Geist, who threatened her with criminal prosecution for posting his Social Security number on her website, Parentadvocates.org. See SAC pp. 22, 23. Plaintiff claims that the posting of Mr. Geist's Social Security number was due to an error by Glass and Harlow, who entered that number in the online public data of the New York State Supreme Court in connection with his 3020-a hearing. See id. p. 23. In fact, Mr. Geist's Social Security number does not appear on plaintiff's website. See id. The aforementioned poster was used by defendants to solicit plaintiff's former clients to "sign up" to be refunded the money they had paid plaintiff over the years. See id. pp. 23-24.

On October 19, 2016, Portelos sent an email to teachers in New York City and Los Angeles, warning them about plaintiff's rendering of "illegal legal consultation" to a teacher in connection with the teacher's 3020-a hearing. See id. p. 24. Portelos also attached the poster described above and the address of a blog, nycrubberroomreportercom.blogspot.com, in which plaintiff is accused of stealing from a church. See id.

The amended pleading further alleges that, without plaintiff's knowledge, Portelos posted articles on another blog, nycrubberroom.com, and listed as the owner of the blog plaintiff's foundation, the E-Accountability Foundation, with plaintiff's home address and phone number. See id. p. 25. As a result, in March 2017, plaintiff was threatened with a federal lawsuit by a photographer for posting a photograph by him on that blog, without his authorization. See id.

On September 21, 2017, "[w]ith the support of the individual [d]efendants in this case," Mr. Geist (plaintiff's former client) filed a complaint against plaintiff with the West Milford, New Jersey, Police Department for posting his Social Security number. See id. pp. 23, 25. In addition, the Second Amended Complaint alleges that on December 4, 2017, Portelos posted false information on his UFT Solidarity website to the effect that plaintiff was being investigated by the Manhattan District Attorney's Office. See id. p. 25.

Although the Second Amended Complaint contains virtually no allegations regarding Chancellor Fariña or the DOE, plaintiff contends that the DOE "bears vicarious liability" for the acts of the individual defendants for its failure to supervise its employees and to enforce its policies as to internet use and computer abuse. See id. p. 11. According to plaintiff, the DOE was aware of the individual defendants' scheme to malign plaintiff's reputation but did not act to prevent it. See id. p. 19. Moreover, Celli and Portelos are alleged to have sent mass emails disparaging plaintiff using their DOE email and/or DOE computers during the school day, in violation of DOE policies, without repercussion. See id. p. 26.

**PROCEDURAL HISTORY**

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 74 of 133

Combier v. Portelos, Not Reported in Fed. Supp. (2018)

2018 WL 3302182

**\*4** Plaintiff commenced this action on April 13, 2017, see Complaint (Apr. 13, 2017), DE #1, and initially amended her Complaint on April 28, 2017, see Amended Complaint (Apr. 28, 2017), DE #5, both through her then-counsel of record. Following plaintiff's counsel's withdrawal, see Minute Entry and Order (Aug. 22, 2017), DE #31, defendants filed various motions to dismiss and requests for a pre-motion conference in anticipation of moving to dismiss; at a conference held on October 3, 2017, Judge Brodie dismissed plaintiff's section 1983 claims against defendants and granted plaintiff 30 days to further amend her pleading to "assert[ ] facts to support a federal claim." See Minute Order (Oct. 3, 2017) ("10/3/17 Order"). The Second Amended Complaint was filed on December 12, 2017, restating claims under section 1983 and adding federal claims under the CFAA and the SCA and for violating plaintiff's constitutional rights. See SAC. In response, defendants filed the instant motions to dismiss. [5]

---

[5]     Like plaintiff, defendants Portelos and Celli are proceeding *pro se.*

---

## DISCUSSION

### I. Motion to Dismiss Legal Standard

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept the complaint's factual allegations as true, drawing all reasonable inferences in favor of the plaintiff. See Christiansen v. Omnicom Grp., Inc., 852 F.3d 195, 199 (2d Cir. 2017). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level...." Twombly, 550 U.S. at 555, 127 S.Ct. 1955. A complaint should be dismissed where a plaintiff has not "nudged [her] claims across the line from conceivable to plausible[.]" Id. at 570, 127 S.Ct. 1955.

A *pro se* complaint, " 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ). Pleadings of a *pro se* party should be read " 'to raise the strongest arguments that they suggest.' " Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) ). Nevertheless, dismissal of a *pro se* complaint is appropriate where the plaintiff fails to state a plausible claim supported by more than conclusory allegations. See Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013). Of course, here, plaintiff is not the typical *pro se* litigant: Although not a lawyer, she has been representing teachers as an advocate in connection with administrative hearings for several years, and, moreover, was herself represented by counsel when the first two iterations of her pleading were filed. Therefore, plaintiff arguably is not entitled to the same degree of deference generally afforded to *pro se* litigants.

In opposing defendants' motions, plaintiff has attached to her brief approximately 300 pages of exhibits. Many of the attached documents consist of email communications or other electronic communications between plaintiff and defendant Portelos or Celli. In addition, plaintiff has attached the affidavits of her and her husband.

Generally, a plaintiff may not support a deficient complaint through extrinsic documents submitted in opposition to a motion to dismiss. See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998); Ahart v. Willingham, No. 3:05CV1016(JCH) (HBF), 2007 WL 842006, at \*5 (D. Conn. Mar. 15, 2007). If, on a motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, extrinsic evidence that is attached to the pleadings or incorporated by reference may be considered on a motion to dismiss. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Id. at 153 (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) ). For a document to be deemed integral to the complaint, the plaintiff (1) must have "actual notice" of its

Combier v. Portelos, Not Reported in Fed. Supp. (2018)

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 75 of 133

2018 WL 3302182

contents and (2) must have " 'relied upon th[e] document[ ] in framing the complaint.' " Id. (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) ).

**\*5** Here, plaintiff's Second Amended Complaint quoted from many of the documents that she now proffers, and no defendant has objected to the Court's consideration of that extrinsic evidence. In any event, the Court need not determine whether it may consider these documents because they do not advance plaintiff's claims beyond the allegations in the Second Amended Complaint.

## II. Rule 8 Pleading Requirements

Notwithstanding the special solicitude that courts typically afford *pro se* litigants, Rule 8 of the Federal Rules of Civil Procedure requires that even a *pro se* complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, "[e]ach averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(e)(1). "[U]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (internal quotation marks and citations omitted). Although plaintiff's Second Amended Complaint is not "unintelligible," see Shomo v. State of New York, 374 F.App'x 180, 183 (2d Cir. 2010), it is at times rambling and filled with extraneous details. More importantly, in describing conduct, the pleading frequently fails to differentiate among the various defendants. See Atuahene v. City of Hartford, 10 F.App'x 33, 34 (2d Cir. 2001) (affirming dismissal of *pro se* complaint for "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct"); Milton v. Wazed, 16-CV-4542 (MKB) (JO), 2018 WL 2074179, at \*7 n.16 (E.D.N.Y. Mar. 30, 2018) (quoting In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) ) (A complaint should provide "specification of any particular activities by any particular defendant.' "). This failure to identify which defendant took what action is itself a ground that warrants dismissal in this case.

## III. Section 1983 Claims

A. General Legal Principles

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." Filarsky v. Delia, 566 U.S. 377, 383, 132 S.Ct. 1657, 182 L.Ed.2d 662 (2012). Section 1983 does not itself create substantive rights; rather, it "provides 'a method for vindicating federal rights elsewhere conferred.' " Patterson v. County. of Oneida, 375 F.3d 206, 225 (2d Cir. 2004) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) ).

" 'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.' " Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002) (quoting United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 941 F.2d 1292, 1295-96 (2d Cir. 1992) ). Accordingly, "[i]n order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." Id. Section 1983 does not apply to " 'merely private conduct, no matter how discriminatory or wrongful.' " Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) ).

B. Portelos and Celli

**\*6** Plaintiff's theory of liability against Portelos and Celli under section 1983 is based on their employment with the DOE and their alleged use of school computers and/or conduct occurring during school hours. See SAC pp. 8, 11, 26; Pl. Opp. at 2.

Case 5:25-cv-01673-GTS-TWD   Document 9   Filed 01/23/26   Page 76 of 133

Combier v. Portelos, Not Reported in Fed. Supp. (2018)

2018 WL 3302182

Plaintiff further alleges that the DOE "was aware of [Portelos' and Celli's] malicious acts yet did nothing to prevent, block, or stop" them. See SAC p. 19; see also Pl. Opp. at 3.

As discussed above, for liability to attach under section 1983, the defendant in question must have acted under color of state law. See Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994). "To act under color of state law or authority for purposes of section 1983, the defendant must 'have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " Monsky v. Moraghan, 127 F.3d 243, 245 (2d Cir. 1997) (quoting West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ); see United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999). "It is 'axiomatic that under color of law means pretense of law and that acts of officers in the ambit of their personal pursuits are plainly excluded.' " Monsky, 127 F.3d at 245 (quoting Pitchell, 13 F.3d at 547-48). In other words, Portelos and Celli are not subject to liability under section 1983 merely because they are employed by the DOE. See Kern v. City of Rochester, 93 F.3d 38, 43 (2d Cir. 1996); Keller v. Village of Hempstead, No. CV 13-3670, 2014 WL 2718573, at *4, *5 (E.D.N.Y. June 12, 2014). Furthermore, "[m]ore is required than a simple determination as to whether [the defendant] was on or off duty when the challenged incident occurred.... In short, courts look to the nature of the [defendant's] act, not simply his duty status." Pitchell, 13 F.3d at 548.

Here, plaintiff does not allege that Portelos or Celli used or abused apparent state authority in engaging in a scheme to defame or harass plaintiff. See generally Claudio v. Sawyer, 409 F.App'x 464, 466 (2d Cir. 2011); United States v. Giordano, 442 F.3d 30, 47 (2d Cir. 2006). On the contrary, it is clear from the allegations in the Second Amended Complaint that Portelos and Celli were acting as private citizens in engaging in the conduct challenged by plaintiff. See Kern, 93 F.3d at 43 (actions taken by lieutenant in fire department, in his capacity as union president, are not taken under color of law); Miron v. Town of Stratford, 976 F.Supp.2d 120, 149 (D. Conn. 2013) (actions taken in union capacity, and not as police officer, were not under color of law). Indeed, the crux of the dispute between the parties concerns their advocacy on behalf of teachers whom they believed were being mistreated by the State—to wit, the DOE. See Cambriello, 292 F.3d at 324 (affirming dismissal of section 1983 claim against union, which represented employees in grievance against county, and thus union was county's adversary and not state actor acting in concert with it).

Nor does Portelos' and Celli's alleged use of school computers, or actions taken by them during school hours, supply the requisite state action under section 1983. "The fact that a defendant is on-duty is not sufficient to show that he or she acted under color of law." Isaacs v. City of New York, No. 10-CV-4177 (NGG)(RLM), 2012 WL 314870, at *2 (E.D.N.Y. Feb. 1, 2012). That Portelos and Celli may have used DOE time and equipment is not what enabled them to commit the conduct complained of; their acts do not constitute the exercise of real or apparent power granted to them by the DOE. Compare Pitchell, 13 F.3d at 548 (off-duty police officer who, while drunk, shot a guest in his home with bullets issued by the police department was not acting under color of law); Delcambre v. Delcambre, 635 F.2d 407, 408 (5th Cir. 1981) (chief of police was not acting under color of law when he assaulted his sister-in-law at the police station and while on duty, and thus he and the municipality could not be held liable under section 1983) (cited with approval in Pitchell, 13 F.3d at 548); Isaacs, 2012 WL 314870, at *2-3 (dismissing section 1983 claim against on-duty corrections officer who, while escorting a detainee to the hospital, became "involved in an altercation of a personal nature" with a nurse); and Claudio v. Sawyer, 675 F.Supp.2d 403, 409 (S.D.N.Y. 2009) (dismissing section 1983 action; even assuming officer used department-issued weapon in shooting, more is required to show that he was acting under color of law) (Chin, J.), aff'd, 409 F.App'x 464 (2d Cir. 2011), with Gleason v. Scoppetta, 566 F.App'x 65, 68-69 (2d Cir. 2014) (where defendants used fire department computer system to access plaintiff's medical information, which was password protected, with access restricted to fire department, pleading plausibly alleged that defendants "misused power that they possessed 'only because' of authority that the City had granted them"); and Giordano, 442 F.3d at 45-46 (by claiming to control the police and by threatening victims that they would go to jail if they reported his abuse, mayor "invoked 'the real or apparent power' of his office to make the continuing sexual abuse possible"). Therefore, the Second Amended Complaint does not plausibly allege that Portelos and Celli were acting under color of state law.

### C. Glass and Harlow

*7 Plaintiff contends that attorneys Glass and Harlow, private individuals, are liable under section 1983 as "state actors," because they collaborated with defendant Portelos. See Pl. Opp. at 29, 33-34. However, as plaintiff acknowledges, the conduct

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 77 of 133
Combier v. Portelos, Not Reported in Fed. Supp. (2018)
2018 WL 3302182

of private persons or entities generally does not constitute state action and cannot form the basis of a section 1983 claim. See Pl. Opp. at 24 ("[p]rivate individuals generally are not considered to act under color of law"); Harrison v. New York, 95 F.Supp.3d 293, 322 (E.D.N.Y. 2015). Here, the Second Amended Complaint does not allege any facts that would plausibly render the conduct of defendants Glass and Harlow state action.

Plaintiff relies on the alleged conspiracy between defendants Glass and Harlow and defendant Portelos to impose liability on Glass and Harlow. See Pl. Opp. at 29, 33-34. Plaintiff has not identified any other state actor with whom Glass and Harlow are alleged to have conspired. However, as discussed above, it cannot plausibly be said that defendant Portelos was acting under color of law. Since Portelos is not liable for violating plaintiff's constitutional rights under section 1983, neither are Glass or Harlow. See Pitchell, 13 F.3d at 549 (where off-duty police officer is not liable for shooting plaintiff, neither is his partner for failing to intervene). Therefore, this Court recommends dismissing plaintiff's section 1983 claims against Glass and Harlow.

### D. The DOE

Similarly, if the purported state actors, Portelos and Celli, are not liable under section 1983 for inflicting a constitutional injury, section 1983 liability does not attach to the DOE. See Claudio, 409 F.App'x at 466-67 (affirming dismissal, as claim against city must be based on constitutional violation by a state actor); Pitchell, 13 F.3d at 549 (City of Hartford not liable under section 1983 where police officers were not liable); Holland v. City of New York, 197 F.Supp.3d 529, 552 (S.D.N.Y. 2016).

Plaintiff contends that the DOE had "the authority and capability to stop" the individual defendants' actions but failed to do so. See SAC p. 27. The pleading further alleges that the DOE's "negligence in monitoring/stopping/preventing the use of educators' email addresses for the purpose" of damaging plaintiff violated her rights under the Due Process Clause of the Fourteenth Amendment. See id. p. 31. However, it is well established that the substantive due process clause of the Fourteenth Amendment does not require the State "to protect the life, liberty, and property of its citizens against invasion by private actors." DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The purpose of the Due Process Clause is to protect people from the State, not to ensure that the State will protect them from one another. See id. at 196, 109 S.Ct. 998. Here, there is no plausible claim that any state actor "affirmatively encourage[ed] or condon[ed]" the conduct described by plaintiff. Okin v. Village of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 429 (2d Cir. 2009); see Claudio, 409 F.App'x at 467. Thus, the DOE's failure to protect plaintiff against the individual defendants' private conduct does not constitute a violation of the Due Process Clause.

In any event, even if Portelos and Celli could be deemed to have acted under color of state law, municipalities are not "vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 563 U.S. 51, 60, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011). Because a municipality is liable only for its own involvement in a civil rights violation, a plaintiff suing a municipality under section 1983 must plausibly allege the existence of a municipal policy, custom, or practice that caused the claimed civil rights violation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This causal link must be sufficiently strong such that the municipal policy, custom, or practice can be considered a "moving force" behind the municipal employee's misconduct. See id. at 694, 98 S.Ct. 2018.

**\*8** Plaintiff's section 1983 claim against the DOE appears to be based on its alleged failure to discipline Portelos and Celli and/or prevent them from defaming plaintiff. See, e.g., Pl. Opp. at 2 (vaguely alleging that the DOE "has made the teacher discipline procedure an unconstitutional mess"); id. at 3 ("DOE does not hold people accountable for anything"); id. at 9 (the conduct of Portelos and Celli "actually violates the NYC DOE cyberbullying policy, but no one at the Department really cares"); id. at 38 (the DOE "has no internal structure to discipline cyberbullies, and negligently overlooked the harm that Portelos created"). Contrary to the premise of plaintiff's theory, municipal liability under section 1983 may not be predicated on mere negligence. See Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 128 (2d Cir. 2004).

Charitably construed, plaintiff's theory of municipal liability would seem to be predicated upon the DOE's purported failure to properly train municipal employees, amounting to deliberate indifference to the rights of persons with whom those employees came in contact, see City of Canton v. Harris, 489 U.S. 378, 387-88, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), or constituting a

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 78 of 133
Combier v. Portelos, Not Reported in Fed. Supp. (2018)
2018 WL 3302182

persistent and widespread pattern of similar violations, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). [6]

[6]    Plaintiff does not argue that there was any express, unlawful policy at DOE. See generally Monell, 436 U.S. at 690, 98 S.Ct. 2018.

To sustain a theory of municipal liability based on deliberate indifference, plaintiff must allege that the DOE made no meaningful attempt to forestall or prevent the claimed violations, even though " 'the need for more or better supervision to protect against constitutional violations was obvious[.]' " Amnesty Am., 361 F.3d at 127 (quoting Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995) ); see Carter v. Incorporated Village of Ocean Beach, 759 F.3d 159, 164 (2d Cir. 2014). Alternatively, if properly pled, "municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of Monell." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). Such a theory of liability will be sustained only "where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007).

Plaintiff's allegations are far too conclusory to justify imposing municipal liability for the alleged acts of Portelos and Celli under either theory. See Gleason, 566 F.App'x at 70 ("Gleason's allegations regarding the City's 'unofficial policy' of ignoring breaches of firefighters' privacy interests are too conclusory to state a plausible claim against the City."). Although plaintiff alleges that the DOE was "aware" of their "scheme" against plaintiff, plaintiff has alleged no facts to support that conclusory assertion. Indeed, the DOE brought 38 disciplinary charges against Portelos, see SAC pp. 16-17, thereby undermining plaintiff's claim that the DOE did nothing in the face of a pattern of misconduct. See Sarus v. Rotundo, 831 F.2d 397, 401-02 (2d Cir. 1987) (claim of failure to train or supervise could not be sustained where officers were subjected to disciplinary proceedings). Moreover, plaintiff fails to identify any prior incidents that did not result in disciplinary proceedings against Portelos or others engaged in similar "schemes." See Frederique v. County of Nassau, 168 F.Supp.3d 455, 481 (E.D.N.Y. 2016); Zainc v. City of Waterbury, 603 F.Supp.2d 368, 381 (D. Conn. 2009).

*9    For these reasons, this Court recommends dismissing plaintiff's section 1983 claims against the DOE.

E. Chancellor Fariña

Similarly, in the absence of a constitutional violation by Portelos and Celli, Chancellor Fariña cannot be liable under section 1983. See Pitchell, 13 F.3d at 549. Moreover, the personal involvement of a defendant is a prerequisite to liability under section 1983. See Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015); Scott v. Fischer, 616 F.3d 100, 110 (2d Cir. 2010). Like municipal liability, supervisory liability cannot rest on a theory of respondeat superior. See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003). In Iqbal, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to ...section 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676, 129 S.Ct. 1937.

Here, neither the pleading nor plaintiff's memorandum of law in opposition cites any conduct by Chancellor Fariña concerning plaintiff. "In fact, Chancellor Fariña is only mentioned once in the body of the Second Amended Complaint[,]" wherein plaintiff "alleges that a photo of Chancellor Fariña was removed from [p]laintiff's website." City Defendants' Memorandum of Law in Support (Jan. 30, 2018) at 3, [7] DE #52 (citing SAC p. 22). Consequently, this Court recommends that the claims against Chancellor Fariña be dismissed.

[7]    In this opinion, citations to pages in a document refer to the document's internal pagination, which may differ from pagination designated by the Electronic Case Filing system.

**IV. Constitutional Claims**

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 79 of 133
Combier v. Portelos, Not Reported in Fed. Supp. (2018)
2018 WL 3302182

Section 1983 provides the exclusive federal remedy for violations of constitutional rights under color of state law. See Jet v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989); Pauk v. Bd. of Trs. of City Univ. of N.Y., 654 F.2d 856, 865 (2d Cir. 1981). Moreover, state action is required for suits brought directly under a provision of the Bill of Rights or the Fourteenth Amendment to the United States Constitution. See Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). As discussed above, in the absence of state action, this Court recommends dismissing plaintiff's claims against defendants for allegedly violating her constitutional rights.

**V. Computer Fraud And Abuse Act Claims**

  A. General Legal Principles
"The CFAA, in relevant part, provides a private federal cause of action against a person who 'intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains ... information from any protected computer.' " Ramirez v. SupportBuddy Inc., No. 17 CV 5781 (VB), 2018 WL 2089362, at *4 (S.D.N.Y. May 4, 2018) (quoting Jet One Grp., Inc. v. Halcyon Jet Holdings, Inc., No. 08-CV-3980 (JS)(ETB), 2009 WL 2524864, at *5 (E.D.N.Y. Aug. 14, 2009) ); see 18 U.S.C. § 1030(a)(2). Congress intended the statute to cover cases involving computer theft as opposed to mere trespass. See Fidlar Techs. v. LPS Real Estate Data Sols., Inc., 810 F.3d 1075, 1080 (7th Cir. 2016).

As relevant here, the statute permits a private right of action when a party has suffered damages and a loss of at least $5,000 during a one-year period. See 18 U.S.C. §§ 1030(c)(4)(A)(i)(I), 1030(g); Ramirez, 2018 WL 2089362, at *4; Mount v. PulsePoint, Inc., 13 Civ. 6592 (NRB), 2016 WL 5080131, at *8 (S.D.N.Y. Aug. 17, 2016), aff'd, 684 F.App'x 32 (2d Cir. 2017); accord Facebook, Inc. v. Power Ventures, Inc., 844 F.3d 1058, 1066 (9th Cir. 2016). "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]" 18 U.S.C. § 1030(e)(11); see Brown Jordan Int'l, Inc. v. Carmicle, 846 F.3d 1167, 1174 (11th Cir. 2017). Loss thus includes "any remedial costs of investigating the computer for damage, remedying the damage and any costs incurred because the computer cannot function while or until repairs are made." Nexans Wires S.A. v. Sark-USA, Inc., 319 F.Supp.2d 468, 474 (S.D.N.Y. 2004), aff'd, 166 F.App'x 559 (2d Cir. 2006). "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information[.]" 18 U.S.C. § 1030(e)(8). "The complaint must [ ] allege with some particularity the 'damage' and 'loss' (as defined in the CFAA) claimed to be involved, with, moreover, facts showing that the $5,000 threshold of Section 1030(a)(4) is satisfied." Ipreo Holdings LLC v. Thomson Reuters Corp., No. 09 Cv. 8099(BSJ), 2011 WL 855872, at *7 (S.D.N.Y. Mar. 8, 2011) (quoting Marketing Tech. Sols., Inc. v. Medizine LLC, No. 09 Civ. 8122(LMM), 2010 WL 2034404, at *7 (S.D.N.Y. May 18, 2010) ).

  B. Portelos and Celli
  **\*10** Defendants Portelos and Celli argue that plaintiff has not sufficiently alleged that she suffered a loss that would qualify for relief under the CFAA. See Portelos Memorandum in Support (Feb. 1, 2018) at 10-11, DE #57-1; First Celli Motion at 1-4. The Second Amended Complaint alleges that plaintiff "has suffered general and special damages including, without limitation, harm to Plaintiff's reputation, emotional distress, lost earnings, and other pecuniary loss." SAC at p. 27. However, non-economic losses such as reputational harm and emotional distress are not compensable under the CFAA. See 18 U.S.C. § 1030(g) (expressly limiting damages to "economic damages"); Creative Computing v. Getloaded.com LLC, 386 F.3d 930, 935 (9th Cir. 2004); Jensen v. Cablevision Sys. Corp., 2:17-cv-00100 (ADS)(AKT), 2017 WL 4325829, at *13 (E.D.N.Y. Sept. 27, 2017); Bose v. Interclick, Inc., No. 10 Civ. 9183(DAB), 2011 WL 4343517, at *4 (S.D.N.Y. Aug. 17, 2011); accord Padmanabhan v. Healey, 159 F.Supp.3d 220, 224 (D. Mass. 2016), aff'd, 2017 WL 3404402 (1st Cir. 2017).

Despite the fact that the current pleading is her third in this case, plaintiff fails to allege any remedial costs of investigating or remedying damage to a computer or costs incurred because her computer would not function. See Ramirez, 2018 WL 2089362, at *4; Mount, 2016 WL 5080131, at *8. Nor has plaintiff explained how the alleged deletion of content from her website created an interruption in service that caused economic damages of at least $5,000, in lost revenue to her business or otherwise. See

Combier v. Portelos, Not Reported in Fed. Supp. (2018)
2018 WL 3302182

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 80 of 133

Nexans Wires S.A. v. Sark-U.S.A., Inc., 166 F.App'x 559, 562-63 (2d Cir. 2006); Jensen, 2017 WL 4325829, at *13 (finding improbable that extra electricity costs caused by wireless router approached $5,000). In fact, plaintiff states in her opposition brief that she added back most of the deleted content within one week. See Pl. Opp. at 10. In sum, plaintiff's perfunctory assertion that she suffered a cognizable loss as a direct and proximate cause of defendants' conduct is insufficient to satisfy the *Twombly/ Iqbal* standard. See Ramirez, 2018 WL 2089362, at *4-5 (granting motion to dismiss where plaintiff failed "to quantify her alleged costs or make specific allegations as to the costs of repairing or investigating the alleged damage to her computer"); Tamlyn v. BlueStone Advisors, LLC, No. 17 C 8893, 2018 WL 1920184, at *3 (N.D. Ill. Apr. 24, 2018) (holding that plaintiff was required to, but did not, specifically allege CFAA damages and explain how defendant caused them); Synopsys, Inc. v. Ubiquiti Networks, Inc., —— F.Supp.3d ——, ——, 2018 WL 1305912, at *8-9 (N.D. Cal. Mar. 13, 2018) (dismissing CFAA counterclaim where pleading alleged no facts that plaintiff incurred $5,000 loss in responding to illegal conduct); Bose, 2011 WL 4343517, at *4 (dismissing CFAA claim where plaintiff failed to quantify any damage caused or to make any specific allegation as to cost of repair or investigating damage to computer).

### C. Glass, Harlow and the DOE Defendants

Plaintiff's theory of liability against defendants Glass, Harlow and the DOE defendants appears to be based on the notion that they had "the authority and capability" to prevent Portelos from hacking into her blog and website. See SAC p. 27. However, even assuming *arguendo* that plaintiff had stated a claim under the CFAA against Celli and Portelos, her claim against Glass, Harlow and the DOE defendants should be dismissed; plaintiff does not allege that they committed any directly violative conduct, or that Portelos acted as their agent. See generally Milton, 2018 WL 2074179, at *7 (dismissing claims where plaintiff pled no facts supporting inference that plaintiff was harmed by someone acting as defendants' agent); Yukos Capital S.A.R.L. v. Feldman, No. 15-cv-4964 (LAK), 2016 WL 4940200, at *3 (S.D.N.Y. Sept. 14, 2016) (dismissing SCA claim for failure to adequately allege agency relationship). In opposing their motions to dismiss, plaintiff does not identify any basis for imposing a duty on Glass, Harlow or the DOE defendants to prevent Portelos from engaging in the purported CFAA violations. Therefore, for this additional reason, this Court recommends dismissing the CFAA claims against Glass, Harlow and the DOE defendants.

## VI. Stored Communications Act Claims

**\*11** Plaintiff's claim brought pursuant to the SCA must also fail. The factual allegations contained in plaintiff's pleading pertaining to the SCA claim consist of one paragraph: "Individual Defendants unlawfully and maliciously hacked into Plaintiff's blogs, websites, and other communications in order to harm her business and person." SAC p. 28. These allegations fail to provide sufficient information to sustain a claim under the SCA.

### A. General Legal Principles

The SCA, also known as Title II of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2701-2712, " 'aims to prevent hackers from obtaining, altering or destroying certain electronic communications.' " MDB LLC v. Hussain, 14-CV-9281 (VEC), 2016 WL 1267793, at *8 (S.D.N.Y. Mar. 29, 2016) (quoting Pure Power Boot Camp v. Warrior Fitness Boot Camp, 587 F.Supp.2d 548, 555 (S.D.N.Y. 2008) ). The statute creates a private cause of action against one who "accesses an electronic communication service, *or* obtains an electronic communication while it is still in electronic storage, without authorization." Pure Power Boot Camp, 587 F.Supp.2d at 555. The SCA was intended to " 'address[ ] the growing problem of unauthorized persons deliberately gaining access to, and sometimes tampering with, electronic or wire communications that are not intended to be available to the public.' " Kaufman v. Nest Seekers, LLC, No. 05 CV 682(GBD), 2006 WL 2807177, at *4 (S.D.N.Y. Sept. 26, 2006) (quoting S.Rep. No. 99-541, at 35 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, at 3589); see Ehling v. Monmouth-Ocean Hosp. Serv. Corp., 961 F.Supp.2d 659, 666 (D.N.J. 2013) (quoting Konop v. Hawaiian Airlines, Inc., 302 F.3d 868, 875 (9th Cir. 2002) ) (" 'The legislative history of the [SCA] suggests that Congress wanted to protect electronic communications that are configured to be private.' "). Indeed, the statute provides that "[i]t shall not be unlawful ... [to] access an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public." 18 U.S.C. § 2511(2)(g)(i). Therefore, the SCA applies

Combier v. Portelos, Not Reported in Fed. Supp. (2018)

2018 WL 3302182

to: "(1) electronic communications, (2) that were transmitted via an electronic communication service, (3) that are in electronic storage, and (4) that are not public." Ehling, 961 F.Supp.2d at 667.

Any person with a computer connected to the Internet can "publish" information on the Internet in the form of a "web page" or "website." Konop, 302 F.3d at 874. A website consists of electronic information stored by a hosting service computer or "server." Id. By typing a web address into a computer connected to the Internet, a user is essentially requesting the server to make an electronic copy of the website and send it to the user's computer. Id. at 875. Once the information reaches the user's computer, the information is downloaded on to the user's screen. Id. While some websites are configured to be private and restricted from public view without a password or other confidential information, most websites are public. See id.

  B. Analysis

Defendants Harlow and Glass argue that plaintiff is not an "electronic service provider" and that she fails to allege that the conduct described in her latest pleading involved material in "electronic storage" of an "electronic communication service." See Harlow's and Glass' Memorandum of Law in Support of Motion to Dismiss (Jan. 30, 2018) at 11-12, DE #54. To the extent that defendants Glass and Harlow contend that plaintiff's website does not contain "electronic communications," the term has a broad definition. See 18 U.S.C. § 2510(12) (an "electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system...."). As discussed above, websites transmit electronic information between computers and servers, where the information is stored. If a computer user wants to view a website, the user requests that the server transmit a copy of the website to the user's computer. When the server sends the information to the user's computer for viewing, a transfer of information has occurred. Therefore, plaintiff's website contains "electronic communications." See Konop, 302 F.3d at 876; Ehling, 961 F.Supp.2d at 667; Integrated Waste Solutions, Inc. v. Goverdhanam, Civil Action No. 10-2155, 2010 WL 4910176, at *6 (E.D. Pa. Nov. 30, 2010).

 **12** Nevertheless, plaintiff has neither alleged that her website is an "electronic communications service" nor proffered facts from which the Court could draw that inference. The statutory definition of "electronic communications service" includes "any service which provides to users thereof the ability to send or receive ... electronic communications[.]" 18 U.S.C. § 2510(15). Generally, the definition of "electronic communication service" is limited to Internet service providers ("ISPs"), that is, telecommunication companies that carry Internet traffic and electronic bulletin boards. See In re JetBlue Airways Corp. Privacy Litig., 379 F.Supp.2d 299, 307-09 (S.D.N.Y. 2005); In re DoubleClick, Inc. Privacy Litig., 154 F.Supp.2d 497, 508, 511 & n.20 (S.D.N.Y. 2001) (legislative history "deals only with facilities operated by electronic communications services such as 'electronic bulletin boards' and 'computer mail facilit[ies]' "); accord In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125, 146-47 (9th Cir. 2013). Even operators of commercial websites that have email capabilities that enable their operators to communicate with their customers have repeatedly been found not to constitute electronic communication services. See, e.g., Ipreo Holdings, 2011 WL 855872, at *6; In re Michael Stores Pin Pad Litig., 830 F.Supp.2d 518, 523-24 (N.D. Ill. 2011); In re JetBlue, 379 F.Supp.2d at 307-09; Crowley v. CyberSource Corp., 166 F.Supp.2d 1263, 1270 (N.D. Cal. 2001). Here, plaintiff has not alleged that her website functions as an electronic bulletin board or otherwise enables users to post messages or send emails. Therefore, she has failed to adequately allege that her website is an "electronic communication service." See Padmanabhan, 159 F.Supp.3d at 225; Martini v. Godaddy.com Inc., Case No. SACV08-0799 (RNBx), 2009 WL 10674914, at *3 (C.D. Cal. Mar. 16, 2009).

Defendants Harlow and Glass further argue that any electronic communications that were altered were not in "electronic storage." The SCA is limited to "communications temporarily stored by electronic communications services incident to their transmission[,]" In re DoubleClick, 154 F.Supp.2d at 512, as well as data stored for purposes of "backup protection," see 18 U.S.C. § 2510(17). Temporary storage covers email messages stored on an ISP's server pending delivery to the recipient. See In re DoubleClick, 154 F.Supp.2d at 511-12.

Plaintiff fails to allege that defendants accessed electronic communications in "electronic storage." Although plaintiff was not required to describe the operational details of her website and/or blog, the pleading must allege facts sufficient to state a

2018 WL 3302182

plausible claim. Here, the Second Amended Complaint contains no facts to suggest that the information posted on plaintiff's blog was held in temporary or intermediate storage. "Rather, the website itself is the final destination for the information." Ehling, 961 F.Supp.2d at 667; see Cobra Pipeline Co., Ltd. v. Gas Natural, Inc., 132 F.Supp.3d 945, 951 (N.D. Ohio 2015) (any user of plaintiff's website reviewed data "after it ha[d] reached its final destination"); Snow v. DIRECTV, Inc., No. 2:04-CV-515FTM33SPC, 2005 WL 1226158, at *3 (M.D. Fla. May 9, 2005), adopted, 2005 WL 1266435 (M.D. Fla. May 27, 2005), aff'd, 450 F.3d 1314 (11th Cir. 2006); cf. In the Matter of a Warrant to Search a Certain E-Mail Account Controlled and Maintained by Microsoft Corps., 829 F.3d 197, 227 n.4 (2d Cir. 2016) (Lynch, J., concurring) (recognizing majority view that once user of web-based email opens an email, that email is no longer in "electronic storage"), vacated on other grounds sub nom. United States v. Microsoft Corp., —— U.S. ——, 138 S.Ct. 1186, 200 L.Ed.2d 610 (2018). Likewise, the pleading contains no allegations from which the Court could infer that defendants accessed a backup copy of plaintiff's website. See Gonzales v. Uber Techs., Inc., 305 F.Supp.3d 1078, 2018 WL 1863148, at *6 (N.D. Cal. Apr. 18, 2018). Presumably, the offending defendant accessed the primary user-facing web portal rather than data stored for the purpose of "backup protection." Accordingly, plaintiff has not plausibly alleged that the "electronic communications" claimed to have been altered by Portelos were in "electronic storage" within the meaning of the SCA. See BHL Boresight, Inc. v. Geo-Steering Sols., Inc., Civil Action No. 4:15-CV-00627, 2016 WL 8648927, at *21 (S.D. Tex. Mar. 29, 2016), modified in part on other grounds, 2017 WL 1177966 (S.D. Tex. Mar. 29, 2017); Backhaut v. Apple, Inc., 74 F.Supp.3d 1033, 1041 (N.D. Cal. 2014).

 **\*13** Nor does the pleading allege that plaintiff's website was restricted from public view. "The touchstone of the [SCA] is that it protects private information." Ehling, 961 F.Supp.2d at 668; see 18 U.S.C. § 2511(2)(g)(i) (excepting from SCA coverage interception of electronic communication made through "an electronic communication system that is configured so that such electronic communication is readily accessible to the general public"); S. Rep. 99-541, at 35 (1986); see also Konop, 302 F.3d at 875 ("The legislative history of the [SCA] suggests that Congress wanted to protect electronic communications that are configured to be private."). Courts have held that information is protected by the SCA only if the plaintiff restricts access to the electronic communication. See, e.g., Ehling, 961 F.Supp.2d at 668 (finding that private Facebook wall posts are covered by the SCA); Integrated Waste Solutions, 2010 WL 4910176, at *6; Kaufman, 2006 WL 2807177, at *5.

Here, the challenged pleading does not allege that plaintiff's hacked website was restricted to subscribers or was otherwise configured to be private. On the contrary, most websites are accessible to the general public. Therefore, plaintiff has not plausibly alleged that her website contained nonpublic communications.

Moreover, as discussed with respect to the CFAA claims, even if the Second Amended Complaint stated a claim under the SCA against Portelos and/or Celli, it contains no allegations that would implicate the other defendants in the purported SCA violation. See Yukos Capital, 2016 WL 4940200, at *3.

In sum, this Court recommends dismissing plaintiff's claims brought under the SCA.

## VII. Leave to Amend

Generally, when a court dismisses a *pro se* pleading, the plaintiff will be permitted leave to amend at least once. See Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999). Nevertheless, it is "within the sound discretion of the district court to grant or deny leave to amend." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). In this case, plaintiff has already amended her original complaint twice—once by her then-counsel, and once *pro se*, after a pre-motion conference at which Judge Brodie dismissed the federal claims. Despite being afforded the opportunity to amend her complaint to "assert[ ] facts to support a federal claim," see 10/3/17 Order, plaintiff failed to cure those deficiencies, and added two entirely new but facially deficient federal claims. Plaintiff's failure to cure the deficiencies addressed by Judge Brodie is alone a sufficient ground upon which to deny leave to further amend. See, e.g., Milton, 2018 WL 2074179, at *10 (Brodie, D.J.) ("Courts are especially cautious of allowing a plaintiff multiple attempts to amend a complaint."); Wolf v. U.S. F.B.I., No. 16-CV-9436 (JMF), 2018 WL 582472, at *3 (S.D.N.Y. Jan. 26, 2018), appeal filed, 2018 WL 582472 (2d Cir.); Clark v. Kitt, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014), aff'd, 619 F.App'x 34 (2d Cir. 2015); Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P., 936 F.Supp.2d 376, 415-16 (S.D.N.Y. 2013).

As for those federal claims that were asserted for the first time in the Second Amended Complaint, plaintiff has not requested leave to amend to file a Third Amended Complaint, nor has she offered any basis to suggest that she is in possession of facts that would cure the defects in her CFAA and SCA claims. See Milton, 2018 WL 2074179, at *10; Wolf, 2018 WL 582472, at *3 (dismissing *pro se* pleading with prejudice); Clark, 2014 WL 4054284, at *15; Transeo, 936 F.Supp.2d at 415-16. In fact, plaintiff's opposition to the motions to dismiss ignores defendants' challenge to the pleading's deficient allegation of loss under the CFAA, and is entirely silent with respect to her SCA claim and the multiple deficiencies therein. [8] Since it appears unlikely that plaintiff could state a valid federal claim, this Court recommends that plaintiff's federal claims be dismissed with prejudice, without leave to try yet again to state a plausible federal claim.

[8]    Plaintiff's failure to respond to defendants' arguments constitutes an abandonment of those claims, an independent ground for dismissal. See Artis v. Velardo, 7:14-cv-0833 (NSR), 2016 WL 154122, at *2 (S.D.N.Y. Jan. 12, 2016); Moreau v. Peterson, 7:14-cv-0201 (NSR), 2015 WL 4272024, at *4 (S.D.N.Y. July 13, 2015), aff'd, 672 F.App'x 119 (2d Cir. 2017).

## VIII. State Law Claims

 **\*14**  Having recommended dismissing all claims over which the Court has original jurisdiction, this Court recommends declining to exercise supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... [if] the district court has dismissed all claims over which it has original jurisdiction.); Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994) ("exercise of supplemental jurisdiction is left to the discretion of the district court").

## IX. Celli's Motion to Dismiss for Lack of Prosecution

Celli also argues that this action should be dismissed against him based upon plaintiff's failure to serve upon him a motion to seal. See Second Celli Motion.

First, if the District Court adopts this Court's recommendation that defendants' Rule 12(b)(6) motions be granted, Celli's motion to dismiss for lack of prosecution will be rendered moot. In any event, dismissal for failure to prosecute is " 'a harsh remedy to be utilized only in extreme situations.' " Garcia v. City of New York, 14-CV-4160 (NGG) (LB), 2016 WL 1275621, at *2 (E.D.N.Y. Mar. 31, 2016) (quoting Minnette v. Time Warner, 997 F.2d 1023 (2d Cir. 1993) ). Here, plaintiff's letter-motion to seal indicates that it was sent to Celli by first-class mail. Therefore, Celli has not provided any basis for dismissal for failure to prosecute, and this Court recommends that Celli's motion be found moot or, in the alternative, that it be denied.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that defendants' motions to dismiss be granted as to the federal claims and that the District Court decline to exercise supplemental jurisdiction over the remaining state law claims.

Any objections to the recommendations contained herein must be filed with Judge Brodie on or before July 23, 2018. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam* ).

The Clerk is respectfully requested to docket this Report and Recommendation into the ECF court file and send a copy by overnight courier to Lucio Celli at 2743 Seymour Avenue, Bronx, New York 10469.

**SO ORDERED.**

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 84 of 133

**Combier v. Portelos, Not Reported in Fed. Supp. (2018)**
2018 WL 3302182

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3302182

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 85 of 133

Combier v. Portelos, Not Reported in Fed. Supp. (2018)

2018 WL 4678577

2018 WL 4678577
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Elizabeth Betsy COMBIER, Plaintiff,

v.

Francesco PORTELOS, Lucio Celli, Bryan Glass, Esq., Jordan Harlow, Esq.,
Carmen Farina, and New York City Department of Education, Defendants.
Lucio Celli, Counterclaimant,

v.

Elizabeth Betsy Combier, Counter-Defendant.

17-CV-2239 (MKB) (RLM)
|
Signed September 28, 2018
|
Filed 09/29/2018

**Attorneys and Law Firms**

Elizabeth Betsy Combier, New York, NY, pro se.

Bruce A. Young, Law Offices of Bruce A. Young, Bryan D. Glass, Glass Krakower LLP, Neil Anthony Giovanatti, Ian W. Forster, New York City Law Department, New York, NY, for Defendants/Counterclaimant.

Francesco Portelos, Staten Island, NY, pro se.

Lucio Celli, Bronx, NY, pro se.

## MEMORANDUM & ORDER

MARGO K. BRODIE, United States District Judge

**\*1** Plaintiff Elizabeth Betsy Combier, proceeding *pro se*, commenced the above-captioned action on April 13, 2017, against Defendants Francesco Portelos, Lucio Celli, Bryan Glass, Esq., and Jordan Harlow, Esq. (the "Individual Defendants"), and against the New York City Department of Education (the "DOE") and Carmen Fariña, the former Chancellor of the DOE, (together, the "DOE Defendants"). (Compl., Docket Entry No. 1.) Plaintiff filed an Amended Complaint on April 28, 2017, (Am. Compl., Docket Entry No. 5), and subsequently filed a Second Amended Complaint on December 12, 2017, asserting violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* ("CFAA"), the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* ("SCA"), constitutional violations under 42 U.S.C. § 1983, and various claims under New York state law, (Sec. Am. Compl. ("SAC"), Docket Entry No. 39). Defendants moved to dismiss the SAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Celli Mot. to Dismiss ("First Celli Mot."), Docket Entry No. 44; Portelos Mot. to Dismiss ("Portelos Mot."), Docket Entry No. 57; DOE Defs. Mot. to Dismiss ("DOE Defs. Mot."), Docket Entry No. 51; Glass and Harlow Mot. to Dismiss ("Glass and Harlow Mot."), Docket Entry No. 68 (collectively "Mots. to Dismiss").) Celli also separately moved to dismiss the SAC for failure to prosecute. (Mot. to Dismiss ("Second Celli Mot."), Docket Entry No. 60.) On April 4, 2018, the Court referred Defendants' motions to Magistrate Judge Roanne L. Mann for a report and recommendation. (Order dated Apr. 4, 2018.)

Combier v. Portelos, Not Reported in Fed. Supp. (2018)
Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 86 of 133
2018 WL 4678577

By report and recommendation dated July 5, 2018 (the "R&R"), Judge Mann recommended that the Court grant the motions to dismiss pursuant to Rule 12(b)(6). Plaintiff filed objections to the R&R on July 23, 2018. (Pl. Obj. to R&R ("Pl. Obj."), Docket Entry No. 138.) For the reasons set forth below, the Court adopts the R&R in its entirety.

Celli also filed counterclaims against Plaintiff, as well as various additional motions. (*See* Def. Countercl., Docket Entry No. 46; (Mot. for Statement, Docket Entry No. 45; Mot. to Stay Seal, Docket Entry No. 61; Mot. to Unseal, Docket Entry No. 62.) The Court also considers Celli's counterclaims and motions. For the reasons set forth below, the Court dismisses Celli's counterclaims and motions.

### I. Background

#### a. Factual background

The Court assumes the truth of the factual allegations in the SAC for the purposes of this Memorandum and Order.

This case involves what is essentially a dispute between private parties competing to represent tenured New York City public school teachers in disciplinary hearings ("3020-a hearings"). (*See generally* SAC.) Since 2010, Plaintiff has been self-employed as an advocate for tenured New York City public school teachers subject to 3020-a hearings, and also assists attorneys in such hearings. (*Id.* at 5, 15.)[1] She is also the editor of several websites and blogs pertaining to education and her advocacy practice. (*See id.* at 6.) Plaintiff alleges that in an effort to destroy her business as a non-attorney advocate, the Individual Defendants engaged in a scheme to hack into her website, alter the content of her blog, and disseminate false information about her, through, *inter alia*, internet postings and mass emails. (*See id.*) The Individual Defendants "broadcast[ed]" a false accusation that Plaintiff was practicing law without a license and should be prosecuted for participating in 3020-a hearings. (*Id.* at 20.)

[1]    Because Plaintiff's filings are not consecutively paginated, the Court refers to the electronic document filing system ("ECF") pagination.

**\*2**  Beginning in 2011, Plaintiff worked with attorneys Glass and Harlow on 3020-a hearings. (*Id.* at 8, 15.) At some point thereafter, Glass and Harlow sought to steal Plaintiff's clients, in part by speaking negatively about Plaintiff to her clients. (*Id.* at 8–10, 15.) Beginning in September of 2015, Celli, a DOE teacher acting at the direction of Portelos, another DOE teacher, engaged in a scheme designed to harm Plaintiff's business by defaming Plaintiff and her friends, thereby denying her "the right to earn money." (*Id.* at 8, 19.) From November of 2015 to the present, Portelos and Celli also spread negative information about Plaintiff through mass emails and postings on Portelos' Facebook page, website, and other social media. (*Id.* at 20–21.) In March of 2016, Celli sent a series of emails to about fifty addresses, including those of the Manhattan and Bronx District Attorneys and other public officials and members of the media, accusing Plaintiff of working against teachers and colluding with the General Counsel of the DOE. (*Id.* at 21.) In July or August of 2016,[2] Portelos hacked into Plaintiff's blog, "NYC Rubber Room Reporter," deleted a section titled "The 3020-a Arbitration Newswire," and, on September 30, 2016, added the deleted section to his own website. (*Id.* at 7, 22.)

[2]    On page seven of the SAC, Plaintiff alleges that the hacking occurred in July of 2016, (SAC 7), while on page twenty-two, she alleges that the hacking occurred in August of 2016, (*id.* at 22).

Portelos, Celli, Glass and Harlow also created a poster of Plaintiff, threatening her with criminal prosecution for allegedly posting a former client's Social Security number on her website (the "Poster"). (SAC 22, 23; *see also* Pl. Opp'n to Mots. to Dismiss ("Pl. Opp'n") at 55, Docket Entry No. 67).) On September 21, 2017, "[w]ith the support of the [I]ndividual Defendants in this case," Plaintiff's former client filed a complaint against Plaintiff with the West Milford, New Jersey, Police Department for posting his Social Security number. (*Id.* at 23, 25.) Individual Defendants used the Poster to solicit Plaintiff's former clients to "sign up" to be refunded the money they had paid Plaintiff. (*Id.* at 23–24.)

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 87 of 133

Combier v. Portelos, Not Reported in Fed. Supp. (2018)
2018 WL 4678577

On October 19, 2016, Portelos sent an email to teachers in New York City and Los Angeles, warning them about Plaintiff rendering "illegal legal consultation" to a teacher in connection with the teacher's 3020-a hearing. (*Id.* at 24.) Portelos posted articles on another blog, "nycrubberroom.com," and listed Plaintiff's foundation, the E-Accountability Foundation, as the owner of the blog with Plaintiff's home address and telephone number, without Plaintiff's knowledge. (*Id.* at 25.) As a result, in March of 2017, a photographer threatened Plaintiff with a federal lawsuit for posting a photograph taken by him on the blog without his authorization. (*Id.*) On December 4, 2017, Portelos posted false information on the website for UFT Solidarity, an advocacy group he started and of which Celli is a member, alleging that the Manhattan District Attorney's Office was investigating Plaintiff. (*Id.* at 25.)

The SAC contains virtually no allegations regarding Chancellor Fariña or the DOE. (*See generally id.*) Plaintiff contends that the DOE "bears vicarious liability" for the acts of the Individual Defendants for failing to supervise its employees and enforce its internet and computer abuse policies. (*Id.* at 11.) According to Plaintiff, the DOE was aware of the Individual Defendants' scheme to malign Plaintiff's reputation but did not act to prevent it. (*Id.* at 19.) In addition, Plaintiff alleges that Celli and Portelos sent the mass emails disparaging Plaintiff using their DOE email addresses and/or DOE computers during the school day, in violation of DOE policies, without repercussion. (*Id.* at 26.)

### b. Procedural background

Plaintiff, initially represented by counsel, commenced this action on April 13, 2017, (Compl.), and amended her Complaint on April 28, 2017, (Am. Compl.). Following the withdrawal of Plaintiff's counsel, (*see* Order dated Aug. 22, 2017, Docket Entry No. 31), Defendants requested a pre-motion conference in anticipation of filing motions to dismiss, (Mot. for PMC, Docket Entry No. 26). At a pre-motion conference held on October 3, 2017, the Court dismissed Plaintiff's section 1983 claims against Defendants and granted Plaintiff thirty days to further amend her pleading to assert facts supporting a federal claim. (*See* Minute Order dated Oct. 3, 2017.) Plaintiff filed the SAC on December 12, 2017, restating her claims under section 1983 and adding federal claims under the CFAA and SCA. (*See* SAC.) In response, Defendants moved to dismiss. (*See* Mots. to Dismiss.)

### c. Judge Mann's recommendations

**\*3** Judge Mann recommended that the Court grant Defendants' motions to dismiss the SAC. (*See* R&R.) Judge Mann found the SAC fails to satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure because it is "rambling," "filled with extraneous details," and "fails to differentiate among the various defendants." (*Id.* at 10.)

Judge Mann also found that Plaintiff's section 1983 claims against the Individual Defendants fail because they were not acting under color of state law with respect to the alleged wrongful conduct. (*Id.* at 10–15.) Judge Mann also found that section 1983 liability does not attach to the DOE because (1) the DOE had no duty to protect Plaintiff from private conduct, (2) Plaintiff has not alleged the existence of a municipal policy, custom, or practice that caused the claimed civil rights violation, and, (3) even if Portelos and Celli acted under color of law, municipalities are not liable under section 1983 for the actions of their employees. (*Id.* at 15–18.) As to the section 1983 claims against Fariña, Judge Mann found that she could not be liable under section 1983 absent personal involvement or constitutional violations by either Portelos or Celli. (*Id.* at 18–19.)

In addition, Judge Mann recommended that the Court dismiss Plaintiff's CFAA claims against Portelos and Celli because Plaintiff alleges only "non-economic losses such as reputational harms and emotional distress," and her claim that an interruption in service caused her $5000 in lost business revenue is unsupported. (*Id.* at 22.) Judge Mann also concluded that Glass, Harlow and the DOE Defendants cannot be liable under the CFAA because, even assuming Plaintiff has alleged a CFAA claim against Portelos and Celli, she has not alleged any direct conduct or agency relationship. (*Id.* at 23.)

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 88 of 133

Combier v. Portelos, Not Reported in Fed. Supp. (2018)

2018 WL 4678577

Judge Mann found that Plaintiff's SCA claims fail because Plaintiff has not alleged that (1) "her website is an 'electronic communications service,' " (2) "defendants' accessed electronic communications in 'electronic storage,' " or (3) Plaintiff's website was "restricted from public view." (*Id.* at 25–28.)

Judge Mann recommended that the Court deny Celli's motion to dismiss for lack of prosecution because Celli fails to provide a basis for the Court to dismiss the SAC on this ground, and as moot if the Court adopts the R&R with respect to the other recommendations. (*Id.* 31.)

Lastly, having concluded that all of Plaintiff's federal claims fail, Judge Mann recommended that the Court decline to exercise supplemental jurisdiction over the remaining state law claims, and deny leave to amend. (*Id.* at 29–31.)

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding "general objection[s] [to be] insufficient to obtain *de novo* review by [a] district court" (citations omitted) ); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file *specific* written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added) ); *see also Colvin v. Berryhill*, —— F. App'x ——, ——, 2018 WL 2277791, at *1 (2d Cir. May 18, 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under ...Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ) ).

#### ii. Rule 12(b)(6)

**\*4** In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the Plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997) ). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

In reviewing a *pro se* complaint, the court must be mindful that a Plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

### b. Unopposed recommendations

No party has objected to the recommendation that the Court dismiss Plaintiff's SCA claims,[3] or the recommendation that the Court deny Celli's motion to dismiss for lack of prosecution. In addition, because Plaintiff raises only general and conclusory objections to Judge Mann's findings with respect to the DOE Defendants, the clear error standard applies to these objections. (*See* Pl. Obj. 10 ("Magistrate Mann states that there are no allegations regarding Chancellor Farina or the DOE in my SAC. [Plaintiff] object[s], and ask[s] for reconsideration of this issue."); *Benitez*, 654 F. App'x at 503–04. The Court has reviewed these recommendations for clear error. Finding no clear error, the Court adopts Judge Mann's R&R as it relates to the SCA claims, Celli's motion to dismiss for failure to prosecute, and the DOE Defendants.

[3]     Although Plaintiff does not specifically object to Judge Mann's finding that her SAC does not meet the requirements of Rule 8 of the Federal Rules of Civil Procedure, the Court construes Plaintiff's arguments as to the general sufficiency of her pleadings as an objection to this finding. (*See* Pl. Obj., Docket Entry No. 138.)

### c. Plaintiff's objections to the R&R

Plaintiff raises two primary objections to the R&R. First, Plaintiff objects to Judge Mann's recommendation that the Court dismiss the section 1983 claims against the Individual Defendants, arguing that they are "state actors in this matter." (Pl. Obj. 2.) Second, Plaintiff objects to Judge Mann's analysis of the CFAA for failing to consider her claim for "improper access to information." (*Id.* at 3.)

### i. Section 1983 claims against the Individual Defendants

Plaintiff argues that Portelos and Celli acted as "educators and state actors," who "colored themselves with the law" because they acted as law enforcement when "they took on duties allowed only by the State, namely posting online notices that [Plaintiff] was a criminal, and thief." (*Id.* at 2–3.) In addition, Plaintiff alleges that Glass and Harlow "are also state actors in this matter, because they worked closely and collaborated with Portelos and Celli as they created a scheme to deny me my livelihood." (*Id.* at 2.)

**\*5**  Under section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or constitutional rights. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014) (quoting 42 U.S.C. § 1983). To establish a viable section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations and internal quotation marks omitted). Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.' " *Hooda v. Brookhaven Nat'l Lab.*, 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982) ); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) ("[T]he under[-]color-of-state-law element of [section] 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (citation and internal quotation marks omitted) ). Thus, a claim for relief pursuant to section 1983 must allege facts showing that the challenged conduct was "committed by a person acting under color of state law." 42 U.S.C. § 1983.

"To act under color of state law or authority for purposes of section 1983, the defendant must 'have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988) ); *see United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999). "It is 'axiomatic that under color of law means pretense of law and that acts of officers in the ambit of their personal pursuits are plainly excluded.' " *Monsky*, 127 F.3d at 245 (quoting *Pitchell v. Callan*, 13 F.3d 545, 547–48 (2d Cir. 1994) ). Furthermore, "[m]ore is required than a simple determination as to whether [the defendant] was on or off

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 90 of 133

Combier v. Portelos, Not Reported in Fed. Supp. (2018)

2018 WL 4678577

duty when the challenged incident occurred.... In short, courts look to the nature of the [defendant's] act, not simply his duty status." *Pitchell*, 13 F.3d at 548.

Portelos and Celli are not subject to liability under section 1983 by virtue of their employment with the DOE alone. *See Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996); *Isaacs v. City of New York*, No. 10-CV-4177, 2012 WL 314870, at *2 (E.D.N.Y. Feb. 1, 2012) ("The fact that a defendant is on-duty is not sufficient to show that he or she acted under color of law."). Plaintiff does not allege that either Portelos or Celli used or abused apparent state authority as an employee of the DOE in furtherance of their conspiracy to undermine Plaintiff's business. Instead, Plaintiff identifies only private conduct including social media posts, emails, and attempts to take Plaintiff's clients. Moreover, based on Plaintiff's allegations, Portelos and Celli appear to have distanced themselves from the DOE, accusing Plaintiff of colluding with the DOE's General Counsel, (SAC 21), and attempting to represent Plaintiff's clients in proceedings *against* the DOE, (*see generally id.*).

Plaintiff's argument that Portelos and Celli acted under color of law as law enforcement in alleging that she is a criminal also fails. (Pl. Obj. 3.) Portelos and Celli were employed by the DOE, not any law enforcement agency, and had no real or apparent authority conferred by the state to denounce Plaintiff as a criminal. As a result, even if Portelos and Celli took it upon themselves to act as law enforcement officers, they were not "exercis[ing] power possessed by virtue of state law and made possible only because the wrongdoer[s] [are] clothed with the authority of state law." *See Monsky*, 127 F.3d at 245.

Finally, because the Court concludes that neither Portelos nor Celli acted under color of law, Glass and Harlow cannot, as private parties, be liable under section 1983 by virtue of an alleged conspiracy with Portelos and Celli. *See Hooda*, 659 F. Supp. 2d at 392–93. Accordingly, the Court dismisses Plaintiff's section 1983 claims against the Individual Defendants.

### ii. Computer Fraud and Abuse Act claim

**\*6** Plaintiff objects that Judge Mann failed to analyze her CFAA claim for "improper access to information and data" and focused only on claims under the CFAA "where a computer is destroyed." (Pl. Obj. 3.)

"The CFAA, in relevant part, provides a private federal cause of action against a person who 'intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains ... information from any protected computer.' " *Ramirez v. SupportBuddy Inc.*, No. 17-CV-5781, 2018 WL 2089362, at *4 (S.D.N.Y. May 4, 2018) (quoting *Jet One Grp., Inc. v. Halcyon Jet Holdings, Inc.*, No. 08-CV-3980, 2009 WL 2524864, at *5 (E.D.N.Y. Aug. 14, 2009) ); *see* 18 U.S.C. § 1030(a)(2). The CFAA provides a private right of action where, *inter alia*, a party has suffered damages and a loss of at least $5000 during a one-year period. *See* 18 U.S.C. § 1030(c)(4)(A)(i)(1). The CFAA defines "loss" as

> [A]ny reasonable cost to any victim, including the cost of responding to an offense, conducting a damage [4] assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

*See Nexans Wires S.A. v. Sark-USA, Inc.*, 166 F. App'x 559, 562 (2d Cir. 2006) (citing 18 U.S.C. § 1030(e)(11) ).

[4] "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information." *See* 18 U.S.C. § 1030(e)(8).

Contrary to Plaintiff's assertion, Judge Mann did consider her claim that Portelos improperly accessed her data and found that Plaintiff could not sustain a claim for such harm absent specific allegations as to the source and amount of her damages and

Combier v. Portelos, Not Reported in Fed. Supp. (2018)
2018 WL 4678577

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 91 of 133

loss. (R&R 21–22 (finding that Plaintiff fails to allege economic losses resulting from alleged deletion of content).) As Plaintiff notes in her SAC, she must allege damages in the amount of at least $5000 as a "threshold requirement" under the CFAA under a theory of "improper access to information." (SAC 13; *see also Ramirez*, 2018 WL 2089362, at *4.) However, Plaintiff does not object to Judge Mann's finding that her allegation of $5000 in losses is implausible in light of her assertion that the content was restored to her website within one week. (*See* R&R 22 (citing *Nexans Wires S.A.*, 166 F. App'x at 562–63; *Jensen v. Cablevision Sys. Corp.*, 17-CV-00100, 2017 WL 4325829, at *13 (E.D.N.Y. Sept. 27, 2017) (finding improbable that extra electricity costs caused by wireless router approached $5000) ).) Nor does Plaintiff object to Judge Mann's finding that Plaintiff has not identified any basis for imposing a duty on any of the other Defendants. (*See* R&R 23.) Accordingly, the Court reviews these findings for clear error. Finding none, the Court adopts Judge Mann's findings with respect to Plaintiff's CFAA claim and dismisses this claim.

### d. State law claims

Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3) ("District courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction."); *see also All. of. Auto. Mfrs., Inc., v. Currey*, 610 F. App'x 10, 14 (2d Cir. 2015) (holding that it was "not improper for the court to decline to exercise its supplemental jurisdiction" after it properly dismissed the plaintiff's federal claims); *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." (alteration in original) (quoting *Castellano v. Bd. of Trs.*, 937 F.3d 752, 758 (2d Cir. 1991) ) ). Accordingly, the Court dismisses Plaintiff's state law claims without prejudice.

### e. Leave to amend

**\*7**  Judge Mann recommended that the Court deny Plaintiff leave to amend because she has already amended her Complaint twice, once with the assistance of counsel, and has not only failed to cure the deficiencies identified by the Court at the pre-motion conference and in the October 3, 2017 Order, but instead, "added two entirely new but facially deficient federal claims." (R&R 29.) Plaintiff does not object to this finding, request leave to amend to file a Third Amended Complaint, or offer any facts suggesting she could cure the deficiencies in her claims. (*See* Pl. Obj.) As a result, the Court dismisses Plaintiff's SAC without leave to amend.

### f. Celli's counterclaims

Celli filed counterclaims against Plaintiff on January 03, 2018, alleging breaches of the CFAA ("Counterclaims"). (Def. Countercl.) Celli's Counterclaims focus on *Plaintiff's* CFAA claim against Celli. (*See generally id.*) Celli also appears to allege that Plaintiff violated the CFAA when she used her husband's password, obtained through his employment with Hunter College, to gain access to certain legal search engines, including Pacer and Lexis Nexis. (*Id.* at 1–2.) Celli further alleges that Plaintiff violated the CFAA through harassing posts on various social media platforms in violation of those platforms' terms of service. (*Id.* at 6.) As to damages, Celli asserts only that he "is claiming a loss under the statute due to [r]esponse of being part of mob/ mafia, being HIV positive, being a harasser of Betsy, and responding to Betsy's friends harassing him, which Lucio's hourly wage is 75 dollars an hour."[5] (*Id.* at 11.)

---

5    To the extent Celli is attempting to assert a state law defamation claim, the Court declines to exercises supplemental jurisdiction over any such claim in light of the dismissal of the SAC.

Combier v. Portelos, Not Reported in Fed. Supp. (2018)
Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 92 of 133
2018 WL 4678577

Plaintiff responded to Celli's Counterclaim in her opposition to the motions to dismiss, stating "Celli's Counterclaims make no sense" and that she is "at a loss to know how to answer his Counterclaims." (Pl. Opp'n 33.)

Although Plaintiff has not moved to dismiss the Counterclaims, the Court dismisses the claims *sua sponte* as frivolous. *See* Fed. R. Civ. P. 12(h)(3); *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363–364 (2d Cir. 2000) (holding that district courts may dismiss a frivolous complaint *sua sponte* ); *see also MacKinnon v. City of New York/Human Res. Admin.*, 580 F. App'x 44, 45 (2d Cir. 2014) ("A district court has the inherent authority to dismiss an action that 'lacks an arguable basis either in law or in fact' regardless of whether the plaintiff has paid the filing fee[.]' " (first quoting *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); and then citing *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d at 363–64) ).

Celli's CFAA claims lack any basis in law or fact. As discussed above, to state a claim under the CFAA, Celli must, *inter alia*, allege that Plaintiff "intentionally accesse[d] a computer without authorization," and obtained "information from any protected computer," resulting in losses of $5000. *See Ramirez*, 2018 WL 2089362, at *4. Celli fails to allege that Plaintiff obtained information from a protected computer or that he suffered any amount of loss or damage. *See Nexans Wires S.A.*, 166 F. App'x at 562 (dismissing CFAA claim where the plaintiff failed to identify losses resulting from an impairment or unavailability of its data or systems). Accordingly, the Court dismisses Celli's Counterclaims as frivolous. *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (finding an action is frivolous when "the claim 'is based on an indisputably meritless legal theory' " (quoting *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) ) ).

### g. Celli's additional motions

**\*8** Celli has filed a number of additional motions with the Court, including a motion for a statement of damages from Plaintiff, (Mot. for Statement), a motion to stay a court order to seal documents, (Mot. to Stay Seal), and a motion to unseal documents, (Mot. to Unseal). For the reasons discussed below, the Court denies these motions.

### i. Motion for a statement of damages

Celli moves pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure for Plaintiff to provide a "Statement of Damages setting the nature and amount of the damages being sought against Defendant, Lucio Celli." (*See* Mot. for Statement.)

Having dismissed Plaintiff's SAC, the Court denies Celli's motion as moot.

### ii. Motions related to sealed documents

On January 9, 2018, Plaintiff moved for the Court to seal or redact certain information filed by Celli related to her disability and her husband, a nonparty. (Mot. to Seal, Docket Entry No. 50.) On February 9, 2018, the Court granted Plaintiff's motion and ordered Defendants "to seal motion papers with personal information and to file redacted documents on the public docket" ("February 9, 2018 Order"). (Order dated Feb. 9, 2018.) Celli moved on February 23, 2018, to stay the Court's order sealing certain documents, arguing that (1) he was deprived of notice and due process with respect to Plaintiff's motion to seal; (2) the order does not cover all documents referencing the information sealed; and (3) the sealed information is essential to his defense of duress and counterclaims. (*See* Mot. to Stay.) Celli filed a second motion seeking to unseal the documents covered in the Court's February 9, 2018 Order, arguing that Plaintiff did not show "real harm" or a compelling interest in secrecy and because courts "should not make decisions about the fairness or privacy of the facts related to defendant's counterclaim and duress without the public over-sight and the public cannot judge the fairness of [Celli's] claims if the public cannot see it." (Mot. to Unseal 5, 8.)

2018 WL 4678577

There is a common law presumption in favor of access to judicial documents. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006); *see also Dorsett v. Cty. of Nassau*, 762 F. Supp. 2d 500, 516–17 (E.D.N.Y. 2011) (holding that there is a presumption of a public right to view judicial documents). A judicial document is a document "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ). "Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption." *Id.* The presumption of accessibility is "stronger" when "the documents ... at issue are of a type routinely filed by the court and generally accessible." *Ghadersohi v. Health Research, Inc.*, No. 10-CV-144, 2014 WL 1513916, at *1 (W.D.N.Y. Apr. 16, 2014). Lastly, the court must "balance competing considerations" against the weight of the presumption of access. *Lugosch*, 435 F.3d at 120.

The First Amendment also provides a qualified right of public access "to civil trials and to their related proceedings and records." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012). Under the "more stringent First Amendment framework ... sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124. "[D]ocket sheets enjoy a presumption of openness and ... the public and the media possess a qualified First Amendment right to inspect them." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 96 (2d Cir. 2004). "Similarly, a presumption of public access attaches to a court's decisions." *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 470 (S.D.N.Y. 2017).

 **\*9**  "Notwithstanding the presumption of access under both the common law and the First Amendment, the documents may be kept under seal if 'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand." *Lugosch*, 435 F.3d at 124. Under the common law approach, "countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.' " *Id.* at 120. The party requesting the sealing of judicial documents bears the burden of overcoming the presumption of public access. *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

Celli's voluminous, and at times irrelevant, filings in this matter implicate the privacy interests of Plaintiff and her husband sufficient to warrant the Court's order to seal. *See Under Seal*, 273 F. Supp. 3d at 470. Celli has provided no basis to overturn the Court's order. Accordingly, the Court denies Celli's motion to unseal documents.

### III. Conclusion

For the foregoing reasons, the Court adopts Judge Mann's R&R and dismisses the SAC with prejudice. In addition, the Court dismisses Celli's Counterclaims and denies Celli's motions with respect to Plaintiff's stated damages and sealed documents. The Clerk of Court is direct to close this case.

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2018 WL 4678577

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 3187274
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Shulim LEIFER, Plaintiff,

v.

John DOES 1-9, Leiby Froimovitz, Rafael Obstfeld, and Joseph Menczer a/k/a Yossi Menczer, Defendants.

22-cv-1770 (NRM) (CHK)
|
Signed November 14, 2025

**Attorneys and Law Firms**

Alexander Joseph Urbelis, Preetha Chakrabarti, Crowell & Moring LLP, New York, NY, Wilber Trivino, Trivino Law Firm PLLC, Long Island City, NY, for Plaintiff.

Alexander Schachtel, Law Office of Alexander Schachtel, Hoboken, NJ, for Defendant Rafael Obstfeld.

## MEMORANDUM & ORDER

NINA R. MORRISON, United States District Judge:

**\*1**  Plaintiff's Amended Complaint invokes this Court's federal question jurisdiction. Amended Complaint ("Am. Compl.") ¶ 11, ECF No. 46 (May 20, 2025). On October 2, 2025, Plaintiff was ordered to show cause why his second cause of action, pursuant to the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, should not be dismissed for failure to state a claim. Dkt. Order dated Oct. 2, 2025. Plaintiff filed a corrected Letter Response ("Pl. Resp.") on November 7, 2025. ECF No. 63. Upon review of this Response, as well as Plaintiff's Amended Complaint, the Court *sua sponte* dismisses Plaintiff's CFAA cause of action for failure to state a claim.[1] Having dismissed this claim, and finding that there is no alternative basis for the Court's jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses them without prejudice to Plaintiff to pursue these claims in state court.

[1]    Defendant Rafael Obstfeld did submit a request for a pre-motion conference on an anticipated motion to dismiss. Ltr., ECF No. 53 (June 30, 2025). However, Defendant Obstfeld did not challenge the legal sufficiency of Plaintiff's CFAA claim in this pre-motion conference submission. Accordingly, the Court's evaluation of these deficiencies is conducted *sua sponte*.

"The district court has the power to dismiss a complaint sua sponte for failure to state a claim." *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980) (citing *Robins v. Rarback*, 325 F.2d 929 (2d Cir. 1963), *cert. denied*, 379 U.S. 974 (1965) and 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1969)); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (4th ed. 2025) ("Additionally, if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties."); *Futura Dev. of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico*, 144 F.3d 7, 14 (1st Cir. 1998) (holding that "such dismissals are erroneous unless the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond."). Here, the Court provided Plaintiff the opportunity to respond, and Plaintiff availed himself of that opportunity.

In evaluating whether a complaint has failed to state a claim, the Court examines whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. Courts "must construe [a complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021). However, courts must also "disregard conclusory allegations, such as 'formulaic recitation[s] of the elements of a cause of action.' " *Id*. at 107 (quoting *Twombly*, 550 U.S. at 555).

**\*2** Plaintiff alleges that Defendants violated the CFAA. Am. Compl. ¶¶ 80–84. Specifically, Plaintiff alleges that "[t]he access records of [Plaintiff's] Twitter account indicate continuous and persistent access via an unknown, third-party Slack platform account." *Id.* ¶ 56. Plaintiff contends that, "[u]pon information and belief, the parties responsible for the unauthorized account access of [Plaintiff's] Twitter account are one or more of the Identified Defendants and/or unnamed defendants (John Does) in this complaint" and that, at a minimum, "such information is in the possession, custody, and/or control of one or more of the Identified Defendants." *Id.* ¶ 58.

To state a claim under the CFAA's private cause of action, Plaintiff must plead facts establishing that Defendants "(1) accessed a 'protected computer'; (2) 'without any authorization or exceeding its authorized access'; and (3) caused 'loss' in excess of \$5,000." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 511 (S.D.N.Y. 2015) (citing 18 U.S.C. § 1030(g)). Under the CFAA, "loss" entails "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). The term "loss" in this context is "construed narrowly" and "must relate to the victim's computer systems." *Collins v. MCA Receivables, LLC*, No. 23-CV-353 (AT), 2024 WL 246111, at \*8 (S.D.N.Y. Jan. 23, 2024).

Here, Plaintiff has not pleaded that he suffered a loss that is cognizable under the CFAA. Plaintiff alleges that "[a]s a direct and proximate result of Defendants' conduct in violation of the CFAA, [Plaintiff] has suffered and will continue to suffer damages in excess of \$5,000." Am. Compl. ¶ 83. This is a mere "formulaic recitation" of the loss element of a CFAA cause of action, *Twombly*, 550 U.S. at 555, and it does not establish any factual basis for Plaintiff's alleged loss. In his response to the Court's order to show cause, Plaintiff belatedly asserts that he has "hired and paid attorneys a minimum of \$20,000.00 to investigate this security breach, which included researching and ascertaining the identities of Defendants through court-sanctioned discovery." Pl. Resp. at 2. [2] The Court is not obligated to consider these assertions, which are absent from the Amended Complaint. *See Collins*, 2024 WL 246111, at \*8 ("[A]llegations raised for the first time in an opposition brief cannot defeat a motion to dismiss, and such allegations do not automatically amend the complaint." (quoting *Lee v. Saul*, No. 19-CV-6553, 2022 WL 873511, at \*4 (S.D.N.Y. Mar. 23, 2022))).

[2]     Page references use ECF pagination unless otherwise noted.

However, the Court will nonetheless consider these newly asserted facts as if they were part of the Amended Complaint, given the *sua sponte* nature of the Court's review of the legal sufficiency of Plaintiff's CFAA claim. Plaintiff cites *Feldman v. Comp Trading, LLC*, No. 19-CV-4452-RPK-RLM, 2021 WL 930222, at \*6 (E.D.N.Y. Mar. 11, 2021), which he asserts held that the plaintiffs "adequately alleged that they suffered a loss of over \$5,000 by relying on payments to information technology specialists and attorneys to investigate, remedy, and secure the e-mail account." Pl. Resp. at 2–3. Plaintiff asserts that "[t]his case is not any different." *Id.* at 3. The Court disagrees.

In *Feldman*, the plaintiffs alleged that they suffered more than \$5,000 in damages "in connection with identifying evidence of a breach," including "assessing any damage such a breach may have caused, determining whether any remedial measures were necessary, and implementing such remedial measures." 2021 WL 930222, at \*2 (citation modified). Specifically, plaintiffs alleged

**\*3** that they paid at least $2,000 in fees to "IT specialists" to investigate, remedy, and secure the Feldman account and other potentially at-risk email accounts; paid at least $2,300 in fees to attorneys "for investigative costs"; and incurred at least $4,000 "in lost employee time diverted to the investigation and remediation of the breach" of the Feldman account.

*Id.* In other words, the *Feldman* plaintiffs aggregated the total costs of "responding to an offense, conducting a damage assessment, and restoring the [email] to its condition prior to the offense," including "any revenue lost, cost incurred, or other consequential damages incurred *because of* interruption of service." *See* 18 U.S.C. § 1030(e)(11) (emphasis added). These costs broadly went towards identifying the breach and devising and implementing necessary remedial measures to prevent its recurrence.

Plaintiff here has not alleged any such loss. Plaintiff asserts that he has hired attorneys to "investigate this security breach," without explaining in any detail what this investigation entailed. Pl. Resp. at 2. Moreover, the only additional piece of information Plaintiff provides is that the activities of the attorneys "included researching and ascertaining the identities of Defendants through court-sanctioned discovery." *Id.* This is not like the technical evaluation and remediation, relating to a computer system or email account, performed by the professionals in *Feldman*. What Plaintiff describes here are merely the costs of retaining counsel to represent him in litigation. Yet "the cost of bringing an action under the CFAA ... is not sufficiently related to the computer or the unauthorized access itself to qualify as a consequential 'loss' under § 1030(g)." *Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 2012869, at \*17 (E.D.N.Y. Apr. 29, 2018); *see also id.* (noting that "courts appear to have uniformly rejected the conclusion that the cost of retaining and paying attorneys to prosecute an alleged CFAA violation is a 'loss' under the statute" and collecting cases); *Collins*, 2024 WL 246111, at \*8 n.14 ("[S]everal courts across the country have concluded that litigation-related expenses do not qualify as 'losses' under the CFAA." (quoting *Dreni v. PrinterOn Am. Corp.*, 486 F. Supp. 3d 712, 736 (S.D.N.Y. 2020))).

Accordingly, Plaintiff has not alleged that he incurred a loss that is cognizable under the CFAA. Plaintiff's second cause of action pursuant to the CFAA is thus dismissed for failure to state a claim.

The Amended Complaint also invokes, in the alternative, the Court's diversity jurisdiction under 28 U.S.C. § 1332. Am. Compl. ¶ 10. However, diversity jurisdiction is only available when all adverse parties are completely diverse from one another. *Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001). Moreover, diversity jurisdiction is determined at the time the complaint was filed. *Leonard J. Strandberg & Assocs. v. Misan Constr. Corp.*, No. 08-CV-2939 (SJF) (ETB), 2010 WL 1565485, at \*3 (E.D.N.Y. Apr. 19, 2010) (citing *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004)). Here, Plaintiff pleads that two named Defendants (*i.e.*, Froimovitz and Menczer) are, on information and belief, domiciled in New York. Amended Compl. ¶¶ 6, 8. As pleaded, this lack of complete diversity defeats the Court's subject matter jurisdiction.

**\*4** In his letter in opposition to Defendant Obstfeld's request for a pre-motion conference, Plaintiff for the first time alleges that the domiciles of these named Defendants are in fact wholly unknown. Ltr. ("PMC Ltr.") 2, ECF No. 55 (July 14, 2025) ("[I]t is reasonably possible for said Defendants to reside outside of New York. While it is believed that Defendants Froimovitz and Menczer reside in New York, such locations are the last known addresses of said Defendants. However, it is unknown whether they *actually* reside at said addresses."). But "[f]ederal jurisdiction cannot be based on surmise or guesswork." *Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443, 450 (S.D.N.Y. 2014) (quoting *Salzstein v. Bekins Van Lines, Inc.*, 747 F. Supp. 1281, 1283 (N.D. Ill. 1990)). Plaintiff suggests that his lack of definitive knowledge entitles him to jurisdictional discovery as to these Defendants' actual domiciles. *See* PMC Ltr. at 2. However, "[c]ourts [allow] jurisdictional discovery where there has been a threshold showing for some basis to assert jurisdiction, such as facts that would support a colorable claim of jurisdiction." *Mills 2011 LLC v. Synovus Bank*, 921 F. Supp. 2d 219, 228 (S.D.N.Y. 2013) (citing *Ayyash v. Bank Al-Madina*, No. 04-CV-9201 (GEL), 2006 WL 587342, at \*5 (S.D.N.Y. Mar. 9, 2006)). Plaintiff has made no such showing here; to the contrary, Plaintiff's pleading demonstrates that, insofar as he was aware at the time the Amended Complaint was filed, these Defendants were domiciled in New York and, thus, there was not complete diversity between the parties. *See Hai Yang Liu*, 5 F. Supp. 3d at 450 ("[T]he wait-and-see approach to diversity jurisdiction cannot be squared with the Supreme Court's stated preference that the existence of complete diversity be established at the time a lawsuit is filed." (citing *Grupo Dataflux*, 541 U.S. at 570–71)).

Plaintiff further pleads that John Does 1-9 are of "unknown domicile." Am. Compl. ¶ 9. But where a defendant has an "unknown domicile," there is no diversity jurisdiction. *See, e.g., HTI Fin. Sols. Ltd. v. Manhattan SMI KG Props. Fin. Ltd.*, No. 24-CV-237 (DLC), 2024 WL 4452295, at *4 (S.D.N.Y. Oct. 9, 2024) (holding that, "because the citizenship of defendants ... cannot be ascertained, their presence in the action [defeats] the exercise of diversity jurisdiction"); *Tan v. Doe*, No. 14-CV-2663 (ALC), 2014 WL 1779048, at *3 (S.D.N.Y. May 5, 2014) ("[D]iversity jurisdiction is lacking in this case because, while the complaint seeks more than $75,000, it does not contain any allegations that would allow the Court to plausibly infer that the John Doe Defendant is, unlike Plaintiffs, not a resident of the state of New York.").

Plaintiff has failed to state a claim under the CFAA. Accordingly, because this Court lacks either federal question or diversity jurisdiction over this proceeding, and because this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims in the absence of a federal claim for relief, this case is dismissed without prejudice for Plaintiff to pursue his state law claims in state court.

SO ORDERED.

**All Citations**

Slip Copy, 2025 WL 3187274

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Collins v. MCA Receivables, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 246111

2024 WL 246111
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Christine D. COLLINS, a Professional Corporation and Christine Deanne Collins, individually, Plaintiffs,

v.

MCA RECEIVABLES, LLC d/b/a Ally Funding Temporary Group, Yisroel C. Getter; Martin
Miller; Paragon Capital Source, LLC; John Does 1-10; and John Doe Investors 1-10, Defendants.

23 Civ. 353 (AT)
|
Signed January 23, 2024

**Attorneys and Law Firms**

Jonathan Ellery Neuman, Law Offices of Jonathan E. Neuman, Esq., Fresh Meadows, NY, for Plaintiffs.

William Parsons, Wells Law P.C., Lancaster, NY, for Defendants MCA Receivables, LLC, Yisroel C. Getter.

## ORDER

ANALISA TORRES, District Judge:

**\*1** Plaintiffs—Christine D. Collins, a Professional Corporation, and Christine Deanne Collins—filed this action against MCA
Receivables, LLC d/b/a Ally Funding Group ("Ally"), Yisroel Getter, and various others, bringing claims for declaratory relief,
fraud, breach of contract, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §
1961 *et seq.*; the Fourteenth Amendment; and the Computer Fraud and Abuse Act of 1986 (the "CFAA"), 18 U.S.C. § 1030.
Compl., ECF No. 1. Ally and Getter (together, "Defendants") move to partially dismiss the complaint for failure to state a claim
pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 49. For the reasons stated below, the motion is GRANTED in
part and DENIED in part.

## BACKGROUND

I. Factual Background [1]

[1]        The following facts are taken from the complaint, which the Court accepts as true for purpose of this motion. *See Koch
v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Ally is a Connecticut company that offers "merchant cash advances" ("MCAs"); Getter is its principal. Compl. ¶¶ 1, 24, 27.
The MCA industry is "essentially payday lending for small businesses." *Id.* ¶ 49. [2] An MCA is styled as a discounted purchase
of a business's future receivables, "usually to be repaid through a fixed daily or weekly payment that purportedly represents a
percentage of the merchant's receipts." *Id.* ¶ 50. In exchange, the business receives an immediate cash infusion. The industry
has come under regulatory scrutiny for the high interest rates charged—some exceeding 500 percent per year—and the "high-
pressure boiler room tactics" of its salespeople. *Id.* ¶¶ 48–49.

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.                    1

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 99 of 133

Collins v. MCA Receivables, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 246111

2    *See* Zeke Faux & Dune Lawrence, *Is OnDeck Capital the Next Generation of Lender or Boiler Room?*, Bloomberg (Nov. 13, 2014), https://www.bloomberg.com/news/articles/2014-11-13/ondeck-ipo-shady-brokers-add-risk-in-high-interest-loans.

Plaintiff Christine Collins is a California physician who owns and operates Christine D. Collins, PC (the "PC"), a women's health center in the Los Angeles area. *Id.* ¶¶ 76–77. On September 19, 2022, Plaintiffs received a call from Defendant Martin Miller, who said he was a broker for Ally. *Id.* ¶ 78. Miller offered Plaintiffs "a short-term loan of $250,000," representing "that the loan would carry 20% interest and could be paid back in no less than 6 months through monthly payments, and that there would be a processing fee of $1,000 and an underwriting fee of $1,000." *Id.* ¶¶ 79–81. Plaintiffs agreed to enter into the MCA on those terms. *Id.* ¶ 82.

When Plaintiffs received the paperwork, however, "the amounts seemed different than had been discussed and agreed." *Id.* ¶ 83. Plaintiffs called Miller, who said that "this was the standard documentation that had to be entered into, and once the loan was funded, the contract would be redrawn to reflect the numbers that they had discussed." *Id.* ¶ 84. Miller also stated that "Plaintiff would only have to pay back $5,000 every two weeks." *Id.*

Several days later, Collins signed the agreement (the "Agreement") as a guarantor on behalf of the PC. *Id.* ¶ 85; *see* Agreement, ECF No. 5-3. [3] The Agreement states that Ally is purchasing $349,750.00 (the "Purchased Amount") of the PC's future receivables in exchange for $250,000 (the "Purchase Price"). Agreement at 1; Compl. ¶ 86. Plaintiffs would repay the Purchased Amount through daily ACH bank withdrawals of $7,500. Agreement at 1; Compl. ¶ 87. The Agreement claims that the $7,500 figure is a "good faith estimate" of thirty-nine percent of Plaintiffs' daily revenues. Agreement at 1; Compl. ¶ 88. At that rate, Plaintiff would repay the Purchased Amount in forty-seven days, "which, on its face, translates to an annual interest rate of more than 310% per annum." Compl. ¶ 87.

3    Although the Agreement is not attached to the complaint, it is properly considered in connection with this motion because the complaint "relies heavily upon its terms and effect," rendering it "integral." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A copy of the executed Agreement is annexed to Plaintiffs' motion for a temporary restraining order and preliminary injunction. ECF No. 5-3.

**\*2**  Appendix A of the Agreement, a fee schedule, provides that several "upfront fees" would be deducted from the Purchase Price before it was distributed to Plaintiffs. One is an "Underwriting Fee," a "[m]inimum of $1,000.00 or up to 15% of the [P]urchase [P]rice for underwriting fees, broker fees and related expenses." Agreement at 8. Another is an "Origination Fee," also a "[m]inimum of $1,000.00 or up to 15% of the [P]urchase [P]rice to cover cost of Origination and ACH Setup." *Id.*

The Agreement also states that Ally "will require viewing access [ ] to your bank account, each business day, in order to verify the amount of your daily payment," as well as "prior to funding, as part of our underwriting process." Agreement at 10. Plaintiffs provided their bank login information. *Id.*

The Agreement provides Ally with various "protections against default," which "may be invoked by [Ally] immediately and without notice to" Plaintiffs should certain listed events occur—for example, if the PC "transfers, moves, sells, disposes, or otherwise conveys its business and/or assets" without Ally's written consent, or "changes its arrangements" with its bank "in any way that is adverse or unacceptable to [Ally]." Agreement at 2–3. If a listed event occurs, the Agreement permits Ally to collect the full Purchased Amount "plus all fees (including reasonable attorney's fees) ... immediately." *Id.* at 3. Ally may also "enforce the provisions of the Limited Personal Guarantee of Performance against" Collins, making her "jointly and several liable for all amounts owed to [Ally]." *Id.* at 3, 6–7. Plus, Ally can "proceed to protect and enforce its right and remedies by lawsuit," and, if Ally recovers a judgment, the business "shall be liable for all of [Ally's] costs." *Id.*

The Agreement also includes a "prejudgment remedy waiver," which provides that Ally can use Connecticut's "confession of judgment" process to attach Plaintiffs' accounts and assets without a judicial hearing. It states, that "to the extent allowed under Connecticut General Statutes sections 52-278a to 52-278m, inclusive, or by other applicable law":

Collins v. MCA Receivables, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 246111

Case 5:25-cv-01673-GTS-TWD   Document 9   Filed 01/23/26   Page 100 of 133

> [E]ach and every merchant and guarantor of this Agreement hereby waive (a) all rights to notice and prior court hearing or court order in connection with any and all prejudgment remedies to which [Ally] may become entitled by virtue of any default or provision of this Agreement or security agreement securing this Agreement and (b) all rights to request that [Ally] post a bond ....

*Id.* at 4–5. By signing the Agreement, Plaintiffs "consent[ed] that [Ally] may attach or garnish any and all of [their] money held in any bank account at any banking institution" with a branch or office located in Connecticut, or authorized to conduct business there. *Id.* at 5.

The Agreement also includes a security agreement granting Ally a lien on all of the PC's accounts, assets, funds, and other property (the "Collateral"). *Id.* at 6. Ally may exercise its security interest "without notice or demand or any kind by making an immediate withdrawal or freezing the Collateral." *Id.*

On September 29, 2022, a week after Collins signed the Agreement, Ally wired Plaintiffs $178,500 and withdrew $7,500 from the PC's Chase bank account. Compl. ¶¶ 89–90. Collins called Miller "and stated that this was not had been discussed or agreed." *Id.* ¶ 92. Miller said he would investigate "and get back to Plaintiffs in about 5 minutes," but "never returned the call." *Id.* ¶¶ 93–94. Wary "that she was being scammed," Collins instructed Chase to deny any attempted withdrawals by Ally, and "moved her money to a different bank account at Bank of America." *Id.* ¶ 95.

**\*3** On October 6, 2022, Collins discovered that $392,250 had been withdrawn from the Bank of America account. *Id.* ¶ 100. Bank of America informed her that on October 4, 2022, Defendants had served it with a Connecticut legal order "attaching and asserting a lien against the [ ] bank account for $392,250," a sum which included "an anticipated $50,000 in legal fees." *Id.* ¶¶ 101–02, 106. Plaintiffs allege that Defendants accessed the Chase bank account in order to discover that Plaintiffs had moved funds to Bank of America. *Id.* ¶ 107.

Getter "and/or 'Brandon,' " another purported Ally associate, called Collins and told her that Ally had frozen the bank account. *Id.* ¶ 108. They said "that the only way to get the account released was to sign an agreement ... allow[ing] Ally to take the $392,250 and waiving and releasing any claims." *Id.* They also offered her another loan for $850,000. *Id.* Collins refused. *Id.* ¶ 109. On October 17, 2022, Collins discovered that another $65,000 had been frozen in her personal account. *Id.* ¶ 112.

II. Procedural History

Plaintiffs filed this action on January 14, 2023, asserting seven claims: (1) RICO, based on collection of an unlawful debt, interstate transport of stolen property, and wire fraud; (2) racketeering conspiracy, based on an alleged conspiracy to commit the substantive RICO scheme; (3) declaratory judgment, seeking a declaration that the Agreement is void ab initio under New York law; (4) common law fraud, related to the imposition of excessive fees; (5) breach of contract, based on Defendants' alleged failure to advance promised amounts; (6) section 1983, related to allegedly abusive use of the Connecticut pre-judgment relief statute; and (7) violation of the CFAA, related to Defendants' alleged access to the PC's bank account. *See* Compl. ¶¶ 117–224. On February 14, 2023, the Court granted Plaintiffs' motion for a preliminary injunction, prohibiting Defendants from continuing to debit unauthorized funds from Plaintiffs' accounts and from freezing Plaintiffs' assets and receivables. ECF Nos. 32, 44.

Defendants now move to dismiss Plaintiffs' claims for declaratory judgment, fraud, breach of contract, and violation of the CFAA.[4] ECF No. 49; Def. Mem., ECF No. 50.

4    Defendants do not challenge Plaintiffs' claims under RICO or section 1983.

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 101 of 133

Collins v. MCA Receivables, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 246111

## LEGAL STANDARD

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint or incorporated in it by reference, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon in bringing the suit. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). The court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Claims sounding in fraud are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. To survive a motion to dismiss a fraud claim, the plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Emps.' Retirement Sys. of Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015) (citation omitted).

## DISCUSSION

### I. Declaratory Judgment

**\*4** In their third cause of action, Plaintiffs contend that they are entitled to a declaratory judgment stating that the Agreement is void ab initio as a criminally usurious loan under New York law. Compl. ¶¶ 172–74 (citing *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320 (2021)). Under state usury law, N.Y. General Obligations Law § 5-521, when the interest rate on a loan exceeds 25 percent—the criminal usury rate—"a corporation may interpose an affirmative defense of usury and, if successful, obtain a declaration that invalidates the debt instrument *ab initio*." *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 254 (S.D.N.Y. 2022).

The Court first addresses the question of which state's law to apply. The Agreement contains a choice-of-law clause specifying that it "shall be governed by and construed in accordance with the laws of the State [of] Connecticut." Agreement at 4. Whether a usury claim falls within such a contractual choice-of-law provision is an unsettled question in this Circuit. *See Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, No. 20 Civ. 5120, 2022 WL 1997207, at \*16–18 (S.D.N.Y. June 6, 2022). Here, however, both parties appear to assume that—despite the choice-of-law provision—New York law applies. "Because the parties do not dispute that New York law applies to these claims, the Court assumes for the purposes of this motion that New York law governs." *Grain D'Or LLC v. Wizman*, No. 21 Civ. 10652, 2023 WL 5609101, at \*11 (S.D.N.Y. Aug. 30, 2023); *see also Alphonse Hotel Corporation v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016) ("The parties' briefs assert that New York law controls, and such implied consent is sufficient to establish choice of law" (cleaned up)); *Fleisig v. ED&F Man Cap. Markets, Inc.*, No. 19 Civ. 8217, 2021 WL 2678675, at \*8 (S.D.N.Y. June 30, 2021).[5]

[5]    Plaintiffs mention in a footnote that Connecticut has its own usury statute, and "[t]here does not seem to be any case law in Connecticut prohibiting an affirmative action for a declaration of usury under Connecticut law." Pl. Opp. at 5 n.3. The Court construes this footnote as seeking to add a claim under the Connecticut usury statute—not requesting that the Court interpret the existing New York usury claim under Connecticut law. Plaintiffs may move for leave to amend the complaint accordingly.

"New York courts have uniformly construed [the state usury] statute as limited to the affirmative defense, and they have prohibited corporations from bringing affirmative claims or counterclaims alleging criminal usury and seeking to invalidate an agreement." *Streamlined Consultants, Inc. v. EBF Holdings LLC*, No. 21 Civ. 9528, 2022 WL 4368114, at \*3 (S.D.N.Y. Sept.

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 102 of 133

Collins v. MCA Receivables, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 246111

20, 2022) (citing *Haymount*, 609 F. Supp. 3d at 254); *see also Paycation Travel, Inc. v. Glob. Merch. Cash, Inc.*, 141 N.Y.S.3d 319, 320 (App. Div. 2021) (noting that a corporation may only claim usury "as a defense to an action to recover repayment of a loan, and not as a basis for a cause of action asserted by the corporation for affirmative relief.").

Plaintiffs claim that they are, in fact, asserting usury as an affirmative defense "because the cause of action is only in response to Defendants' prior actions of trying to enforce the collection of its usurious loans outside of the court system." Pl. Opp. at 4, ECF No. 54. Because Plaintiffs were unable to raise the usury defense in the Connecticut confession-of-judgment action, they argue, they may now raise it here. [6] But, Plaintiffs cite no authority to justify their novel proposition that they should be treated as the defendants in this action.

[6]    It appears that the Connecticut action remains pending. *See MCA Receivables, LLC v. Christine D. Collins, PC*, Docket No. HHDCV226162897S (Conn. Super. Ct. filed Nov. 23, 2022).

**\*5**   Accordingly, the declaratory judgment claim is DISMISSED.

II. Fraud

Under New York law, "[t]he elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." [7] *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009). Plaintiffs allege that Defendants committed common-law fraud in at least two ways.

[7]    As mentioned above, the Agreement contains a choice-of-law clause specifying that Connecticut law applies. When jurisdiction is based on diversity, federal courts apply the choice-of-law rules of the forum state—here, New York. *Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 255–56 (S.D.N.Y. 2020). Under New York choice-of-law principles, "tort claims are outside the scope of contractual choice-of-law provisions." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 335 (2d Cir. 2005). The choice-of-law clause, therefore, does not dispositively determine which law governs Plaintiffs' fraud claims. Because both parties rely on New York law in their briefing, the Court also assumes for the purposes of this motion that New York law governs the fraud claims. *See supra* at 7–8.

A. Fraudulent Inducement

First, Plaintiffs allege that Defendants "fraudulently induced Plaintiffs to enter into the [Agreement] by misrepresenting the amount and term of the loan and that there would be a subsequent contract" with more favorable terms. Compl. ¶ 176. In their response brief, Defendants do not dispute that Miller's pre-contractual statements to Plaintiffs were material misrepresentations made with knowledge of their falsity and intent to induce reliance. They argue, however, that Plaintiffs could not have justifiably relied on any oral representations that were contradicted by the written Agreement. Def. Mem. at 13–14.

"For New York common law fraud claims, whether a plaintiff's reliance is 'reasonable' depends on the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Langhamer v. Johnson*, No. 22 Civ. 5404, 2023 WL 6691017, at *8 (S.D.N.Y. Oct. 12, 2023). Reliance is often an "intensely fact-specific issue," and is "generally considered inappropriate for determination on a motion to dismiss." *Robinson v. Deutsche Bank Tr. Co. Americas*, 572 F. Supp. 2d 319, 322 (S.D.N.Y. 2008) (citation omitted). An exception exists, however, "where the alleged misrepresentation is explicitly contradicted by the written agreement"; in that case, courts have determined that reliance is unreasonable as a matter of law. *Id.* at 323.

Here, the Agreement explicitly contradicts the terms of the alleged oral agreement Plaintiffs initially reached with Miller—a six-month loan carrying 20% interest, repaid monthly, with processing and underwriting fees of $1,000 each. *See* Compl. ¶ 81; Agreement at 1. Plaintiffs' reliance on the terms of the initial oral agreement is, therefore, unreasonable as a matter of law.

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 103 of 133

Collins v. MCA Receivables, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 246111

**\*6** But, the Agreement does not expressly contradict Miller's alleged statement that "this was the standard documentation that had to be entered into, and once the loan was funded, the contract would be redrawn to reflect the numbers that they had discussed." [8] *See* Compl. ¶ 84. Plaintiffs allege that they are "unsophisticated business persons" who were not represented by counsel during the one-sided bargaining process. *See id.* ¶ 210; *see Langhamer*, 2023 WL 6691017, at \*9 ("[S]ophisticated parties are held to a 'higher standard' in assessing whether reliance on allegedly fraudulent misrepresentations is justifiable." (citation omitted)). Further, upon noticing that the Agreement seemed different than had been discussed, Plaintiffs "undertook efforts to protect themselves, further justifying their claims of reasonable reliance," *Langhamer*, 2023 WL 6691017, at \*10; they sought out an explanation and promise from Miller that the terms would not be binding. Compl. ¶¶ 83–84. Given the "fact-specific nature of the reasonableness of reliance," *Robinson*, 572 F. Supp. 2d at 324, as well as the inequality of the bargaining process, the Court declines to find Plaintiffs' reliance on Miller's alleged statement unreasonable at this stage. "A jury may ultimately conclude that [Plaintiffs] should have known better than to rely on the [D]efendants' representations[,] ... [b]ut this motion to dismiss does not permit such a finding as a matter of law." *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476, 498 (S.D.N.Y. 2012).

8    Although the Agreement does contain a broad merger clause, "a general merger clause does not, standing alone, preclude a claim of fraudulent inducement." *Robinson*, 572 F. Supp. 2d at 323; *see* Agreement at 4 ("This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement ... and supersede all prior agreements and understandings relating to the subject matter hereof.").

## B. Fraudulent Fees

In their fourth cause of action, Plaintiffs allege that Defendants fraudulently charged "$71,500 in sham fees relating to the loan." Compl. ¶ 177. They contend that the "Origination Fee" and "Underwriting Fee" disclosed in the Agreement had no "relationship to any services actually rendered and instead were disguised interest charges. *Id.* ¶¶ 178–79. Defendants respond that "the fees at issue were clearly disclosed in the parties' agreement," so Plaintiffs' allegations "articulate, at most, an alleged breach of contract." Def. Mem. at 11–13.

In *Haymount Urgent Care*, another court in this district dismissed a substantively identical claim for fraudulent fees arising from a similar MCA agreement. 609 F. Supp. 3d at 257. There, the plaintiffs alleged that "defendants falsely represented that the fees were charged to offset actual fees and costs incurred by the MCA companies, when in fact the companies undertook no meaningful activities for which the fees were charged." *Id.* The court found, however, that the MCA contract "plainly disclose[d] the existence and amounts of the fees," and the plaintiffs had made "no meaningful showing that liability for fraud lies where a business charged excessive fees that are prominently disclosed in the contract." *Id.*

The *Haymount* court's reasoning is persuasive. Here, as in that case, the Agreement makes clear that the Underwriting and Origination Fees, each a "[m]inimum of $1,000 or up to 15% of the [P]urchase [P]rice ... shall be deducted from the Purchase Price" upfront. Agreement at 8. Plaintiffs allege that, "upon information and belief, Defendants charged [them] $71,500 in sham fees relating to the loan." Compl. ¶ 177. [9] But the Agreement permits Defendants to charge up to $37,500 (fifteen percent of the $250,000 purchase price) for each of the Underwriting and Origination Fees, or $75,000 total—an exorbitant sum, to be sure, but one "plainly disclose[d]" in the contract. [10] *Haymount*, 609 F. Supp. 3d at 257; *cf. Starr ex rel. Est. of Sampson v. Georgeson S'holder, Inc.*, 412 F.3d 103, 111 (2d Cir. 2005) (holding that because a securities dealer "disclosed its fees, it cannot be said to have defrauded [plaintiff] simply because the fees were allegedly excessive."). Plaintiffs do not allege that Defendants performed no underwriting or origination services, "[a]nd even if that allegation had been made, it would sound in breach of contract, not fraud." *Haymount*, 609 F. Supp. 3d at 257.

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 104 of 133

Collins v. MCA Receivables, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 246111

9      Plaintiffs' fraudulent-fees claim also fails for another reason: Under Rule 9(b)'s heightened pleading standard, "fraud pleadings generally cannot be based on information and belief." *Stern v. Leucadia Nat. Corp.*, 844 F.2d 997, 1003 (2d Cir. 1988). An exception exists for "facts peculiarly within the opposing party's knowledge; even then, however, the allegations must be accompanied by a statement of facts upon which the belief is founded." *Id.* Here, Plaintiffs have not demonstrated that the amount of fees and the services performed (or not performed) by Defendants are "peculiarly within" Defendants' knowledge, nor have they submitted any facts to substantiate their beliefs.

10     Plaintiffs argue that the fee provisions "purposefully and deceptively imply that the fees will be minimal, in the area of $1,000." Pl. Opp. at 6. But, they cite no authority for the proposition that the clause "[m]inimum of $1,000.00 or up to 15%" should be read as "in the area of $1,000." Agreement at 8.

**\*7**  Accordingly, Defendants' motion to dismiss is DENIED as to Plaintiffs' fraudulent-inducement theory and GRANTED as to the fraudulent-fees theory.

III. <u>Breach of Contract</u>

In their fifth cause of action, Plaintiffs allege, in the alternative, that Defendants breached the Agreement by "promis[ing] to advance certain amounts" but "not advanc[ing] the amounts as promised." Compl. ¶¶ 190–91. Plaintiffs' breach-of-contract claim appears to arise from the same allegations as their fraudulent-fees claim. *See* Compl. ¶ 15 (alleging that Ally, "who was supposed to advance $250,000 under this [A]greement, in fact only advanced $176,500, claiming [about] $75,000 in various 'fees' ").

Under Connecticut law, the elements of a breach of contract claim are "the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." [11] *Tatum v. Oberg*, 650 F. Supp. 2d 185, 192 (D. Conn. 2009) (quoting *Rosato v. Mascardo*, 844 A.2d 893, 902 (Conn. App. Ct. 2004)). Beyond its express terms, moreover, every contract carries an implied "duty of good faith and fair dealing." *Panciera v. Kemper Indep. Ins. Co.*, No. 13 Civ. 1009, 2014 WL 1690387, at \*3 (D. Conn. Apr. 29, 2014). This covenant "requir[es] that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 849 A.2d 382, 388 (Conn. 2004). In particular, where a contract entitles one party to use discretion, the implied covenant of good faith and fair dealing sets an outer bound on that discretion by prohibiting the party from denying the counterparty, in bad faith, "benefits that he or she reasonably expected to receive under the contract." *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 116 (D. Conn. 2014). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake regarding one's rights or duties, but by some interested or sinister motive." *Id.*

11     The Court evaluates Plaintiff's claim for breach of contract under Connecticut law pursuant to the choice-of-law provision in the Agreement, *see* Agreement at 4, although New York and Connecticut law do not substantively differ as to the requirements of a breach-of-contract claim. *See, e.g.*, *Wilder v. World of Boxing, LLC*, 777 F. App'x 531, 533 (2d Cir. 2019).

Defendants correctly note that the Agreement gave them discretion to deduct Underwriting and Origination Fees of up to $37,500 each. Def. Mem. at 15; Agreement at 8. The Agreement states, however, that these fees are "for underwriting fees, broker fees and related expenses" and "to cover cost of Origination and ACH Setup," respectively. Agreement at 8. Plaintiffs thus reasonably expected the deducted fees to bear some relation to these specified costs—not for Ally to deduct the full possible amount regardless of actual expenses. *Cf. Haymount*, 609 F. Supp. at 257 (noting that a claim that "the fees far exceed the costs for which they purport to relate ... would sound in breach of contract"). Plaintiffs also adequately allege bad faith, claiming that Defendants intended to deceive them into believing that the Underwriting and Origination Fees were "legitimate fees charged to offset the costs of services." Compl. ¶ 185. In fact, they allege, Ally performed "little or no due diligence" and "conducted very little underwriting," approving the MCA transaction "in a matter of hours." Compl. ¶¶ 178–83.

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 105 of 133

Collins v. MCA Receivables, LLC, Not Reported in Fed. Supp. (2024)
2024 WL 246111

**\*8** The Court finds, therefore, that Plaintiffs have adequately alleged breach of contract; specifically, breach of the implied covenant of good faith and fair dealing. [12] Defendants' motion to dismiss the breach-of-contract claim is DENIED.

[12]     Defendants contend that Plaintiffs have not alleged their own performance of the Agreement, noting that Collins "placed a 'stop payment' on the daily Remittance and emptied [the PC's] bank account because she was surprised that [Ally] had deducted fees." Def. Mem. at 17. But under Connecticut law, a party is relieved of her obligations to continue performing under a contract that a counterparty has materially breached. *See Bernstein v. Nemeyer*, 570 A.2d 164, 168 (Conn. 1990). Defendants acknowledge that Collins only withdrew funds after Ally allegedly breached the agreement by deducting baseless fees; therefore, their argument fails. *Cf. Young v. Citimortgage, Inc.*, No. 11 Civ. 01363, 2012 WL 4371532, at \*2 (D. Conn. Sept. 24, 2012) ("It can reasonably be inferred from the complaint that customers performed their end of the agreement by paying more than they agreed when they were overcharged.").

IV. Violation of the CFAA

Finally, in their seventh cause of action, Plaintiffs allege that Defendants violated the CFAA by "logg[ing] into the PC's bank account in order to try to determine what other financial institutions the PC used." Compl. ¶¶ 215–223. To state a claim under the CFAA's private cause of action, Plaintiffs must plead that Defendants "(1) accessed a 'protected computer'; (2) 'without any authorization or exceeding its authorized access'; and (3) caused 'loss' in excess of $5,000." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 511 (S.D.N.Y. 2015) (citing 18 U.S.C. § 1030(g)). Defendants argue that Plaintiffs "have not alleged that Defendants exceeded their authorized access," and "have failed to alleged damage or loss as defined in the statute." Def. Mem. at 18.

The Court agrees that Plaintiffs have not adequately pleaded "loss" under the CFAA. [13] The term is "construed narrowly" and encompasses "the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense." *Redcell Corp. v. A.J. Trucco, Inc.*, No. 20 Civ. 18, 2022 WL 683007, at \*6 (S.D.N.Y. Mar. 8, 2022) (quoting *LivePerson*, 83 F. Supp. 3d at 512). "[A]lthough costs associated with lost competitive advantages, profits or revenue are not compensable under the CFAA, losses with respect to 'computer investigations or repairs' or 'measures taken to prevent unauthorized access to the computer system in the future' are recoverable." *Id.* (quoting *Civic Ctr. Motors, Ltd. v. Mason St. Import Cars, Ltd.*, 387 F. Supp. 2d 378, 381–82 (S.D.N.Y. 2005)). In short, loss under the CFAA "must relate to the victim's computer systems." *LivePerson*, 83 F. Supp. 3d at 514.

[13]     The Court expresses no view on Defendants' authorized-access argument.

Plaintiffs allege that Defendants used their online banking information "to freeze and levy against nearly $400,000 of Plaintiffs' money." Compl. ¶ 221. They do not allege, however, that they suffered any losses relating to their computer systems. *LivePerson*, 83 F. Supp. 3d at 514. And although Plaintiffs belatedly claim that the attorney's fees incurred in this action constitute loss under the CFAA, Pl. Opp. at 10, "allegations raised for the first time in an opposition brief cannot defeat a motion to dismiss, and such allegations do not automatically amend the complaint." [14] *Lee v. Saul*, No. 19 Civ. 6553, 2022 WL 873511, at \*4 (S.D.N.Y. Mar. 23, 2022). The CFAA claim is, therefore, DISMISSED.

[14]     Even if this argument were properly considered, "several courts across the country have concluded that litigation-related expenses do not qualify as 'losses' under the CFAA." *Dreni v. PrinterOn Am. Corp.*, 486 F. Supp. 3d 712, 736 (S.D.N.Y. 2020) (collecting cases).

## CONCLUSION

**\*9** For the foregoing reasons, Defendants' motion to partially dismiss the complaint is DENIED with respect to Plaintiffs' causes of action for fraudulent inducement and breach of contract, but GRANTED with regard to Plaintiffs' claims for a

2024 WL 246111

declaratory judgment, fraudulent fees, and violation of the CFAA. If Plaintiffs seek to amend their complaint, they shall move for leave by **February 27, 2024**. The Clerk of Court is directed to terminate the motion at ECF No. 49.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 246111

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

Law Firm of Omar T. Mohammedi, LLC v. Computer..., Not Reported in Fed....

2019 WL 3288390

🚩 KeyCite Yellow Flag

Distinguished by   BCRS1, LLC, Plaintiff, v. JACOB UNGER, Defendant.,   E.D.N.Y.,   August 18, 2021

2019 WL 3288390
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

LAW FIRM OF OMAR T. MOHAMMEDI, LLC, Plaintiff,

v.

COMPUTER ASSISTED PRACTICE ELECTRONIC MANAGEMENT SOLUTIONS,

d/b/a CAPEMS, Inc., Kenneth Cullen, individually and in his professional

capacity, Justin Gorkic, individually and in his professional capacity, Defendants.

17 Civ. 04567 (ER)
|
Signed 07/22/2019

**Attorneys and Law Firms**

Elizabeth Katumbi Kimundi, Brooklyn, NY, Justin Brent Perri, Blackstone Law Group LLP, Aparna Anantharaman, LPS/Dr. Michael E. Jones, New York, NY, for Plaintiff.

Lawrence H. Schoenbach, Law Offices of Lawrence H. Schoenbach, New York, NY, for Defendants.

## OPINION AND ORDER

RAMOS, D.J.:

 **\*1**  The Law Firm of Omar T. Mohammedi, LLC, (the "Law Firm") brings this action against its former information technology provider, Computer Assisted Practice Electronic Management Solutions ("CAPEMS"), and its owners, Kenneth Cullen and Justin Gorkic, for violations of the Computer Fraud and Abuse Act ("CFAA") and New York state common law. Defendants move for summary judgment on all claims. For the reasons set forth below, the motion is GRANTED as to the federal claim and the state claims are DISMISSED for lack of jurisdiction.

## I. Background

On December 16, 2011, the Law Firm entered into a contract with CAPEMS pursuant to which CAPEMS agreed to install a server, to configure workstations for that server, to create a secure corporate email domain accessible by that server, and to provide maintenance for the system. Doc. 102-3, 2. [1]  The contract also provided that CAPEMS "will configure [the Law Firm's] remote backup service to provide an encrypted, offline backup." *Id.* at 3. As required by the contract, CAPEMS installed applications on the Law Firm's computers to send information automatically to CAPEMS's servers to back up the Law Firm's information remotely. Doc. 102-15, 27–30.

1     The contract was a month-to-month agreement. Doc. 96-7, 3.

For many reasons unrelated to the motion at issue—including a Law Firm hard drive purportedly lost and a tablet computer rendered inoperable by CAPEMS—the relationship between CAPEMS and the Law Firm deteriorated. On December 28, 2016, Cullen wrote Omar Mohammedi, the Law Firm's managing partner, "[y]our next invoice has been voided," " "any payment

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 108 of 133

Law Firm of Omar T. Mohammedi, LLC v. Computer..., Not Reported in Fed....
2019 WL 3288390

received will be returned," and "no further work will be performed by CAPEMS." Doc. 102-14, 12–13. Later that day, Mohammedi responded, "I am just as happy to find another reputable and professional company to take over," and "I would like to remind you about your obligation to keep everything intact until then." Doc. 102-14, 12.

Around this time, Mohammedi contacted Syed Mumtaz of Safe Haven and Complete Solutions ("Complete Solutions, Inc./Safe Haven Computers") to provide the information technology services that CAPEMS previously provided. Doc. 104, 3. As part of this transition, Mohammedi wrote Cullen to request the username and password for the server, telling him that "I am being held hostage as you have all that information." Doc. 102-14, 11–12. He further explained that this was "a major liability" because he wanted Mumtaz's firms to take over and complete certain tasks before January. *Id.* at 3.

Later that day Cullen responded that Mohammedi was mistaken, that they had already provided him with an administrative account, and that "any competent tech" could reset the password. Doc. 102-14, 11.

On January 1, 2017, Mohammedi gave Mumtaz the contact information for CAPEMS. Doc. 102-15, 32. In a series of emails over the next approximately two weeks, Mumtaz requested a variety of information concerning the Law Firm's computer system, including about passwords for various applications and workstations.

 **\*2** As relevant to the instant motion, on January 2, 2017, Mumtaz emailed Gorkic for more information about Crashplan, the offsite program that backed up the Law Firm's data and placed it in cloud storage owned by CAPEMS. Doc. 102-15, 30. Mumtaz asked if the Law Firm could continue to use the Crashplan software and store the data on CAPEMS's cloud. Gorkic explained that "we are no longer providing that service" to the Law Firm and that it "will have to find an alternative." *Id.*

In an email sent on January 6, 2017, Gorkic explained to Mumtaz, among other things, that "[w]e're also seeing data still coming from his network" and that the Law Firm "probably should uninstall remaining items we had installed related to monitoring etc." *Id.* at 27–28. There appears to be no dispute that the Law Firm did not remove the applications from its computers. Cullen and Mumtaz testified that, even after the termination of the contract, CAPEMS continued to receive and save information from the Law Firm. Cullen testified that CAPEMS, at the direction of its attorney, transferred the Law Firm's data from a server to an external storage device. Doc. 102-7, 15. [2] Mumtaz affirmed that CAPEMS "accessed the server without authority," "copied Plaintiff's client data," and created an external hard drive that contained Plaintiff's data. Doc. 104, 6. [3]

[2]     In his deposition Gorkic testified that between the termination of the contract with the Law Firm and the date he delivered the backup data to his counsel in the summer of 2017, he never accessed or opened any of the files belonging the Law Firm. Doc. 102-12, 24. He further testified that he never reviewed or modified the files. Doc. 102-12, 24–25.

[3]     In his affidavit, Mumtaz affirms, "At a time when Safe Haven had access to Plaintiff's server and were attempting to change passwords, it came to the attention of Safe Haven that Defendants, over the course of a weekend, had attempted to access Plaintiff's server over sixty (60) times" and that "Defendants breached Plaintiff's server by attempting to log in." Doc. 104, 5.

Gorkic testified that he did not remove these applications himself because he "didn't want to touch the backup system as much as possible," "because [he] knew [Mohammedi] was going to sue [him]," and because he "didn't want [Mohammedi] to claim [he] modified the data." Doc. 102-12, 14–15.

On January 9, 2017, a Safe Haven technician spent three hours addressing problems with the Law Firm's wireless internet. Doc. 102-30, 2. The next day, January 10, that technician spent one and a half hours resolving issues with the Law Firm's email server. *Id.* at 3. Nine days later, January 19, another technician spent an hour resolving issues with the Law Firm's website. *Id.* On January 26, another technician spent forty-five minutes connecting a Law Firm employee's computer to the internet. *Id.* at 4. On January 30, another technician spent forty-five minutes connecting a Law Firm employee's computer to the printer.

Case 5:25-cv-01673-GTS-TWD   Document 9   Filed 01/23/26   Page 109 of 133

Law Firm of Omar T. Mohammedi, LLC v. Computer..., Not Reported in Fed....

2019 WL 3288390

*Id.* In February 2017, Safe Haven sent the Law Firm an invoice for $1,058.06 for the work performed by its technicians. Doc. 102-30, 2–5.

Pursuant to Mohammedi's request, Mumtaz prepared a Network Report on February 14, 2017. Doc. 102-17, 2–3. According to the report, he recommended in part that the Law Firm replace the old firewall because the original was attached to CAPEMS's email. *Id.* at 3. He also reported that "there is currently no backup." *Id.* Mumtaz subsequently created onsite and offsite backup "from scratch." Doc. 102-10, 7.

 **\*3**  In a letter to Cullen and Gorkic, dated February 24, 2017, Mohammedi asked that they return all data stored offsite or certify in writing that they had destroyed all data within their possession by March 6, 2017. Doc. 102-18, 2. The letter also asked Cullen and Gorkic to pay $400 for the service they allegedly failed to provide in December and $1,058.06 for the service that Safe Haven provided. *Id.* at 2–3. The letter threatened that, "[o]therwise we will proceed with a legal action against you to seek substantial remedies." *Id.* at 3.

In a letter to Mohammedi, dated March 17, 2017, a lawyer for Cullen and Gorkic said that his clients would not pay the requested sum. Doc. 102-19, 2. He further explained that he had advised his clients to copy all of the Law Firm's information from their cloud, to create two copies of the data, one for the Law Firm and one to be held in escrow, and to destroy the rest. Doc. 102-19, 2–3. The letter indicated that the lawyer had told his clients to create a copy for escrow as evidence of the work provided to the Law Firm. *Id.* According to the letter, the lawyer would destroy the extra copy if the Law Firm decided not to sue. *Id.*

On June 16, 2017, the Law Firm filed the instant suit. Doc. 1. The suit claimed violations of CFAA, 18 U.S.C. § 1030, breach of contract, breach of covenant of good faith and fair dealing, conversion, trespass to chattel, unjust enrichment, and tortious interference with a contract and business relationship. *Id.*

On June 29, 2017, Plaintiff filed an amended complaint that mirrored the original complaint except that it claimed damages of "no less than $1,000,000." Doc. 12, 21, 29, and 31. Around the same time, Safe Haven sent the Law Firm an invoice for $2,828.99 to create onsite and offsite backup storage. Doc. 102-31, 2–3. However, it is unclear from the invoice when Safe Haven performed this work. *Id.* Approximately two months later, on August 16, 2017, Plaintiff filed a motion for preliminary injunction and a supporting memorandum of law requesting that Defendants return all confidential information held in escrow. Docs. 21, 22. In a letter dated August 28, 2017, Defendants' lawyer wrote that he had attempted to return the hard drive that contained the Law Firm's confidential information that he held in escrow on at least four occasions between March 17, 2017, and August 28, 2017. Doc. 27. On August 28, 2017, Gorkic and Cullen affirmed that CAPEMS maintained Plaintiff's backup data on CAPEMS' server from January 2012 until the date of the affirmations and that "the entirety of Plaintiff's Confidential Information on Defendants' server has been forever deleted." Docs. 27-1, 27-2. Gorkic testified that no data was disturbed and that the methodology used to copy the backup was "forensically sound." Doc. 102-12, 23.

On August 31, 2017, Plaintiff represented to the Court that it had received a hard drive containing its confidential information and that it withdrew its motion for preliminary injunction. Doc. 28.

In a declaration submitted in opposition to the motion for summary judgment, Alexander Urbelis, an attorney with the Blackstone Law Group, a firm that also represents the Law Firm, stated that he provided the hard drive containing the Law Firm's backup that had been held in escrow to a data forensic consultant, Snowfensive LLC. Doc. 103. Urbelis then relates the results of the analysis of the hard drive conducted by Snowfensive, including that certain files appeared to be altered. *Id.*

On September 15, 2017, Plaintiff provided its Rule 26(a)(1) initial disclosures. Doc. 96-2. In those initial disclosures, Plaintiff stated that it was difficult to itemize its damages "because the damages are intangible," and that it would supplement the information as litigation progressed. *Id.* at 6–9.

Law Firm of Omar T. Mohammedi, LLC v. Computer..., Not Reported in Fed....

2019 WL 3288390

**\*4**  On February 26, 2018, more than a year after the contractual relationship between Plaintiff and Defendants was terminated, and more than eight months after the filing of the instant suit, Safe Haven purchased a new firewall for the Law Firm. Doc. 102-28, 2. On March 9, 2018, a senior network technician installed the firewall, programmed it, and performed other related tasks. Safe Haven charged the Law Firm $962.50 for the work related to the firewall's installation. Doc. 102-29, 2–4.

On July 31, 2018, all fact discovery ended and, two weeks later, on August 14, 2018, Plaintiff provided a more exact amount of damages. Doc. 96-3. Specifically, it claimed $6,000 for five years of monthly payments made despite Defendants' alleged breach, $199 for the purchase of a Windows 10 operating system, $5,000 for revenue lost as a result of Defendants' failures, $150 for a new hard drive, $900 for the diminished value of a Sony Tablet, $1,058.06 paid to Mumtaz's company to find "workarounds to Defendants' obstructive and spiteful behavior," $3,500 caused by email interruption, $11,103.75 to prosecute the preliminary injunction, and $6,000 for unspecified reasons. *Id.* at 4–8.

On October 22, 2018, the Law Firm filed yet a third statement of damages with its supplemental Rule 26(a)(1) initial disclosure. Doc. 102-5, 2. The Law Firm's new statement changed the total amount of damages claimed from $33,910.81 to $26,308.1. On the next day, October 23, 2018, the Law Firm filed a second amended Rule 26(a)(1) disclosure to correct a calculation error in the amount expended to prosecute the preliminary injunction. Doc. 102-6, 4.

During his deposition, Mohammedi provided the following explanation for the Law Firm's damages:

Q. Sir, you're asking for monetary damages here?

A. Right.

Q. You say that you lost more than $5,000?

A. I believe that's what's been lost. We are a very busy firm.

Q. How do you calculate the $5,000?

A. We are a very busy firm. That is actually in the Complaint. That is in the Complaint that is standard that we have put in.

Q. I'm not asking about standard. It's a jurisdictional amount.

A. Yes, but again, we lost money, we could not do the work. The firm could not do the work.

Q. This is the point where you get to say how you lost your money, how the firm lost more than $5,000 over the few days that you say you had no outbound and inbound e-mail service?

\* \* \*

A. The money was lost because the lawyers could not do the work. [ 4 ]

Q. How much was lost?

A. It's put in there.

Q. No, no, no. This is a conclusion, more than 5,000. I need specifics.

A. We can provide you with specifics if you want.

Q. Please do. This is the time.

A. I'm not going to—I don't have that if front of me to provide specific amounts.

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 111 of 133

Law Firm of Omar T. Mohammedi, LLC v. Computer..., Not Reported in Fed....

2019 WL 3288390

* * *

Q. You claim $5,000 in loss?

A. Approximately.

Q. For what period of time are we talking about?

A. I can't remember. It was a period of time that we could not have access to e-mails and the lawyers could not do the work, the paralegal could not do work, no one could do any work ... The law firm, the lawyers could not do the work. They spend a lot of time back and forth, the disconnecting of the e-mails, could not do anything about this.

Q. Okay.

A. Rather than spending time on the cases, the firm was spending time trying to get the server back, the e-mails work properly and all this.

* * *

A. They could not send e-mails. It was disconnected. They could not do anything. I can't remember. At that time we had a lot of things going on. They shut everything on us.

 **\*5**  Q. The e-mails. Outgoing e-mails were not working for a few days?

A. Yes. We relied on e-mails tremendously in our work.

* * *

Q. Tell us how your firm lost more than $5,000.

A. I explained this to you. That is enough. I explained how we lost money.

Doc. 96-5, 3–11.

4      In an October 18, 2018 order, Magistrate Judge Pitman memorialized the Law Firm's stipulation that it would not offer any evidence of damages arising from two attorneys' inability to work or meet deadlines due to Defendants' alleged conduct. Doc. 86, 1–2.

## II. Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F.Supp.2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* (internal quotation marks omitted). The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F.Supp.2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)). However, "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 112 of 133
Law Firm of Omar T. Mohammedi, LLC v. Computer..., Not Reported in Fed....
2019 WL 3288390

## III. Discussion

The Law Firm claims violations of the CFAA, breach of contract, breach of covenant of good faith and fair dealing, conversion, trespass to chattel, unjust enrichment, and tortious interference with a contract and business relationship.

For its claim under the CFAA, the Law Firm invokes the Court's federal question jurisdiction, pursuant to 28 U.S.C. § 1331. Doc. 12, 4. For its remaining state law claims, the Law Firm relies on the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a).

### A. Computer Fraud Abuse Act

The Law Firm claims that Defendants violated the CFAA. The CFAA is a criminal statute, and it provides that "(a) [w]hoever ... (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains ... (C) information from any protected computer ... shall be punished." 18 U.S.C. § 1030 (a)(2)(c).

The CFAA also provides a civil cause of action for "[a]ny person who suffers damage or loss by reason of a violation of this section ... only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g). As relevant to this case, subclause (I) provides as follows: "Loss to 1 or more persons during any 1-year period ... aggregating at least $5,000 in value." 18 U.S.C. § 1030 (c)(4)(A)(i)(I). [5]

[5]    The parties agree that the remaining categories are not relevant here: "(II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals; (III) physical injury to any person; (IV) a threat to public health or safety; (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security." 18 U.S.C. § 1030 (c)(4)(A)(i).

 **\*6** The term "protected computer" means a computer "which is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B). No party disputes that the Law Firm's computers qualified as protected computers. As a result, the resolution of this motion turns on whether Defendants accessed the Law Firm's computers without or in excess of authorization and whether, as a result of that unauthorized access, the Law Firm suffered a $5,000 loss "during any 1-year period."

### 1. Damages [6]

[6]    To be sure, a court does not typically address the issue of damages unless it has determined that liability exists. Here, however, Defendants expend almost the entirety of their argument asserting that Plaintiff has not established damages. Accordingly, the Court will address the issue of damages first.

To maintain a cause of action under the CFAA against a defendant, a plaintiff must demonstrate that the defendant violated the CFAA in "*a manner that has caused* [the plaintiff] damages or losses of at least $5,000." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 440 (2d Cir. 2004) (emphasis added).

"A number of courts in this district have held that losses under the CFAA are compensable only when they result from damage to, or the inoperability of, the accessed computer system." *New London Assocs., LLC v. Kinetic Soc. LLC*, No. 18 Civ. 7963 (DLC), 2019 WL 1570809, at *9 (S.D.N.Y. Apr. 11, 2019) (citing *Civic Center Motors, Ltd. v. Mason Street Import Cars, Ltd.*, 387 F. Supp. 2d 378, 381 (S.D.N.Y. 2005); *Massre v. Bibiyan*, No. 12 Civ. 6615 (KPF), 2014 WL 2722849 at *3 (S.D.N.Y. June 16, 2014); *Poller v. BioScrip*, 974 F. Supp. 2d 204, 232 (S.D.N.Y. 2013); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 474 (S.D.N.Y. 2004)). [7] According to the statute's own definition, "the term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information...." 18 U.S.C. § 1030(e)(8).

Law Firm of Omar T. Mohammedi, LLC v. Computer..., Not Reported in Fed....

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 113 of 133

2019 WL 3288390

7     *See also Univ. Sports Pub. Co. v. Playmakers Media Co.*, 725 F. Supp. 2d 378, 388 (S.D.N.Y. 2010) (because "the audit sought to identify ways to improve the database's security systems, not to identify and address damage caused by the security breach that had already taken place," the cost "probably does not fall within the statutory definition of 'loss.' "); *Tyco Int'l (US) Inc. v. John Does, 1-3*, No. 01 Civ. 3856 (RCC)(DF), 2003 WL 23374767, at *3 (S.D.N.Y. Aug. 29, 2003) ("the additional types of damages awarded by courts under the Act have generally been limited to those costs necessary to assess the damage caused to the plaintiff's computer system or to resecure the system in the wake of a spamming attack.").

As a result, "[c]ourts in the Southern District of New York have interpreted 'loss' narrowly, rejecting arguments, for example, that it includes the economic value of consumers' attention, that it includes the cost of business trips undertaken to respond to a computer hacking incident, or that it includes lost profits that are not attributable to an 'interruption of service.' " *B.U.S.A. Corp. v. Ecogloves, Inc.*, No. 05 Civ. 9988 (JSR), 2009 WL 3076042, at *6 (S.D.N.Y. Sept. 28, 2009) (citing *In re Doubleclick Inc. Privacy Litigation*, 154 F.Supp.2d 497, 524–25 (S.D.N.Y. 2001) and *Nexans Wires S.A. v. Sark–USA, Inc.*, 319 F.Supp.2d 468, 473–76 (S.D.N.Y. 2004), *aff'd by summary order*, 166 Fed. Appx. 559 (2d Cir. 2006)). *See also Garland-Sash v. Lewis*, No. 05 CIV 6827 WHP, 2011 WL 6188712, at *3 (S.D.N.Y. Dec. 6, 2011) ("CFAA defines these terms narrowly.").

 **\*7** Along the same lines, courts within this District have dismissed CFAA claims for failing to sufficiently quantify damages. *See Bose v. Interclick, Inc.*, No. 10 Civ. 9183 DAB, 2011 WL 4343517, at *4 (S.D.N.Y. Aug. 17, 2011) (finding that Plaintiff's "claims therefore fail because she does not quantify the repair cost or cost associated with investigating the alleged damage."); *Fink v. Time Warner Cable*, No. 08 Civ. 9628 LTS KNF, 2009 WL 2207920, at *4 (S.D.N.Y. July 23, 2009) (finding that the "Plaintiff has failed to plead adequately her claim for a violation of the CFAA" because she merely alleged that "Defendant causes damage by impairing the integrity or availability of data and information, as well as certain communications and protocols.").

The Law Firm claims that it satisfied the loss requirement because it paid Safe Haven $1,058.06 for resolving problems with the Law Firm's wireless network and printing in January 2017, $2,828.99 for a new backup system in June 2017, $703 for a new firewall on February 26, 2018, and $962.50 for its installation on March 9, 2018. Doc. 101, 13. These damages add up to $5,552.55.

None of the evidence proffered by the Law Firm establishes a causal relationship between the alleged unauthorized access and the damages alleged. Doc. 101, 15–16. Mohammedi and Mumtaz testified that the Law Firm paid these invoices because CAPEMS terminated the contract [8] and because CAPEMS provided inadequate service, [9] but they did not establish, according to the records provided to the Court, that the Law Firm suffered these damages because CAPEMS accessed the Law Firm's computers without authorization. In other words, the costs incurred by the Law Firm involve efforts to enhance its systems and address inadequate services by CAPEMS during the period that CAPEMS had authority to access the system. The costs described in the invoices simply reflect either negligence on the part of Defendants or the costs inherent in changing computer system contractors, including creating systems to ensure that the prior contractor cannot access the system. [10] Even assuming, arguendo, that Defendants provided inadequate service, such inadequacy may state a claim for breach of contract, but it does not state a CFAA violation. Because the Law Firm has failed to produce any evidence that it suffered damages compensable by the CFAA, Plaintiff's CFAA claim may be dismissed on this ground.

8     When asked specifically to identify the Law Firm's damages, Mohammedi claimed that the Law Firm suffered damages because the Law Firm "ha[d] to spend quite a lot of money to get this backup set." Doc. 102-11, 28.

9     Mohammedi testified about creating a backup "the way it should be done," installing a secure server, and stabilizing the network after the contract's termination. Doc. 102-11, 29–30, 53, 56–57, 73–74. Along the same lines, Mumtaz testified that he discovered "weak passwords," no backup, and an "insecure VPN due to the work CAPEMS did." Doc. 102-10, 14–16.

Law Firm of Omar T. Mohammedi, LLC v. Computer..., Not Reported in Fed....

2019 WL 3288390

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 114 of 133

10    In opposition to the motion for summary judgment, Mumtaz affirmed that "[t]he work done by Safe Haven was absolutely required in order to restore the server and correct Defendants' breach." Doc. 104, 8. However, Mumtaz previously testified in his deposition that the reason that he recommended replacing the server was because he did not "like" the older one and because the newer one was "new, faster, better, shinier." Doc. 96-12, 4. He also testified that he reviewed the Law Firm's network and server because "it's a common practice." 102-10, 14–16. As a result, the affidavit alleging unauthorized access does not preclude summary judgment because "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

 **\*8**  Moreover, even if the Law Firm had established that these damages were the result of Defendants' unauthorized access, its CFAA claim would still fail because the Law Firm could not aggregate the losses for the purposes of satisfying the $5,000 loss requirement. Indeed, the statute requires "loss to 1 or more persons during *any 1-year period* ... aggregating at least $5,000 in value," 18 U.S.C. § 1030 (c)(4)(A)(i)(I) (emphasis added), and the loss alleged here occurred over a period of at least fourteen months, from January 2017 to March 2018. By Plaintiff's own reckoning, the costs were incurred as follows:

- January 2017, $1,058.06

- June 2017, $2,828.99

- February 2018, $703

- March 2018, $962.50

- Total: $5,552.55

Doc. 101, 13. Given these representations, it is impossible for Plaintiff to establish the requisite loss within one year. Indeed, if the Court considered the twelve-month period beginning in January 2017, the loss amount would only total $3,887.05, and if the Court measured the twelve-month period ending in March 2018, the loss amount would only equal $4,494.49. As a result, this provides another reason for finding that the Law Firm has not satisfied the CFAA's loss requirement. [11]

11    Even if the Law Firm had suffered the requisite damages in a one-year period, it is unclear whether it would be able to establish that Defendants accessed its computers without authorization. A person may violate the CFAA either by "access[ing] a computer without authorization or exceeding authorized access." 18 U.S.C. § 1030(a)(1). According to the statutory definition, " 'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter ..." 18 U.S.C. § 1030(e)(6). In summarizing the statute's legislative history, the Second Circuit found that it "characterizes the evil to be remedied—computer crime—as 'trespass' into computer systems or data, and correspondingly describes 'authorization' in terms of the portion of the computer's data to which one's access rights extend." *United States v. Valle*, 807 F.3d 508, 525 (2d Cir. 2015).

A number of courts within this District have held that a civil CFAA case will not succeed unless the plaintiff shows "that [d]efendants accessed its computer system without approval." *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, No. 14 Civ. 8467 (JMF), 2016 WL 5416498, at \*6 (S.D.N.Y. Sept. 28, 2016). Furthermore, the cases explain that "the statute does not apply to a 'so-called faithless or disloyal employee' — that is, an employee who has been granted access to an employer's computer and misuses that access." *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, No. 14 Civ. 8467 (JMF), 2016 WL 5416498, at \*6 (S.D.N.Y. Sept. 28, 2016). *See also Apple Mortg. Corp. v. Barenblatt*, 162 F. Supp. 3d 270, 286 (S.D.N.Y. 2016) ("If an employer has given an employee access to the computer and to the relevant files, the employee's subsequent misuse of the information or misappropriation with the intent to compete with his employer is not sufficient to violate the CFAA.").

For this reason, Defendants argue that they did not access the Law Firm's computer without authorization. Doc. 96, 12. During their contract with the Law Firm, and in accordance with the contract, they installed applications on the Law Firm's computers to send information automatically to their servers to backup the Law Firm's information remotely. Doc.

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 115 of 133

Law Firm of Omar T. Mohammedi, LLC v. Computer..., Not Reported in Fed....

2019 WL 3288390

102-15, 27–30. After the termination of their contract with the Law Firm, Defendants emailed Mumtaz to explain that they had previously installed this software, that they continued to receive information from the Law Firm's computers, and that the Law Firm "probably should uninstall any remaining items we had installed," related to monitoring. *Id.*

In attempting to create a genuine issue of material fact on whether Defendants accessed the Law Firm's computers without authorization, Plaintiff focuses on Mumtaz's affidavit, submitted in opposition to the motion for summary judgment. Doc. 101, 17. In it, Mumtaz affirms that neither he, nor anyone at Safe Haven, had given authorization for Defendants to access the network. Doc. 104, 6. This testimony, however, is irrelevant because the question is whether the Law Firm—not Safe Haven—authorized Defendants to install the remote backup applications on the Law Firm's computers. And more to the point, the contract between the Law Firm and Defendants establishes that authorization had, in fact, been given; Defendants installed software that allowed them to remotely backup the Firm's files, and the new contractor was specifically advised to uninstall the software. Thus, whatever access Defendants continued to have was with "authorization."

Next, it alleges that, in Gorkic's deposition, he explained his decision to notify Mumtaz about the automatic backup on the Law Firm's computers, and his unwillingness to delete the applications from the Law Firm's computer himself because he feared being accused of accessing the Law Firm's computers without authorization. Doc. 102-12, 14, 18. That testimony merely reinforces Defendants' assertion that they installed the applications on the Law Firm's computers pursuant to the Law Firm's request.

Finally, the Law Firm's reliance on Urbelis's declaration is unavailing. As Urbelis makes clear, the substance of the declaration is a recitation of the analysis conducted by a third person at Snowfensive, and is accordingly inadmissible rank hearsay. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

## B. State Law Claims

**\*9** Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise jurisdiction over any non-federal claims over which it could have supplemental jurisdiction if the Court has dismissed all of the claims over which it has original jurisdiction. Subject matter jurisdiction in the instant action is based on federal question, 28 U.S.C. § 1331. The Court "may decline to exercise supplemental jurisdiction over" state claims if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Having disposed of the Law Firm's only federal claim, it would be inappropriate to adjudicate its state law claims. Therefore, the Court declines to retain jurisdiction over the state law claims and dismisses them without prejudice. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (stating that, if the federal claims are disposed of before trial, "the state claims should be dismissed as well.").

## IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment on the federal claim is GRANTED. This Court declines to retain supplemental jurisdiction over the state law claims against them and therefore those claims are DISMISSED without prejudice. The Clerk of the Court is respectfully directed to terminate this motion, Doc. 94, and close the case.

It is SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2019 WL 3288390

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Ramirez v. SupportBuddy Inc., Not Reported in Fed. Supp. (2018)

2018 WL 2089362

2018 WL 2089362

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Tara RAMIREZ, individually and on behalf of all others similarly situated, Plaintiff,

v.

SUPPORTBUDDY INC., Ranjit Singh, and John Does #1-10, Defendants.

17 CV 5781 (VB)

|

Signed 05/04/2018

**Attorneys and Law Firms**

George Volney Granade, Michael Robert Reese, Reese Richman LLP, New York, NY, Melissa S. Weiner, Halunen Law, Minneapolis, MN, for Plaintiff.

Craig A. Tristao, Coleman & Horowitt, LLP, Fresno, CA, Judith M. Sasaki, Coleman & Horowitt, Los Angeles, CA, for Defendants.

## <u>OPINION AND ORDER</u>

Vincent L. Briccetti, United States District Judge

 **\*1** Plaintiff Tara Ramirez brings this putative class action against defendants SupportBuddy Inc., Ranjit Singh, and ten unidentified "John Does" for violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 et seq., and Section 349 of the New York General Business Law ("GBL"), as well as for common law intentional misrepresentation.

Before the Court is defendants' motion to dismiss under Rules 12(b)(3) and 12(b)(6) or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a). (Doc. #22).

For the following reasons, the motion to dismiss is GRANTED IN PART and DENIED IN PART, and the motion to transfer is DENIED.

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332(d).

## BACKGROUND

For the purpose of deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as set forth below.

Singh owns SupportBuddy, a computer technical support provider. SupportBuddy's website claims SupportBuddy provides support for Acer, Apple, Toshiba, Dell, Sony, HP, ASUS, Lenovo, and Microsoft products, although it is not officially affiliated with any of those companies. SupportBuddy also claims to provide antivirus and browser support for companies with which it is not officially affiliated.

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 118 of 133

Ramirez v. SupportBuddy Inc., Not Reported in Fed. Supp. (2018)

2018 WL 2089362

On or about September 7, 2015, plaintiff visited the website gocomputerhelp247.com, which SupportBuddy owns or operates. A "System Alert" pop-up window appeared, warning plaintiff: "Your computer is infected with an adware or malware causing you to see this popup. This may happen due to obsolete virus protections." (Compl. ¶ 46). The pop-up window also provided a telephone number for plaintiff to call for system support and stated, "Possibility of Data & Identity theft, if not fixed immediately." (Id.). Plaintiff was unable to navigate away, because the pop-up window was immediately replaced by another pop-up window every time plaintiff closed it.

The second pop-up window re-stated the warnings in the first pop-up window and also provided, among other things, "YOUR MAC COMPUTER HAS BEEN BLOCKED.* Trojan Virus System Alert!!" (Compl. ¶ 57). The second pop-up window included the same telephone number as the first and, next to the number, stated, "Please Contact Support for Apple." (Id.).

The webpage under the pop-up window also included logos for Apple and Norton by Symantec, a provider of antivirus and computer security software. The website further indicated the telephone number provided in the pop-windows was a "Mac Helpline." (Compl. ¶ 47).

Plaintiff called the number on the webpage, which connected plaintiff to SupportBuddy. SupportBuddy then resolved, or made it seem as if it had resolved, plaintiff's computer problems. SupportBuddy charged plaintiff $529 for the purported service.

Plaintiff alleges defendants caused malware to infect her computer and then charged her to remove it. Plaintiff also alleges defendants engaged in false and deceptive representations and omissions by means of the statements made in their System Alert and Trojan Virus System Alert pop-up windows. Plaintiff purports to bring suit on behalf of two nationwide classes and a New York subclass for injunctive and monetary relief.


**DISCUSSION**

I. Legal Standards

   A. Rule 12(b)(3)

 **\*2**  In deciding a Rule 12(b)(3) motion to dismiss for improper venue, the Court must take all allegations in the complaint as true, unless challenged by defendants. U.S. E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001), aff'd sub nom., McKeown v. Del. Bridge Auth., 23 Fed.Appx. 81 (2d Cir. 2001) (summary order). "When an allegation is so challenged '[a] court may examine facts outside the complaint to determine whether venue is proper.' " Id. (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1352). " ' 'The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.' " Id. (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1352). Moreover, it is plaintiff's burden to show venue is proper in the forum district. Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C., 927 F. Supp. 731, 735 (S.D.N.Y. 1996).


   B. Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiffs' legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

Case 5:25-cv-01673-GTS-TWD   Document 9   Filed 01/23/26   Page 119 of 133
Ramirez v. SupportBuddy Inc., Not Reported in Fed. Supp. (2018)
2018 WL 2089362

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The Court may nevertheless consider a document not incorporated by reference if the complaint " 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) ). However, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." Id. (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) ). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." Id. (quoting Faulkner v. Beer, 463 F.3d at 134).

### C. Rule 56

Defendants rely on several affidavits attached to their prior motion to dismiss as well as an affidavit attached to the instant motion to dismiss. [1] Defendants argue in their reply brief the Court can consider the affidavits because the instant motion should be treated as one for summary judgment under Rule 56.

[1]    On December 11, 2017, defendants moved to dismiss the initial complaint. (Doc. #17). Thereafter, with leave of Court, plaintiff filed an amended complaint. (Doc. #21). The instant motion was filed February 12, 2018.

**\*3** The Court disagrees.

"When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint—including materials attached or integral to the complaint, documents incorporated into the complaint by reference, or matters of which the court may take judicial notice—or convert the motion to one for summary judgment under Federal Rule of Civil Procedure 56." MC v. Arlington Cent. Sch. Dist., 2012 WL 3020087, at *4 (S.D.N.Y. July 24, 2012) (internal quotation omitted); see Fed. R. Civ. P. 12(d).

Under Rule 12(d), a district court may convert a motion to dismiss under Rule 12(b)(6) into a summary judgment motion under Rule 56 if the court gives " 'sufficient notice to an opposing party and an opportunity for that party to respond.' " Malaney v. Elal Isr. Airlines, 331 Fed.Appx. 772, 774 (2d Cir. 2009) (summary order) (quoting Groden v. Random House, Inc., 61 F.3d 1045, 1052 (2d Cir. 1995) ). "The district court's refusal [to convert a motion to dismiss] is substantially discretionary, and denial under present circumstances (where the movants seek the conversion) is not error." Mitchell v. Drew, 154 Fed.Appx. 235, 237 (2d Cir. 2005).

"The essential inquiry is whether the [plaintiff] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." Malaney v. Elal Isr. Airlines, 331 Fed.Appx. at 774 (quoting Groden v. Random House, Inc., 61 F.3d at 1052–53). "Even where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted." Galiotti v. Green, 475 Fed.Appx. 403, 404 (2d Cir. 2012) (quoting Sahu v. Union Carbide Corp., 548 F.3d 59, 67 (2d Cir. 2008) ).

Here, plaintiff did not have adequate notice that the motion to dismiss would be converted. Defendants did not argue the Court should convert the motion to one for summary judgment until they filed their reply brief. Indeed, throughout their initial brief, defendants argue plaintiff's complaint should be dismissed pursuant to Rule 12(b)(6).

2018 WL 2089362

Defendants argue plaintiff's opposition to the motion to transfer relies on an unsupported statement that plaintiff is the primary caregiver of her two young children. However, plaintiff relied on that statement in support of her argument that the case should not be transferred for improper venue, for which the Court may consider it. See U.S. E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J., 162 F. Supp. 2d at 183. Therefore, plaintiff's single statement is not sufficient to establish that plaintiff had notice that the motion to dismiss would be converted to a motion for summary judgment.

Accordingly, the Court declines to convert the instant motion to dismiss to one for summary judgment. Moreover, the Court will not consider defendants' affidavits except to the extent they are relevant to defendants' Rule 12(b)(3) motions to dismiss or transfer.

II. Failure to State a Claim

 **\*4**  Defendants argue the Court should dismiss plaintiff's CFAA claims because she fails to allege loss sufficiently.

The Court agrees.

"The CFAA, in relevant part, provides a private federal cause of action against a person who 'intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains ... information from any protected computer.' " Jet One Grp., Inc. v. Halcyon Jet Holdings, Inc., 2009 WL 2524864, at \*5 (E.D.N.Y. Aug. 14, 2009) (quoting 18 U.S.C. § 1030(a)(2) ). Section 1030(g) of CFAA provides: "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g).

The sole factor at issue here is factor (I), which requires the action relate to "loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). Because plaintiff relies on factor (I), it is not enough for her to allege damage—she must allege loss. Mount v. PulsePoint, Inc., 2016 WL 5080131, at \*8 (S.D.N.Y. Aug. 17, 2016), aff'd, 684 Fed.Appx. 32 (2d Cir. 2017) (summary order).

"Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Loss is "not limited to the cost of actual repairs," but refers more broadly to "any remedial costs of investigating the computer for damage, remedying the damage and any costs incurred because the computer cannot function while or until repairs are made." Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 474 (S.D.N.Y. 2004), aff'd, 166 Fed.Appx. 559 (2d Cir. 2006) (summary order).

Here, plaintiff argues she sufficiently alleged loss because of the deceptive representations within the malware's pop-up windows. However, deceptive representations do not constitute loss because they are not a remedial cost of investigating or remedying the computer for damage, nor are they costs incurred because the computer could not function.

Plaintiff also argues she sufficiently alleged loss because she incurred costs while her computer was inoperable and after SupportBuddy purportedly resolved her problems. However, plaintiff fails to quantify her alleged costs or make specific allegations as to the costs of repairing or investigating the alleged damage to her computer. See Bose v. Interclick, Inc., 2011 WL 4343517, at \*4 (S.D.N.Y. Aug. 17, 2011).

 **\*5**  Finally, plaintiff argues she alleged loss because she paid SupportBuddy $529 to remove the malware on her computer. The $529 plaintiff paid SupportBuddy does constitute loss; however, the Court cannot reasonably infer there were additional costs that took plaintiff's loss over factor (I)'s $5,000 threshold.

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 121 of 133
Ramirez v. SupportBuddy Inc., Not Reported in Fed. Supp. (2018)
2018 WL 2089362

Plaintiff argues she and the putative class members have, in the aggregate, suffered at least $5,000 in loss.

The Court is not persuaded.

The Second Circuit has not yet addressed whether loss can be aggregated for purposes of the CFAA before a class is certified. Jensen v. Cablevision Sys. Corp., 2017 WL 4325829, at *14 (E.D.N.Y. Sept. 27, 2017). However, "as a general rule, until a class action is certified pursuant to Rule 23 of the Federal Rules of Civil Procedure, the claims of potential class members cannot be considered." Id. at 13 (internal citation omitted). Courts in the Second Circuit thus have held, "in order for a plaintiff to 'aggregate [damage and loss] across victims and over time,' it must be for a 'single act.' " Id. at *14 (quoting In re DoubleClick Inc. Privacy Litig., 154 F. Supp. 2d 497, 523 (S.D.N.Y. 2001) ).

Plaintiff does not allege the purported class members' loss occurred because of a single act. To the contrary, plaintiff's aggregation argument depends on the allegation that defendants provided technical support to and charged "hundreds of Class members." (Compl. ¶ 97). Therefore, the losses of plaintiff's putative class members cannot be aggregated.

Accordingly, plaintiff has failed to allege loss, and her CFAA claims must be dismissed.

## III. State Law Claims

### A. Class Action Fairness Act

Defendants argue the Court should dismiss plaintiff's claims for intentional misrepresentation and for violation of GBL § 349 because, absent the federal law claims, there is no basis for the Court to consider them. Defendants provide no further elaboration, law, or support for their argument. However, assuming defendants intended to challenge the Court's subject matter jurisdiction over the state law claims, the Court rejects that argument—plaintiff has adequately alleged the Court's subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

### B. Ownership of the Website

Defendants argue plaintiff's claims should be dismissed because SupportBuddy does not own the website gocomputerhelp247.com. However, defendants rely entirely on factual assertions in affidavits that were not attached to, incorporated by reference in, or relied heavily upon by the complaint. Defendants do not otherwise contend plaintiffs have failed to plead SupportBuddy owns the website. Therefore, the Court rejects defendants' argument that plaintiff's claims should be dismissed because defendants do not own gocomputerhelp247.com.

### C. Injunctive Relief

Defendants also argue plaintiff's "requests for injunctive relief as to its first through sixth causes of action fail to state a claim upon which the relief can be granted." (Pl. Br. at 4). As the Court has dismissed plaintiff's claims under CFAA, the Court need not consider whether plaintiff is entitled to injunctive relief under that act. Moreover, the Court rejects defendants' argument to the extent defendants assert plaintiff is not entitled to injunctive relief on her state law claims, as they have not provided any legal basis or support for it.

## IV. Venue

### A. Proper Venue

**\*6**  Defendants argue plaintiff's claims should be dismissed because venue is improper in the Southern District of New York.

The Court disagrees.

2018 WL 2089362

The general venue provision, 28 U.S.C. § 1391(b), provides, "A civil action may be brought in ... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

Here, a substantial part of the events giving rise to the claim occurred in the Southern District of New York, because plaintiff, a resident of Westchester County, accessed gocomputerhelp247.com while she was in the district.

Defendants further argue venue is improper because the court lacks general or specific jurisdiction. Defendants confuse an inquiry into personal jurisdiction with one for venue. Because defendants did not move to dismiss for lack of personal jurisdiction, the Court will not consider defendants' argument.

Accordingly, venue is proper in the Southern District of New York.

  B. Transfer
Defendants argue the Court should transfer the case to the Eastern District of California because SupportBuddy, which is located in California, provided the service at issue and charged plaintiff from California. Moreover, defendants argue it would be more convenient for defendants to appear in California, and the relevant documents are likely to be located there.

The Court is not persuaded.

"Absent consent, a motion to transfer venue requires a two-part inquiry: first, whether the action to be transferred might have been brought in the transferee court; and second, whether considering the convenience of parties and witnesses, and the interest of justice, a transfer is appropriate." Mohsen v. Morgan Stanley & Co. Inc., 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) (internal quotation omitted).

A district court has broad discretion in deciding whether to transfer a case pursuant to Section 1404(a). Filmline (Cross-Country) Prods., Inc. v. United Artists Corp., 865 F.2d 513, 520 (2d Cir. 1989). The Court should consider, among other things: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106–07 (2d Cir. 2006) (internal quotation omitted).

The plaintiff's choice of venue is "entitled to substantial consideration." Warrick v. Gen. Elec. Co., 70 F.3d 736, 741 (2d Cir. 1995) (internal quotation omitted). Indeed, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Lykes Bros. S.S. Co. v. Sugarman, 272 F.2d 679, 681 (2d Cir. 1959) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) ).

Here, plaintiff could have brought the action in the Eastern District of California because all defendants reside in California. However, having carefully considered all of the relevant factors, the Court concludes that plaintiff's choice of forum should not be disturbed.

 *7  Although the class action may include individuals from across the country, plaintiff resides in New York and accessed defendants' website from New York. Plaintiff also alleges violations of New York law on behalf of a New York subclass.

In addition, defendants do not provide any reasons for why it would be inconvenient for them to litigate in New York. Moreover, although defendants argue the convenience of witnesses favors transfer, defendants fail to "provide the court with a detailed list of probable witnesses who [would] be inconvenienced if required to testify in the current forum." Pace v. Quintanilla, 2013 WL 5405563, at *3 (S.D.N.Y. Sept. 23, 2013) (internal quotation omitted). Indeed, defendants do not identify any non-party

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 123 of 133
Ramirez v. SupportBuddy Inc., Not Reported in Fed. Supp. (2018)
2018 WL 2089362

witnesses, and "generally the convenience of <u>non-party</u> witnesses is accorded more weight than that of party witnesses in a § 1404(a) analysis." <u>Id</u>. at *3 n.2 (internal quotation omitted).

Accordingly, the Court does not find it is in the interest of justice to transfer this action to the Eastern District of California.

## CONCLUSION

Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendants' motion to transfer is DENIED.

Defendants shall file an answer to the amended complaint by May 18, 2018.

The Clerk is instructed to terminate the motion. (Doc. #22).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2089362

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Bose v. Interclick, Inc., Not Reported in F.Supp.2d (2011)

2011 WL 4343517

🚩 KeyCite Yellow Flag

Disagreed With by   Mount v. PulsePoint, Inc.,   S.D.N.Y.,   August 17, 2016

2011 WL 4343517
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Sonal BOSE, Individually, on Behalf of Herself and All Others Similarly Situated, Plaintiffs,

v.

INTERCLICK, INC.; McDonald's USA, LLC; McDonald's Corporation; CBS Corporation;

Mazda Motor of America, Inc.; Microsoft Corporation; and Does 1–50, Defendants.

No. 10 Civ. 9183(DAB).
|
Aug. 17, 2011.

**Attorneys and Law Firms**

Scott A. Kamber, David A. Stampley, KamberLaw, LLC, New York, NY, Grace E. Parasmo, Abbey Spanier Rodd & Abrams, LLP, New York, NY, for Plaintiffs.

Ian C. Ballon, Greenberg Traurig, LLP, Santa Monica, CA, Stephen L. Saxl, William A. Wargo, Greenberg Traurig, LLP, New York, Dennis Richard, Michael R. Tolley, Richard & Richard, Miami, FL, for Defendants.

*MEMORANDUM AND ORDER*

DEBORAH A. BATTS, District Judge.

**\*1** Plaintiff Sonal Bose ("Bose"), individually and on behalf of all others similarly situated, brings suit against Defendant Interclick, Inc. ("Interclick"), an Advertising Network company, and McDonald's USA LLC, McDonald's Corp., CBS Corp., Mazda Motor Corp. of America, Inc., Microsoft Corp., and Does 1–50 (collectively, the "Advertiser Defendants") under the Computer Fraud and Abuse Act ("CFAA"), New York General Business Law Section 349, and New York State common law. All Defendants move to dismiss on the grounds that Plaintiff fails to allege cognizable injury or meet the $5,000.00 threshold to state a claim under the CFAA, and that Plaintiff's state law claims fail as a matter of law. For the reasons below, Defendants' Motions to Dismiss are GRANTED in part and DENIED in part.

**I. BACKGROUND**

The facts and allegations are set forth in Bose's Amended Complaint ("Am.Compl."). Bose's factual assertions are assumed true for the purposes of this motion.

Bose is a resident of the city, county, and state of New York. (Am.Compl.¶ 7.) Bose is a consumer who frequently uses the Internet. (*Id.* ¶ 76.)

Interclick is an "Advertising Network" company. (*Id.* ¶¶ 8, 24.) Interclick purchases advertisement display space from websites, and displays advertisements of interest to a computer user. (*Id.* ¶ 30.) Websites on the Internet frequently display third-party

advertisements. (*Id.* 130.) These websites sell advertising display space either directly to advertisers or to Advertising Network companies like Interclick. (*Id.* ¶¶ 24–25.) Interclick's clients are advertising companies and agencies that pay fees to Interclick to display their advertisements on websites within Interclick's advertising network. (*Id.* ¶¶ 21, 24.)

Many Advertising Network companies use "browser cookies," which are text files that gather information about a computer user's internet habits. (Am.Compl.¶ 30.) Browser cookies contain unique identifiers and associate "browsing history information" with particular computers. (*Id.* ¶ 30.) Advertising Networks use this browsing history information to create "behavioral profiles." When a computer user visits a web page on which the Advertising Network provides advertisements, the Advertising Network company uses a behavioral profile to select particular advertisements to display on that computer. (*Id.* ¶ 30.) Computer users can delete these browser cookies to prevent third parties from associating the user's browsing history information with their subsequent web activity. (*Id.* ¶¶ 32, 82.)

Bose, however, alleges that Interclick used "flash cookies" (or Local Shared Objects ("LSOs")) to back up browser cookies. (Am.Compl.¶ 39.) When a computer user deletes a browser cookie, the flash cookie "respawns" the browser cookie without notice to or consent of the user. (*Id.* ¶ 39.) The flash cookie "may be" larger than a browser cookie. (*Id.* ¶ 88.) In October 2010, Bose examined her computer and found a flash cookie placed there from Interclick. (*Id.* ¶ 77.)

**\*2** Bose also alleges that Interclick used "history sniffing" code invisible to the computer user. (Am.Compl.¶ 47.) This code, which contained a list of Web page hyperlinks, used the computer's browser to determine whether the computer had previously visited those hyperlinks, and transmitted the results to Interclick's servers. (*Id.* ¶ 47.) Interclick used data on the computer's browsing history to select particular advertisements to display on that computer. (*Id.* ¶ 47.)

On December 8, 2010, Bose filed suit against Interclick. A suit against the Advertiser Defendants followed on December 23, 2010, and those cases were consolidated with the filing of the First Amended Complaint on March 21, 2011. Plaintiff alleges that Interclick violated the CFAA by monitoring Plaintiff's web browsing. (*Id.* ¶ 1.) Bose alleges that the Defendants invaded her privacy, misappropriated personal information, and interfered with the operation of her computer. (*Id.* ¶ 3.) On April 18, 2011, all Defendants moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II. DISCUSSION

### A. Legal Standard for Motion to Dismiss

For a complaint to survive dismissal under Rule 12(b)(6), the Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility," the Supreme Court has explained,

> [W]hen the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a Defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a Defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*Ashcroft v. Iqbal,* 556 U.S. 662, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 556–57). "[A] Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal quotation marks omitted). "In keeping with these principles," the Supreme Court has stated,

> "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Iqbal,* 129 S.Ct. at 1950.

In ruling on a 12(b)(6) motion, a court may consider the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." *Zdenek Marek v. Old Navy (Apparel) Inc.,* 348 F.Supp.2d 275, 279 (S.D.N.Y.2004) (citing *Yak v. Bank Brussels Lambert,* 252 F.3d 127, 130 (2d Cir.2001) (internal quotations omitted)).

### B. The Computer Fraud and Abuse Act

**\*3** The CFAA provides, in pertinent part, "[w]hoever intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer ... shall be punished." 18 U.S.C. § 1030(a)(2)(C). Under § 1030(a)(5)(C), the CFAA also subjects to criminal liability someone who "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage."

Although the CFAA is a criminal statute, it also provides a civil remedy. Under the civil enforcement provision of the CFAA, "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief ." 18 U.S.C. § 1030(g); *see also Nexans Wires S.A. v. Sark–USA, Inc.,* 166 Fed. App'x 559, 562 (2d Cir. Feb.13, 2006) (recognizing that a Plaintiff can only bring a civil action if the Plaintiff satisfies one of five factors set forth in § 1030(c)(4)(A)(i)[1] ). The relevant factor in this case is whether Defendants' conduct caused "loss to 1 or more persons during any 1–year period ... aggregating at least $5,000 in value." § 1030(c)(4)(A) (i)(I).

[1]    The five factors set forth in 18 U.S.C. § 1030(c)(4)(A)(i) are:

(I) loss to 1 or more persons during any 1–year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000.00 in value;

(II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;

(III) physical injury to any person;

(IV) a threat to public health or safety; and

(V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security.

### 1. Damage or Loss under the CFAA

The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." § 1030(e)(8). "Loss," in turn, includes "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." § 1030(e)(11). In addition, any damage or loss must meet the $5,000.00 minimum statutory threshold specified in § 1030(c)(4)(A)(i)(I). *Register.com, Inc. v. Verio,* 356 F.3d 393, 439 (2d Cir.2004) (citing *In re Double C lick Inc. Privacy Litiq.,* 154 F.Supp.2d 497, 520–23 (S.D.N.Y.2001)).

2011 WL 4343517

Here, Bose pleads three types of damage or loss: (1) damage due to impairment of Bose's computer and computer-related services and resources; (2) loss due to Interdict's collection of personal information from Bose; and (3) loss due to an interruption of Bose's Internet service. (Am.Compl.¶¶ 94–116.)

a. Damage to Computer–Related Resources

With regard to damage or impairment of a computer system, physical damage to a computer is not necessary to allege damage or loss. *EF Cultural Travel BV v. Explorica, Inc.,* 274 F.3d 577, 585 (1st Cir.2001) (noting that instances of physical damage to computers are likely to become less common while the value and cost of maintaining computer security are increasing); *see also Tyco Int'l (US) Inc. v. John Does 1–3,* No. 01 Civ. 3856, 2003 WL 21638205, at *1 (S.D.N.Y. July 11, 2003). Any loss incurred from "securing or remedying" a computer system after an alleged CFAA violation still constitutes loss. *In re Double C lick Inc. Privacy Litig.,* 154 F.Supp.2d 497, 524 (S.D.N.Y.2001) ( "S.Rep. No. 104–357 seems to make clear that Congress intended the term 'loss' to target remedial expenses borne by victims that could not properly be considered direct damage caused by a computer hacker."). Accordingly, Courts have sustained claims where a Defendant accessed a Plaintiff's computer system in order to copy the Plaintiff's system for the Defendant's own competitor computer system. *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info.,* 307 F.Supp.2d 521, 525 (S.D.N.Y.2004) (finding that harm to the integrity of plaintiff's data system constitutes loss).

**\*4** Courts have found that losses include the costs of seeking to "identify evidence of the breach, assess any damage it may have caused, and determine whether any remedial measures were needed to rescue the network." *Univ. Sports Pub. Co. v. Playmakers Media Co.,* 725 F.Supp.2d 378, 388 (S.D.N.Y.2010); *see also Ipreo Holdings LLC v. Thomson Reuters Corp.,* No. 09 CV 8099(BSJ), 2011 WL 855872, *7 (S.D.N.Y. Mar.8, 2011) (holding that a Plaintiff can meet the loss requirement through "damage assessment and/or remedial measures, even without pleading actual damage"); *Kaufman v. Nest Seekers, LLC,* No. 05 CV 6782(GBD), 2006 WL 2807177, at *8 (S.D.N.Y. Sept.26, 2006) (denying motion to dismiss because "costs involved in investigating the damage to [a] computer system may constitute ... loss"); *see also I.M.S. Inquiry Mgmt. Sys., Ltd.,* 307 F.Supp.2d 521 at 526 (holding that a Plaintiff sufficiently alleged loss where Defendant's unauthorized activity "forced Plaintiff to incur costs of more than $5,000 in damage assessment and remedial measures").

Here, Bose fails to quantify any damage that Interclick caused to her "computers, systems or data that could require economic remedy." *See In re DoubleClick Inc. Privacy Litig.,* 154 F.Supp.2d at 521. Bose alleges that Interclick impaired the functioning and diminished the value of Bose's computer in a general fashion (*See* Am. Compl. ¶ 115), but fails to make any specific allegation as to the cost of repairing or investigating the alleged damage to her computer. *See Fink v. Time Warner Cable,* No. 08 Civ. 9628(LTS)(KNF), 2009 WL 2207920, *4 (S.D.N.Y. July 23, 2009) (dismissing a CFAA claim because Plaintiff only alleged that Defendant caused damage by "impairing the integrity or availability of data and information," which was "insufficiently factual to frame plausibly the damages element of Plaintiff's CFAA claim"); *see also Czech v. Wall St. on Demand, Inc.,* 674 F.Supp.2d 1102, 1118 (D.Minn.2009) (holding that a Plaintiff's claim that unwanted text messages "caused the wireless devices of [Plaintiff] to slow and/or lag in operation" and "impair[ ] the availability of and interrupt[ ] the wireless-device service," was conclusory). Bose's claims therefore fail because she does not quantify the repair cost or cost associated with investigating the alleged damage.

b. Collection of Personal Information

Bose's allegations concerning "invasion of [her] privacy," "trespass," and "misappropriation of confidential data" are also not cognizable economic losses. *See In re Double C lick Inc. Privacy Litig.,* 154 F.Supp.2d at 524 n. 33; *see also* S. Rep No. 101–544 (1990) (noting that the CFAA is limited to "economic damages," except for violations related to medical records).

Only economic damages or loss can be used to meet the $5,000.00 threshold. *In re DoubleClick Inc. Privacy Litig.,* 154 F.Supp.2d at 519 (holding that computer users' demographic information were not compensable "economic damages"); *see also Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars, Ltd.,* 387 F.Supp.2d 378, 382 (S.D.N.Y.2005) (holding that lost profits from defendant's unfair competitive edge were not economic damages under the CFAA). The limit based on economic damages under the CFAA

2011 WL 4343517

"precludes damages for death, personal injury, mental distress, and the like." *Creative Computing v. Getloaded.com LLC,* 386 F.3d 930, 935 (9th Cir.2004).

**\*5** Here, Bose alleges loss from Interclick's collection of her personal information without her permission through flash cookies and history sniffing code. (Am.Compl.¶¶ 94–109.) Unlike in *DoubleClick,* where Plaintiffs could "easily and at no cost prevent [the Defendant] from collecting information by simply selecting options on their browsers or downloading an 'opt out' cookie," Bose alleges that Interclick circumvented "browser privacy controls" without her consent. (Am.Compl.¶ 79); *see* 154 F.Supp.2d at 521.

This Court is not persuaded by Plaintiff's attempt to distinguish *DoubleClick.* In *LaCourt v. Specific Media, Inc.,* a court in the Central District of California dismissed a CFAA claim by plaintiffs who alleged that they set "privacy and security controls" on their computers to block and delete third party cookies, and that the defendant had a "Flash cookie" installed on plaintiffs' computers without notice or consent. *See LaCourt v. Specific Media, Inc.,* No. SACV 10–1256–GW(JCGx), 2011 WL 1661532, at \*1 (C.D.Cal. Apr. 28, 2011). Finding that plaintiffs had failed to allege economic injury, the court noted,

> the Complaint does not identify a single individual who was foreclosed from entering into a 'value-for-value exchange' as a result of [defendant's] alleged conduct. Furthermore, there are no facts in the [complaint] that indicate that the Plaintiffs themselves ascribed an economic value to their unspecified personal information. Finally, even assuming an opportunity to engage in a 'value-for-value exchange,' Plaintiffs do not explain how they were 'deprived' of the economic value of their personal information simply because their unspecified personal information was purportedly collected by a third party.

> *LaCourt,* 2011 WL 1661532, at \*5.

The deficiencies noted by the court in *LaCourt* are also present here.

Furthermore, as noted by the court in *DoubleClick,* personal data and demographic information concerning consumers are constantly collected by marketers, mail-order catalogues and retailers. *In re DoubleClick Inc. Privacy Litiq.,* 154 F.Supp.2d at 525. The collection of demographic information does not "constitute[ ] damage to consumers or unjust enrichment to collectors." *Id.* Advertising on the Internet is no different from advertising on television or in newspapers. *Id.* Even if Bose took steps to prevent the data collection, her injury is still insufficient to meet the statutory threshold. *See LaCourt,* 2011 WL 1661532, at \*5 (holding that a Plaintiff's inability to delete or control cookies may constitute de minimis injury, but such injury was still insufficient to meet the $5,000.00 threshold).

The court's reasoning in *DoubleClick* is still persuasive, as the court concluded in *LaCourt:*

> While Plaintiffs attempt to distinguish *DoubleClick* on the ground they have alleged that they were deprived not of "mere demographic information," but "of the value of their personal data," it is not clear what they mean by this. Defendant observes that, if anything, the Plaintiffs in *DoubleClick* alleged that the Defendant collected much more information than Specific Media supposedly collected in this case, including "names, e-mail addresses, home and business addresses, telephone numbers, searches performed on the Internet, Web pages or sites visited on the Internet and other communications and information that users would not ordinarily expect advertisers to be able to collect."

**\*6** *Id.* (citing *In re Double C lick Inc. Privacy Litig.,* 154 F.Supp.2d at 503).

Bose's claim that Interclick collected her personal information therefore does not constitute cognizable loss sufficient to meet the $5,000.00 statutory threshold.

c. Interruption of Service.

Bose also fails to allege specific damage or loss incurred due to alleged interruption of service, or costs incurred to remedy the alleged interruption of service. (Am.Compl.¶ 111–116.) Even if a flash cookie may reach up to 100 kilobytes in size and may occupy space on Bose's hard drive, Bose fails to demonstrate that the flash cookie caused damage, a slowdown, or a shutdown to her computer. *See Czech,* 674 F.Supp.2d at 1117 (holding that damage caused by an "impairment of performance" of a cell phone occurs only when the "cumulative impact of all calls or messages at any given time exceeds the device's finite capacity so as to result in a slowdown, if not an outright 'shutdown,' of service"). Thus, Bose's claim of interruption of service is insufficient to meet the $5,000.00 statutory threshold for loss.

   2. Aggregation

Bose alleges that when her claims and other class members' claims are aggregated, the $5,000.00 threshold is met. (Am.Compl.¶¶ 120, 150.)

The Second Circuit has not yet addressed whether losses can be aggregated for purposes of the CFAA before a class is certified, but it has indicated approval of *DoubleClick* 's thorough exploration of the CFAA. *Register.com, Inc.,* 356 F.3d at 439–440 (noting in *DoubleClick* "excellent statutory construction analysis and thorough exploration of legislative history"). In *DoubleClick,* the court concluded that damage and loss may only be "aggregated across victims and over time" for a "single act." 154 F.Supp.2d at 523 (declining to aggregate claims that defendant placed cookies on multiple computers and noting that the CFAA defines damage in § 1030(e)(8) in the singular form, "any impairment to the integrity or availability of data, a program, a system, or information," rather than the plural form, "any impairments to the integrity or availability of data, programs, systems, or information"); *see also* S.Rep. No. 99–132, at 5 (1986) (explaining that loss caused by the "same act" can be aggregated to meet the $5,000.00 threshold). Plaintiff's claims that Interclick placed cookies on multiple computers could not be aggregated to reach the $5,000.00 threshold under the reasoning in *DoubleClick.*

Moreover, even if a plaintiff represents a class, she must still demonstrate that she herself has been personally injured. *Lewis v. Casey,* 518 U.S. 343, 357, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *see also In re America Online, Inc.,* 168 F.Supp.2d 1359, 1374–75 (S.D.Fla.2001) (dismissing a CFAA claim even if damages can be aggregated across multiple computers because Plaintiff failed to specify individuals who suffered the loss, whether they were individuals within the class, outside the class or named representatives).

 **\*7** Some courts in the Ninth Circuit have concluded that damages can be aggregated across multiple computers. The court in *In re Toys R Us, Inc., Privacy Litig.,* explained aggregation: "Certain types of malicious mischief may cause smaller amounts of damage to numerous individuals, and thereby collectively create a loss of more than $1,000." No. 00 Civ. 2746, 2001 WL 34517252, at \*11 n. 20 (N.D.Cal. Oct.9, 2001) (quoting Sen. Rep. No. 99–132). The court concluded that because the committee referred to "numerous individuals," damages across multiple computers could be aggregated. *Id.* (holding that when "Defendants caused an identical file to be implanted in each of the Plaintiffs' computers, resulting in damages of a uniform nature," Plaintiffs could aggregate "damages exceeding $5,000 during any one-year period to one or more individuals"). Under this reasoning, multiple intrusions across a one-year period can cause a single impairment to data, and the statute does not limit impairment to the result of a single intrusion or a single corrupted byte. *Creative Computing,* 386 F.3d at 934–35.

Nevertheless, courts within the Ninth Circuit to have considered the question subsequently have raised doubts concerning whether even after aggregation, Plaintiffs can meet the $5,000.00 threshold when they allege damages similar to those alleged in this case. *See LaCourt,* 2011 WL 1661532, \*6 (finding that Plaintiffs "failed to plausibly allege that they and the putative class—even in the aggregate—have suffered $5,000 in economic damages in a one year period as a result of [the Defendant's] actions"). As in *LaCourt,* Plaintiff here has failed to allege facts that would allow this Court to conclude that damages meet the $5,000.00 threshold, even when aggregated across the putative class.

Accordingly, Bose's Amended Complaint must be dismissed because she failed to assert personal economic loss under the CFAA.

C. State Law Claims

Plaintiff claims that this Court has jurisdiction over the remaining state law claims under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332 (hereinafter, "CAFA"), because the aggregate claims of Plaintiff and the proposed Class exceed $5,000,000.00, there is minimal diversity of citizenship between Defendants and the proposed Class, and the Classes each consist of more than one hundred members. (Am.Compl.¶ 16.) Defendants move to dismiss the state law claims on the grounds that Plaintiff has failed to meet the $5,000,000.00 threshold, and that Plaintiff has failed to state a claim under the relevant state laws.

As an initial matter, this Court notes that Plaintiff's failure to meet the $5,000.00 threshold under the CFAA is not, as Defendants argue, necessarily fatal to Bose's attempt to assert CAFA jurisdiction over her state law claims. Damages under the CFAA are narrowly defined, and Plaintiff and the Class Members may be entitled to damages under state law that are not cognizable under the CFAA. This Court must therefore address Plaintiff's state law claims.

i. New York General Business Law § 349

**\*8** Plaintiff alleges that Defendants' information collecting activities constitute a deceptive business act or practice under Section 349 of the New York General Business law. (Am.Compl.¶ 155.) Section 349 was originally enacted as a broad consumer protection measure. *See Stutman v. Chemical Bank,* 95 N.Y.2d 24, 28, 709 N.Y.S.2d 892, 731 N.E.2d 608 (N.Y.2000); N.Y. Gen. Bus. Law. § 349 (McKinney 2011). To state a claim under Section 349, a plaintiff must demonstrate three elements: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Id.* at 29, 709 N.Y.S.2d 892, 731 N.E.2d 608; *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (N.Y.1995). The deceptive practice must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego,* 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741. "The phrase deceptive acts or practices" under the statute is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer." *Goshen v. Mutual Life Ins. Co. of N.Y.,* 98 N.Y.2d 314, 325, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (N.Y.2002). In addition, a plaintiff must prove "actual" injury to recover under the statute, though not necessarily pecuniary harm. *Oswego,* 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741.

Plaintiff alleges that Defendant Interclick used LSOs and browser history sniffing code to circumvent consumers' ordinary browser privacy and security settings on their computers. (Am.Compl.¶ 156.) This conduct misled consumers into believing their digital information was private when in reality it was being tracked without their knowledge. (Am.Compl.¶ 157.) Plaintiff alleges that consumers were harmed in that they suffered "the loss of privacy through the exposure of the [sic] personal and private information and evasion of privacy controls on their computers." (Am.Compl.¶ 160.)

Interclick first argues that Plaintiff cannot meet the second element of a claim under Section 349 because Plaintiff has failed to allege misleading conduct on the part of Interclick. Interclick argues that as Plaintiff was unaware of Interclick's actions while they were occurring, Plaintiff could not have been misled into entering into any consumer transaction. (Interclick Mem. L., p. 18.) Interclick would thus have this Court interpose a reliance element into the Section 349 analysis. The New York Court of Appeals has specifically rejected that proposition. *See Stutman,* 95 N.Y.2d at 30, 709 N.Y.S.2d 892, 731 N.E.2d 608 ("Plaintiffs need not additionally allege that they would not otherwise have entered into the transaction.")

In its reply papers, Interclick modifies its argument slightly, contending that Plaintiff fails to allege any misrepresentation or omission by Interclick to Plaintiff. (Interclick Rep. Mem. L., at 8 .) Although the paradigmatic case under Section 349 involves a business making a false or misleading statement in advertising aimed at consumers, *see, e.g., Waldman v. New Chapter, Inc.,* 714 F.Supp.2d 398, 405 (E.D.N.Y.2010), courts have allowed claims under Section 349 where misleading statements are made to third parties resulting in harm to consumers. *See Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir.1995) (finding false statements by a competitor to a regulatory agency actionable under Section 349); *Kuklachev v. Gelfman,* 600 F.Supp.2d 437, 476 (E.D.N.Y.2009) ("The relevant question 'is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer.' ") (quoting *Securitron,* 65 F.3d at 257). A claim under Section 349 need not, as

Interclick argues, involve an allegation of a deceptive statement made by Interclick to Plaintiff. It need only allege that Interclick engaged in a deceptive practice that affected the consuming public. Plaintiff has alleged as much.

**\*9** Interclick next claims that Plaintiff has failed to allege any injury as a result of any misleading act or omission. To state a claim under Section 349, a plaintiff must allege "actual" injury, though not necessarily pecuniary injury. *Stutman,* 95 N.Y.2d at 29, 709 N.Y.S.2d 892, 731 N.E.2d 608. Although collection of personal information does not constitute "economic" injury for purposes of the CFAA, courts have recognized similar privacy violations as injuries for purposes of Section 349. *See Meyerson v. Prime Realty Services, LLC,* 7 Misc.3d 911, 920, 796 N.Y.S.2d 848 (N.Y.Sup.Ct.2005) ("[I]t cannot be doubted that a privacy invasion claim—and an accompanying request for attorney's fees-may be stated under [Section] 349 based on nonpecuniary injury ..."); *Anonymous v. CVS Corp.,* 728 N.Y.2d 333, 340 (N.Y.Sup.Ct.2001) (allowing Section 349 claim for violation of privacy when local pharmacy transferred prescription records to a national chain without advance notice to consumers).

Plaintiff has therefore adequately pled a claim under Section 349 with respect to Defendant Interclick. Nevertheless, Plaintiff has not alleged any facts demonstrating that the Advertiser Defendants were involved in any of the allegedly deceptive conduct. Therefore, Defendant Interclick's Motion to Dismiss as to Plaintiff's Section 349 claim is DENIED, and the Advertiser Defendants' Motion to Dismiss the Section 349 claim is GRANTED.

ii. Trespass to Chattels

Plaintiff appears to allege two potential grounds for a trespass to chattels claim: first, that Defendants' have dispossessed Plaintiff and the other Class Members of the economic value of their personal information, and second, that Defendants' impaired the value of Plaintiff's and the other Class Members' computers by installing Flash LSOs and browser history sniffing code on those computers. (Am.Compl.¶¶ 168–170.)

A trespass to chattels occurs when a party intentionally, and without justification or consent, physically interferes with the use and enjoyment of personal property in another's possession, and thereby harms that personal property. *In re JetBlue Airways Corp. Litig.,* 379 F.Supp.2d 299, 327 (E.D.N.Y.2005); *see also Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 404 (2d Cir.2004). Nevertheless, "one who intentionally interferes with another's chattel is liable only if the interference results in harm to 'the [owner's] materially valuable interest in the physical condition, quality, or value of the chattel, or if the [owner] is deprived of the use of the chattel for a substantial time.' " *School of Visual Arts v. Kuprewicz,* 3 Misc.3d 278, 771 N.Y.S.2d 804, 807–08 (N .Y.Sup.Ct.2003) (*citing* Restatement 2d of Torts § 218, Comment e .)

Although Plaintiff's claim that she was dispossessed of the economic value of her personal information is of dubious merit, *see* discussion of CFAA claim, *supra; JetBlue,* 379 F.Supp.2d at 328–329, Plaintiff's trespass to chattels claim regarding Interclick's placement of unauthorized Flash LSOs and history-sniffing code, considering there is no allegation that the devices materially affected the condition, quality, or value of the computer, is arguably sufficient to survive a motion to dismiss. *School of Visual Arts v. Kuprewicz,* 3 Misc.3d 278, 771 N.Y.S.2d 804, 808 (N.Y.Sup.Ct.2003) (sustaining trespass to chattels claim where plaintiff alleged that unsolicited emails "deplete hard disk space, drained processing power, and adversely affected other system resources").

**\*10** Plaintiff's claim with respect to Interclick thus survives. Again, however, Plaintiff has not alleged any facts indicating that the Advertiser Defendants committed a trespass. Accordingly, Defendant Interclick's Motion to Dismiss as to Plaintiff's trespass to chattels claim is DENIED, and the Advertiser Defendants' Motion to Dismiss the trespass to chattels claim is GRANTED.

iii. Breach of Implied Contract

In order to recover for breach of implied contract or quasi-contract under New York law, a plaintiff must establish: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefore, and (4) the reasonable value of the services." *Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,* 418 F.3d 168, 175 (2d Cir.2005) (internal quotations and citations omitted).

Case 5:25-cv-01673-GTS-TWD    Document 9    Filed 01/23/26    Page 132 of 133
Bose v. Interclick, inc., Not Reported in F.Supp.2d (2011)
2011 WL 4343517

Plaintiff describes the implied contractual relationship as follows: "Plaintiff and Class Members provided their personal information in good faith to websites (publishers), reasonably expected that such information would be exchanged with the advertisers and that Plaintiff and Class Members would in turn receive the goods and services offered by such websites" [sic]. (Am.Compl. ¶ 183.) Under this theory of implied contract, Plaintiff fails to allege that this bargain was unfulfilled in any way. She does not allege that she or the Class Members were denied the benefit for which they had "bargained," i.e., receiving the goods and services offered by the websites to whom they offered their personal information.

Therefore, Defendants' 12(b)(6) Motions to Dismiss Plaintiff's breach of implied contract claim are GRANTED.

### iv. Tortious Interference with Contract

Plaintiff further alleges that when she visited websites on which Interclick operated, she entered into agreements with the operators of those websites, including privacy policies and terms of service. Plaintiff alleges that Defendants' activities were in conflict with the privacy policies and caused the websites to breach those policies, therefore constituting a tortious interference with contract.

The elements of a tortious interference claim are: (1) that a valid contract exists; (2) that a "third party" had knowledge of the contract; (3) that the third party intentionally and improperly procured the breach of the contract; and (4) that the breach resulted in damage to the plaintiff. *See TVT Records v. Island Def Jam Music Group,* 412 F.3d 82, 88 (2d Cir.2005); *Finley v. Giacobbe,* 79 F.3d 1285, 1294 (2d Cir.1996).

Plaintiff has not stated a claim for tortious interference with contract because she has not alleged any facts regarding the nature of the privacy agreements that she had with any of the websites. Furthermore, Plaintiff does not specify any individual contract that was breached, but just claims generally that Plaintiff had contracts with various website operators which were all breached. (Am.Compl.¶ 194.) Plaintiff's allegations are far too general to state a claim for tortious interference with contract, because without facts regarding the terms of the contracts or the specific parties to the contracts, it cannot be determined if a contract indeed existed or if Defendants' activities procured a breach of those contracts.

**\*11** Therefore, Defendants' 12(b)(6) Motions to Dismiss as to Plaintiff's tortious interference with contract claim are GRANTED.

### D. Leave to Replead

When a complaint has been dismissed, permission to amend it "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, a court may dismiss without leave to amend when amendment would be "futile," or would not survive a motion to dismiss. *Gatt Communications, Inc. v. PMC Associates,* 10–CV–8, 2011 WL 1044898 at \*7 (S.D.N.Y. Mar.10, 2011) (citing *Oneida Indian Nation of N.Y. v. City of Sherrill,* 337 F.3d 139, 168 (2d Cir.2003).

Here, Plaintiff has alleged no specific interaction with any of the Advertiser Defendants, nor has she alleged any knowledge or active participation by the Advertiser Defendants in Interclick's alleged unauthorized access to the computers of Plaintiff and the Class Members. Plaintiff's claims against the Advertiser Defendant are futile and would not survive a motion to dismiss. Those claims are therefore dismissed, with prejudice.

Furthermore, as Plaintiff cannot meet the requisite statutory threshold under CFAA or state the necessary contractual relationships for a Breach of Implied Contract or Tortious Interference with Contract claim, those claims are dismissed, with prejudice.

### III. CONCLUSION

For the above reasons, the Advertiser Defendants' Motion to Dismiss is GRANTED and Plaintiff's claims against McDonald's Corporation, CBS Corporation, Mazda Motor of America, Inc., Microsoft Corporation, and McDonald's USA, LLC, are dismissed *with prejudice;*

Interclick's Motion to Dismiss is GRANTED with respect to Plaintiff's CFAA claim. Plaintiff's Breach of Implied Contract Claim, and Plaintiff's Tortious Interference with Contract claim, and those claims are dismissed *with prejudice;*

Interclick's Motion to Dismiss is DENIED with respect to Plaintiff's claim under New York General Business Law Section 349, and Plaintiff's Trespass to Chattels claim; and

Defendant Interclick shall answer the remaining claims within 30 days of the date of this Order.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 4343517

---

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.